**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Debtor. | SIPA LIQUIDATION<br><br>Adv. Pro. No. 08-1789 (BRL)<br><br>Substantively Consolidated |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>HSBC BANK PLC, *et al.*,<br><br>       Defendants. | Adv. Pro. No. 09-1364 (BRL) |

## MEMORANDUM OF LAW IN SUPPORT OF PRIMEO FUND'S MOTION TO WITHDRAW THE REFERENCE

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-8042

*Attorneys for Defendant Primeo Fund*

Dated: September 19, 2011

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................. 1

BACKGROUND ................................................................ 3

STANDARD OF REVIEW ..................................................... 4

ARGUMENT ................................................................... 7

I.    THE REFERENCE MUST BE WITHDRAWN IN LIGHT OF *STERN v.*
      *MARSHALL* .......................................................... 7

      A.    This Action is Subject to Mandatory Withdrawal of the Reference ...................... 7

      B.    The District Court Should Grant Permissive Withdrawal of the Reference .......... 8

II.   WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE
      RESOLUTION OF THIS PROCEEDING REQUIRES SIGNIFICANT
      INTERPRETATION OF SIPA AND THE BANKRUPTCY CODE ............................. 9

      A.    The Trustee's Claims Require Significant Interpretation of Whether the
            Section 546(e) Safe Harbor Applies Under SIPA ................................. 10

            1.    Primeo's Safe Harbor Defenses ............................. 10

            2.    The Resolution of Primeo's Safe Harbor Defenses Will Require
                  Significant Interpretation of SIPA ........................... 12

      B.    The Trustee's Claims Require Significant Interpretation of Whether a
            Retroactive Due Diligence Obligation Can Be Imposed on Customers
            Under SIPA ................................................................ 16

      C.    The Trustee's Claims Will Require Significant Consideration of Whether
            SIPA Has Extraterritorial Application ............................... 17

CONCLUSION ................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barclay v. Swiss Fin. Corp. (In re Estate of Midland Euro Exchange Inc.)*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006) .................................................................................18

*Bear, Stearns Sec. Corp. v. Gredd*,
    No. 01 CIV 4379 (NRB), 2001 WL 840187 (S.D.N.Y. July 25, 2001) ........................ passim

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991) ...............................................................................................5

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    341 B.R. 451 (Bankr. S.D.N.Y. 2006) ................................................................................16

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    2011 WL 2536101 (2d Cir. June 28, 2011) .........................................................................11

*Enron Power v. California Power Exch. Corp.*,
    No. 04 Civ. 8177 (RCC), 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ...............................6

*Granfinanciera v. Nordberg*,
    492 U.S. 33 (1989) ................................................................................................................7

*In re Blixseth*,
    2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) ..........................................................7-8

*In re Dana Corp.*,
    379 B.R. 449 (S.D.N.Y. 2007) ..............................................................................................5

*In re Maxwell Communication Corp.*,
    186 B.R. 807 (S.D.N.Y. 1995) ............................................................................................18

*McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)*,
    160 B.R. 502 (S.D.N.Y. 1993) ..............................................................................................6

*Iowa Public Employees' Retirement System v. MF Global, Ltd.*,
    620 F.3d 137 (2d Cir. 2010) ...............................................................................................16

*Lutz v. Chitwood (In re Donahue Sec.'s Inc.)*,
    304 B.R. 797 (Bankr. S.D. Ohio 2003) ..............................................................................14

*Miller v. CSFB (In re Refco Secs. Litig.)*,
    07 MDL No. 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010) ..............................16

ny-987091

*Mishkin v. Ageloff*,
  220 B.R. 784 (S.D.N.Y. 1998)............................................................................6, 8, 19

*Mishkin v. Peat, Marwick, Mitchell & Co.*,
  744 F. Supp. 531 (S.D.N.Y. 1990)...............................................................................13

*Morrison v. Nat'l Austl. Bank Ltd.*,
  130 S. Ct. 2869 (2010) ...................................................................................... passim

*Northwest Airlines, Inc. v. Los Angeles (In re Northwest Airlines Corp.)*,
  384 B.R. 51 (S.D.N.Y. 2008)....................................................................................6, 8

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
  4 F.3d 1095 (2d Cir. 1993).............................................................................................6

*Picard v. Herald Fund SPC*,
  Adv. Pro. No. 09-1359 (BRL) (Bankr. S.D.N.Y. Nov. 13, 2009) ...........................13

*Picard v. HSBC Bank PLC*,
  450 B.R. 406 (S.D.N.Y. 2011)...................................................................................5, 9

*Picard v. JP Morgan Chase*,
  11 Civ 0913 (CM), 2011 WL 2119720 (S.D.N.Y. May 23, 2011).............................5, 9

*Picard v. Katz*,
  No. 11-cv-03605 (JSR) (S.D.N.Y.)......................................................................12, 13, 17

*Picard v. Kohn*,
  11 Civ 1181 (JSR) (S.D.N.Y. Sept. 6, 2011) ........................................................ 19-20

*Picard v. Merkin et al.*,
  Adv. Pro. No. 09-1182 (BRL) (Bankr. S.D.N.Y. Feb. 24, 2010) .....................13, 16

*Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*,
  403 F.3d 43 (2d Cir. 2005).............................................................................................17

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
  922 F.2d 984 (2d Cir. 1990)............................................................................................5

*Shugrue* v. *Chem. Bank, Inc. (In re Ionosphere Clubs, Inc.)*,
  1995 WL 479480 (S.D.N.Y. Aug. 11, 1995)................................................................16

*SIPC v. Barbour*,
  421 U.S. 412 (1975).................................................................................................. 14-15

*SIPC v. Charisma Sec. Corp.*,
  506 F.2d 1191 (2d Cir. 1974).........................................................................................13

*Stern v. Marshall*,
  131 S. Ct. 2594 (2011) .................................................................1, 7, 8

**STATUTES**

11 U.S.C.
  § 544 ........................................................................................ passim
  § 546(e) .................................................................................... passim
  § 547 ........................................................................................ passim
  § 548 ........................................................................................ passim
  § 550 ................................................................................................4
  § 741 ..................................................................................... 10-12

15 U.S.C.
  § 78fff-1(a) ............................................................................. 13-14
  § 78fff-2(c)(3) .................................................................................14
  § 78fff(b) ........................................................................................13

28 U.S.C.
  § 157 ........................................................................................ passim
  § 1334(b) .........................................................................................4

New York Debtor and Creditor Law
  §§ 270 *et seq.* ..............................................................................4

Securities Investor Protection Act of 1970, 15 U.S.C.
  §§ 78aaa *et seq.* ................................................................ passim

**OTHER AUTHORITIES**

H.R. Rep. No. 109-648 ........................................................................15

H.R. Rep. No. 97–420 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583 ..........15

S. Rep. No. 95-763 *reprinted in* 78 U.S.C.C.A.N. 764 ............................13

Defendant Primeo Fund ("Primeo") respectfully submits, pursuant to 28 U.S.C. § 157(d), this memorandum of law in support of its motion for an order withdrawing the reference of this action to the bankruptcy court. As set forth below, this case presents issues that meet the requirements for mandatory withdrawal and must be adjudicated in the district court.

## PRELIMINARY STATEMENT

This action arises out of the elaborate and unprecedented Ponzi scheme perpetrated by Bernard L. Madoff against hundreds of individuals, banks, and investment companies resulting in billions of dollars in market losses. By its Complaint, the Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, has brought bankruptcy claims against Defendant Primeo, among others, seeking to avoid hundreds of millions of dollars in alleged transfers. These claims must be heard by the district court for the following reasons.

Withdrawal of the reference is mandatory because the bankruptcy court cannot determine the Trustee's claims against Primeo without substantial interpretation of federal law concerning the bankruptcy court's subject matter jurisdiction and constitutional authority under the U.S. Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In addition, withdrawal of the reference on a permissive basis would be appropriate in order to promote judicial efficiency, and to prevent delay and cost to the parties given the unsettled nature of the bankruptcy court's jurisdiction.

Next, withdrawal of the reference also is mandatory because resolution of this proceeding requires significant interpretation of SIPA—a non-bankruptcy federal law—on three issues, and this interpretation must be carried out by an Article III court.

*First*, a court must determine whether the "safe harbor" under section 546(e) of the Bankruptcy Code applies under SIPA so as to limit the Trustee's avoidance powers. Primeo

intends to move to dismiss the Complaint on the affirmative defense available under the section 546(e) safe harbor provision, which bars the avoidance of certain transfers that are "settlement payments" or made "in connection with a securities contract." Because each of the transfers at issue in this litigation against Primeo falls squarely within the rubric of the safe harbor, Primeo intends to affirmatively invoke the safe harbor provision as a partial defense to the Trustee's claims. There can be little doubt that the Trustee will, as he has in other actions, challenge any application of section 546(e) on the grounds that such application would be contrary to the remedial purposes of SIPA and inconsistent with its text. The very contours of the Trustee's opposition to the application of the safe harbor provision will necessitate a significant interpretation of SIPA, which requires mandatory withdrawal of the reference.

*Second*, a court must determine whether SIPA retroactively imposes an affirmative duty on a securities customer to investigate potential fraud. Primeo intends to move to dismiss on the basis that Primeo was an innocent investor and as such cannot be held liable under the Bankruptcy Code's avoidance powers for any transfers made to it. The Trustee has alleged, in essence, that SIPA imposes an affirmative and retroactive duty on a securities customer to investigate potential fraud. The existence of this so-called duty is contrary to federal securities laws and is wholly unsupported by SIPA, the very statute upon which the Trustee relies. Undoubtedly, the resolution of this issue will involve significant interpretation of SIPA, which requires adjudication by an Article III judge.

*Third*, a court must determine whether SIPA has extraterritorial application in light of *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010). Primeo intends to move to dismiss the Trustee's subsequent transfer claims because the alleged subsequent transfers are clearly extraterritorial and SIPA does not apply extraterritorially under *Morrison*. SIPA contains no

clear indication of its extraterritorial application, and therefore it has none. Whether the presumption against extraterritorial application of U.S. laws bars the Trustee's avoidance claims here will be one of the critical issues of federal non-bankruptcy law that a court must resolve and that may dispose of the Trustee's subsequent transfer claims against Primeo in their entirety. [1]

Accordingly, this case and the significant non-bankruptcy law federal issues it raises must be decided by an Article III judge—which they have not been to date.

## BACKGROUND

Plaintiff, Irving H. Picard (the "Trustee"), is the Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under SIPA and the substantively consolidated Madoff estate.

Defendant Primeo is an investment fund organized under the laws of the Cayman Islands. (Compl. ¶ 57.) Primeo's custodian was HSBC Securities Services (Luxembourg) S.A. ("HSSL"), a Luxembourg corporation. (Id. ¶ 101.) The Trustee alleges that Primeo held securities accounts at BLMIS, and that Primeo entered into securities contracts with BLMIS referred to as a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements"). (Id. ¶¶ 126, 230-31.) The Trustee further alleges that these Account Agreements were to be performed through securities trading activities. (Id. ¶¶ 125-26.) Primeo allegedly invested more than $370 million with BLMIS by depositing funds with BLMIS's bank account at JPMorgan Chase & Co. (Id. ¶ 125 and Ex. B.)

---

[1] Primeo also intends to move to dismiss on additional grounds, including international comity, lack of personal jurisdiction, forum non conveniens, and failure to state a claim. For reasons of judicial efficiency, the district court should also hear these grounds in the same motion to dismiss in order to avoid the need for multiple motions to dismiss in various courts.

The Trustee further alleges that Primeo, through its Luxembourg-based custodian, invested in two foreign funds that, in turn, had their own accounts with BLMIS: Defendants Herald Fund SPC ("Herald") and Alpha Prime Fund Limited ("Alpha Prime"). (*See id.* ¶¶ 101, 231-33.) Alpha Prime is an investment fund organized under the laws of Bermuda. (*Id.* ¶ 60.) Herald is an investment fund organized under the laws of the Cayman Islands. (*Id.* ¶ 58.) Alpha Prime's custodian was HSBC Institutional Trust Services (Bermuda) Limited ("HITSB") and was formerly HSBC Bank Bermuda Limited ("HSBC Bank Bermuda"), both Bermuda entities, and Herald's custodian was HSSL, based in Luxembourg. (*Id.* ¶¶ 99-101.) The Trustee does not allege that Primeo filed a proof of claim as to any of these investments. (*See id.* ¶ 127.)

On December 5, 2010, the Trustee commenced the instant action as an adversary proceeding in bankruptcy court against Primeo, among others.[2] The Trustee alleges that his power to bring claims against Primeo derives principally from SIPA. (*See id.* ¶ 44.); 15 U.S.C. §§ 78aaa *et seq.* The Trustee asserts claims against Primeo under sections 544, 547, 550, and 548 of the Bankruptcy Code, 11 U.S.C. §§ 544, 547, 548, and 550, and various sections of the New York Debtor and Creditor Law, §§ 270 *et seq.* The gravamen of the Trustee's Complaint is that Primeo received avoidable transfers from BLMIS as an initial transferee or as a subsequent transferee of Herald and Alpha Prime.

## STANDARD OF REVIEW

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11," 28 U.S.C. § 1334(b), but may refer such actions to the bankruptcy judges of the district, 28 U.S.C.

---

[2] The Trustee's Complaint ("Compl."), as publicly filed on December 5, 2010, is attached to the accompanying Declaration of LaShann M. DeArcy, dated September 19, 2011 ("DeArcy Decl.") as Exhibit A. Pursuant to various stipulations entered into by the parties, Primeo has not yet answered, moved, or otherwise responded to the Complaint.

§ 157(a).  The district court *must* withdraw a reference, however, "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  "[A] litigant can *mandate* withdrawal of the bankruptcy reference where the movant shows that, absent the withdrawal, the bankruptcy judge would be obliged 'to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'"  *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)); *see also Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (withdrawal of the reference is appropriate "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding") (quoting *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 418-19 (S.D.N.Y. 1989)); *Picard v. JP Morgan Chase*, 11 Civ. 0913 (CM), 2011 WL 2119720, at *3 (S.D.N.Y. May 23, 2011).  In other words, withdrawal of the reference is mandated in cases that "require 'the bankruptcy court to engage itself in the intricacies' of non-Bankruptcy law, as opposed to 'routine application' of that law."  *In re Dana Corp.*, 379 B.R. 449, 453 (S.D.N.Y. 2007) (quoting *Shugrue*, 922 F.2d at 995).  The mandatory withdrawal provision applies equally to cases involving matters within the bankruptcy court's "core" jurisdiction.  *Exxon*, 932 F.2d at 1026.

In determining whether withdrawal of the reference is mandatory, a district court "need not evaluate the merits of the parties' positions."  *Bear, Stearns Sec. Corp. v. Gredd*, No. 01 CIV 4379 (NRB), 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001).  Rather, it is sufficient for the court to note that "resolution of this matter will require substantial and material consideration of federal law outside the Bankruptcy Code."  *Id.* at *3.  Moreover, for withdrawal of the reference

to be mandatory, "the issues of non-bankruptcy law raised by the proceeding need not be unsettled or involve matters of 'first impression.'" *Enron Power v. California Power Exch. Corp.*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 505 (S.D.N.Y. 1993) (noting that what is at issue is "the degree to which the bankruptcy judge would have to consider the federal [non-bankruptcy] law")). However, "'where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.'" *Bear, Stearns*, 2001 WL 840187, at *2 (quoting *Mishkin v. Ageloff*, 220 B.R. 784, 796 (S.D.N.Y. 1998)).

A reference to the bankruptcy court also should be withdrawn "for cause shown." 28 U.S.C. § 157(d). The Second Circuit has established a two-pronged test for permissive withdrawal. *First*, "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993). *Second*, the court should "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id.* None of these factors is dispositive, and efficiency and uniformity can be the overriding considerations. *See Northwest Airlines, Inc. v. Los Angeles (In re Northwest Airlines Corp.)*, 384 B.R. 51, 56 (S.D.N.Y. 2008).

**ARGUMENT**

I.      **THE REFERENCE MUST BE WITHDRAWN IN LIGHT OF**
         ***STERN v. MARSHALL.***

In light of the Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the bankruptcy court lacks constitutional power to determine an estate's claims, including fraudulent transfer claims under the Bankruptcy Code, against those not filing proofs of claim. *Id*. at 3611; *see also In re Blixseth*, 2011 WL 3274042, at *11 (Bankr. D. Mont. Aug. 1, 2011). That is, "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618 (emphasis in original).

Primeo intends to argue that the Complaint should be dismissed based on the bankruptcy court's lack of jurisdiction under *Stern*. Given the unsettled nature of a bankruptcy court's constitutional authority to determine the Trustee's claims, withdrawal of the reference is required. In addition, permissive withdrawal would promote judicial efficiency and is appropriate.

**A.**     **This Action is Subject to Mandatory Withdrawal of the Reference.**

Under *Stern v. Marshall*, a bankruptcy court cannot determine a private law claim that is independent of the claims adjudication process. 131 S. Ct. at 2617-20. Otherwise, the bankruptcy court would be "exercis[ing] the essential attributes of judicial power that are reserved for Article III Courts." *Id.* at 2619 (internal quotations omitted). Thus, a bankruptcy judge may hear claims tied to the claims allowance process, but may not hear those that seek to augment a bankruptcy estate. *Granfinanciera v. Nordberg*, 492 U.S. 33, 56 (1989); *Blixseth*, 2011 WL 3274042, at *11.

7

Primeo did not file a proof of claim in the underlying bankruptcy case (*see* Compl. ¶ 127), so there is no possibility that determination of the claims will implicate the claims adjudication process. All of the Trustee's claims are private law matters under *Stern*. *See* 131 S. Ct. at 2614; *see also Blixseth*, 2011 WL 3274042, at *11. Indeed, the very purpose of the Trustee's Complaint is to recover millions of dollars to augment the BLMIS estate. Viewed in this light, the claims at issue here are no different than those at issue in *Stern* and the bankruptcy court does not have constitutional authority to determine them.

In order to decide this issue, a court will need to engage in substantial interpretation of federal constitutional law concerning the bankruptcy court's subject matter jurisdiction and authority to enter judgments against Primeo. This is an issue of first impression, and is a task that must be carried out by an Article III court. *Bear, Stearns*, 2001 WL 840187, at *2 (quoting *Mishkin*, 220 B.R. at 796).

**B.** **The District Court Should Grant Permissive Withdrawal of the Reference.**

Withdrawing the reference in this action will promote judicial efficiency, prevent delay, and limit cost to the parties. For example, a decision by the bankruptcy court is likely to materially slow this action as it will undoubtedly result in protracted motion practice on whether bankruptcy courts lack constitutional authority under *Stern*. Withdrawal of the reference would promote judicial efficiency by preventing this motion practice and limiting unnecessary costs, and is therefore appropriate. *See Northwest*, 384 B.R. at 56. Thus, in light of *Stern* and its evolving interpretation, the district court should grant permissive withdrawal of the reference.

8

## II.  WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE RESOLUTION OF THIS PROCEEDING REQUIRES SIGNIFICANT INTERPRETATION OF SIPA AND THE BANKRUPTCY CODE.

Withdrawal of the reference here is mandatory, because resolution of this action requires significant interpretation of SIPA—a non-bankruptcy federal statute.  While SIPA liquidations may be brought in bankruptcy court and SIPA incorporates provisions of title 11 to the extent consistent with SIPA, SIPA itself is a non-bankruptcy federal law—it is part of the federal securities laws, not title 11.  *Picard v. HSBC Bank PLC*, 450 B.R. 406, 410 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78bbb).  Accordingly, where the resolution of an adversary proceeding requires significant interpretation of SIPA, a litigant may *mandate* withdrawal of the reference to bankruptcy court.  *Picard v. JP Morgan Chase*, 11 Civ. 0913 (CM), 2011 WL 2119720, at *6 (S.D.N.Y. May 23, 2011); *HSBC*, 450 B.R. at 410 (holding withdrawal of the reference was mandatory where resolution of proceeding required significant interpretation of SIPA).  As the district court in *HSBC* aptly stated, "[a] substantial issue under SIPA is therefore, almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States,'" and withdrawal of the reference is thus mandatory.  450 B.R. at 410 (quoting 28 U.S.C. § 157(d)); *see also JP Morgan Chase*, 2011 WL 2119720, at *6.  As discussed below, resolution of this proceeding will require significant interpretation of SIPA in order to determine three separate issues:  (i) whether the safe harbor under section 546(e) of the Bankruptcy Code applies under SIPA so as to limit the Trustee's avoidance powers; (ii) whether SIPA retroactively imposes an affirmative duty on a securities customer to investigate potential fraud; and (iii) whether SIPA has extraterritorial application in light of *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010).

ny-987091

## A. The Trustee's Claims Require Significant Interpretation of Whether the Section 546(e) Safe Harbor Applies Under SIPA.

The resolution of the Trustee's claims in this case will necessarily require significant interpretation of SIPA to determine whether the section 546(e) safe harbor in the Bankruptcy Code applies under SIPA so as to limit the Trustee's avoidance powers. By its Complaint, the Trustee seeks, pursuant to sections 544, 547, and 548 of the Bankruptcy Code, to avoid more than 100 million dollars of transfers allegedly received by Primeo as initial or subsequent transferee of BLMIS. (Compl. ¶ 57.) Primeo intends to argue that the 546(e) safe harbor eliminates the Trustee's ability, as a matter of law, to assert claims here under preference, constructive fraud, or state law theories. In multiple related adversary proceedings, the Trustee has argued that the 546(e) safe harbor does not apply under SIPA. Primeo strenuously disagrees with the Trustee, and a court will need to resolve this issue, which requires significant interpretation of SIPA. This task must be carried out by an Article III court.

### 1. Primeo's Safe Harbor Defenses.

The "settlement payment" provision of the safe harbor protects transfers that are settlement payments made by a stockbroker or financial institution.[3] 11 U.S.C. § 546(e). The Code defines a "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C.

---

[3] Section 546(e) provides in relevant part:

> "Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . that is made before the commencement of the case, except under section 548(a)(1)(A) of this title."

11 U.S.C. § 546(e).

§ 741(8). Several circuits have held that the term "settlement payment" must be interpreted "extremely broad[ly]." *See Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 2011 WL 2536101, at *5 (2d Cir. June 28, 2011) (collecting citations). In *Enron*, the Second Circuit interpreted "settlement payment" broadly as well, making clear that any transfers which "complete a transaction in securities" are "settlement payments" protected by the safe harbor. *Id.* at *7.

Primeo intends to argue that the Trustee's allegations mandate application of the section 546(e) safe harbor, based on its "settlement payment" provision. The Complaint alleges that: (1) Primeo, Herald, and Alpha Prime held accounts at BLMIS—a registered broker-dealer; (2) the BLMIS accounts were held at JPMorgan Chase & Co.—a financial institution; (3) the funds at issue were transferred from BLMIS to Primeo, Herald, or Alpha Prime from JPMorgan Chase & Co., completing the transactions; and (4) the transfers took place before the commencement of this case. (*See* Compl. ¶¶ 125-26, 230-33, 322-24.)

The fact that the underlying securities transactions by BLMIS may not have taken place because Madoff was running a Ponzi scheme is of no moment. As the Second Circuit has held, nothing in the definition of "settlement payment" requires that a purchase or sale of a security actually take place. *Enron Creditors*, 2011 WL 2536101, at *7 (upholding district court's reversal of bankruptcy court's holding that a purchase or sale of a security must have taken place for section 546(e)'s settlement payment safe harbor to apply). All that matters here is that these transfers served to complete Primeo's securities transactions. The Trustee cannot avoid any transfers made in connection with the Primeo, Herald, and Alpha Prime accounts under preference, constructive fraud, or state law theories as a matter of law, and Counts Two and Four through Ten must be dismissed as to Primeo.

In addition, Primeo also intends to argue that the "securities contract" provision of the

safe harbor, which protects transfers made by a stockbroker or financial institution "in

connection with a securities contract," applies here.[4]  11 U.S.C. § 546(e).  Section 741(7) of the

Bankruptcy Code defines a "securities contract" as "(i) a contract for the purchase, sale, or loan

of a security" and "a master agreement that provides for an agreement or transaction referred to

in clause (i)…."  11 U.S.C. § 741(7)(A).  The Trustee alleges that Primeo, Herald, and Alpha

Prime each entered into "Account Agreements" with BLMIS pursuant to which BLMIS would

enter into securities transactions, and all the alleged transfers were made in connection with these

Account Agreements.  (Compl. ¶¶ 317-324.)

### 2.     The Resolution of Primeo's Safe Harbor Defenses Will Require Significant Interpretation of SIPA.

In *Picard v. Katz*, a related adversary proceeding, the district court granted a motion to

withdraw the reference, in part, based on the issue of whether the section 546(e) safe harbor

applies under SIPA—the same issue presented in this motion.  (DeArcy Decl., Exh. B

(Transcript of Oral Argument at 33-34, *Picard v. Katz*, No. 11-cv-03605 (JSR) (S.D.N.Y. July 1,

2011)); DeArcy Decl., Exh. C (Order Granting Defendant's Motion to Withdraw the Reference

---

[4] Section 546(e) provides in relevant part:

> "Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer . . . that is a transfer made by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . in connection with a securities contract, as defined in section 741(7) . . . that is made before the commencement of the case, except under section 548(a)(1)(A) of the title."

11 U.S.C. § 546(e).

at 1, *Picard v. Katz*, No. 11-cv-03605 (JSR) (S.D.N.Y. July 5, 2011)).)[5] Primeo ardently

disagrees with the Trustee's interpretation of SIPA. Primeo maintains that the plain language of

the Bankruptcy Code and SIPA, read in tandem, makes clear that the application of section

546(e) is appropriate in this case. That the Bankruptcy Code precludes a SIPA trustee from

avoiding certain transfers, *vis-à-vis* the safe harbor provisions, should not be construed as an

inconsistency.

SIPA incorporates provisions of the Bankruptcy Code "to the extent consistent with the

provisions of" SIPA. 15 U.S.C. § 78fff(b). "A provision is 'inconsistent' with SIPA if it

conflicts with an explicit provision of the Act or if its application would substantially impede the

fair and effective operation of SIPA without providing significant countervailing benefits."

*SIPC v. Charisma Sec. Corp.*, 506 F.2d 1191, 1195 (2d Cir. 1974). Section 546(e) is not in any

way inconsistent with SIPA. Section 78fff-1(a) of SIPA "expressly limits the powers and duties

of a SIPA trustee," providing that the "trustee may only exercise the same powers as a

bankruptcy trustee plus those additional powers granted by SIPC." *Mishkin v. Peat, Marwick,*

*Mitchell & Co.*, 744 F. Supp. 531, 558 (S.D.N.Y. 1990) (citing 15 U.S.C. § 78fff-1(a) ("A trustee

shall be vested with the *same powers* and title with respect to the debtor and the property of the

debtor, including the same rights to avoid preferences, *as a trustee in a case under Title 11*.")

(emphasis added)); *see also* S. Rep. No. 95-763 *reprinted in* 78 U.S.C.C.A.N. 764, 775 ("The

---

[5] The Trustee has made virtually identical arguments in related adversary proceedings and can be expected to raise them in the instant case. In *Picard v. Herald Fund SPC*, the Trustee maintained that the safe harbor was unavailable to the defendants because it was inconsistent with the remedial purposes of SIPA, relying almost exclusively on an interpretation of the "principles underlying SIPA." (DeArcy Decl., Exh. D (Trustee's Opp. Br. at 16, *Picard v. Herald Fund SPC*, Adv. Pro. No. 09-1359 (BRL) (Bankr. S.D.N.Y. Nov. 13, 2009)); *see also* DeArcy Decl., Exh. E (Trustee's Opp. Br. at 35-36, *Picard v. Merkin et al.*, Adv. Pro. No. 09-1182 (BRL) (Bankr. S.D.N.Y. Feb. 24, 2010) (Trustee argued that the 546(e) safe harbor does not limit a SIPA Trustee's avoiding powers, because application of 546(e) would be "inconsistent with SIPA," citing 15 U.S.C. § 78fff(b))).)

Bill here specifies the powers vested in a [SIPA] trustee. They are the powers of a trustee under the Bankruptcy Act together with certain specifically granted powers which may be exercised only with SIPC approval."). Section 546(e) merely limits a SIPA trustee's avoidance powers in the same way that it limits the avoidance powers of a bankruptcy trustee, and "it is not inconsistent with SIPA to hold that a SIPA trustee is vested with the same rights as a bankruptcy trustee . . . where SIPA itself expressly dictates the same under § 78fff-1(a)." *Lutz v. Chitwood (In re Donahue Sec.'s Inc.)*, 304 B.R. 797, 798 (Bankr. S.D. Ohio 2003).

Moreover, section 78fff-2(c)(3) of SIPA provides that "the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property *if and to the extent that such transfer is voidable or void under the provisions of title 11* . . . ." 15 U.S.C. § 78fff-2(c)(3) (emphasis added). Here as well, a SIPA trustee's avoidance powers are limited as a bankruptcy trustee's powers would be under the 546(e) safe harbor. A SIPA trustee may only recover a transfer of "customer property . . . if and to the extent that such transfer is voidable . . . under the provisions of title 11." *Id.* Section 546(e) provides that a trustee may *not* rely on sections 544, 547, or 548(a)(1)(B) of the Bankruptcy Code to avoid transfers falling under the protection of 546(e), and therefore a SIPA trustee's avoidance powers should be limited in the same exact manner. Again, this is in no way inconsistent with SIPA.

Furthermore, the policy considerations underlying the safe harbor provisions and SIPA are almost mirror images of each other and any contention that they are inconsistent is wholly without merit. Congress enacted SIPA to address the "threatened [] 'domino effect' involving otherwise solvent brokers that had substantial open transactions with firms that failed," and in order to "restore investor confidence in the capital markets, and upgrade the financial responsibility requirements for registered brokers and dealers." *SIPC v. Barbour*, 421 U.S. 412,

415 (1975).  Similarly, the section 546(e) safe harbor was enacted in light of the "complex system of accounts and guarantees" in which the securities markets operate in order to prevent the "ripple effect" of one securities firm's insolvency "spreading to other firms and [possibly] threatening the collapse of the affected market."  H.R. Rep. No. 97–420, at 1–2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583, 583–84.[6]

Certainly Primeo does not expect the district court to reach the merits of the parties' positions on this motion, nor need it do so.  Against this backdrop, however, it becomes readily apparent that any resolution of this case will require significant interpretation of SIPA.  Indeed, there can be no genuine question that the Trustee will raise the same arguments in this case that he did in *Katz* and others.  In fact, absent conceding to the application of the safe harbor provisions, the Trustee is left with little choice.  Because the Trustee's arguments against the application of the safe harbor provisions are so deeply steeped in the Trustee's interpretation of

---

[6] In 2006, Congress expanded the 546(e) safe harbor to provide protection to transactions involving "financial intermediaries—stockbrokers, financial institutions, financial participants or securities clearing agencies—that often hedge their risk on these transactions through other market transactions, repledge securities collateral received under these transactions, or both."  H.R. Rep. No. 109-648, 2006 WL 6165926, at * 4.

the purpose and intent underlying SIPA, the court's review must go beyond the mere application of the Act.[7]

### B. The Trustee's Claims Require Significant Interpretation of Whether a Retroactive Due Diligence Obligation Can Be Imposed on Customers Under SIPA.

The Trustee's claims in this case are based on an interpretation of SIPA that imposes a retroactive duty on securities customers to investigate their broker. By its Complaint, the Trustee seeks, pursuant to sections 544, 547, and 548 of the Bankruptcy Code, to avoid over 100 million dollars of withdrawals allegedly received by Primeo as both an initial and subsequent transferee of funds from BLMIS. In defense against the Trustee's claims, Primeo intends to argue that it was an innocent investor in BLMIS[8] and therefore the Trustee may not avoid any transfers from BLMIS to Primeo, which represented a return of Primeo's principal investment.

The Trustee's Complaint is premised upon the notion that it can avoid transfers of principal to any BLMIS customer that was on inquiry notice of Madoff's fraud, with harsh penalties to those who did not discover it. According to the Trustee, because Primeo allegedly

---

[7] Although this issue will not arise until Primeo moves to dismiss the claims, this motion to withdraw the reference is timely now. Section 157(d) of the Judicial Code requires a motion to withdraw the reference to be "timely," 28 U.S.C. § 157(d), and "[a]bundant case law holds . . . that the moving party should move under Section 157(d) as soon as possible after receiving notice of the grounds for withdrawing the reference." *Shugrue* v. *Chem. Bank, Inc.* (*In re Ionosphere Clubs, Inc.*), 1995 WL 479480, at *3 (S.D.N.Y. Aug. 11, 1995). Non-Bankruptcy Code federal issues that will arise on a motion to dismiss can trigger mandatory withdrawal of the reference. *Bear, Stearns*, 2001 WL 840187 (granting motion to withdraw the reference prior to consideration of securities law issues on a motion to dismiss). Here, the issues requiring significant interpretation of SIPA will arise on a motion to dismiss. *Iowa Public Employees' Retirement System v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6)…if the defense appears on the face of the complaint."); *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 341 B.R. 451, 459 (Bankr. S.D.N.Y. 2006) (granting a motion to dismiss based on the 546(e) safe harbor); *Miller v. CSFB (In re Refco Secs. Litig.)*, 07 MDL No. 1902 (JSR), 2010 WL 5129072, at *1 (S.D.N.Y. Jan. 12, 2010) (Rakoff, J.), adopting 2009 WL 7242548 (S.D.N.Y. Nov. 13, 2009) (same).

[8] Primeo's status as an innocent investor appears on the face of the Complaint as the Trustee has alleged, at most, that Primeo was on inquiry notice of Madoff's fraud. (Compl. ¶¶ 9-11.)

16

failed to conduct an independent investigation into Madoff's concealed fraud, Primeo should be charged with "willful blindness"—warranting avoidance of all transfers received by Primeo from BLMIS. In other words, the Trustee interprets SIPA to impose a retroactive duty to inquire on BLMIS securities customers.

The Trustee's position is untenable. No federal securities law, including SIPA, imposes upon a brokerage customer a duty to investigate its broker to ensure that the broker is not engaging in fraud.[9] The Trustee's novel interpretation of SIPA to impose a retroactive due diligence obligation on brokerage customers is inconsistent with the entire foundation of securities regulation, which is premised upon customer protection by regulators and regulation, not by other customers.

Faced with this argument in *Picard v. Katz*, a related adversary proceeding, the district court granted a motion to withdraw the reference, in part, because ascertaining the requisite level of knowledge for purposes of avoiding transfers to BLMIS customers required significant interpretation of SIPA. (DeArcy Decl., Exh. B (Transcript of Oral Argument at 33-34, *Picard v. Katz*, No. 11-cv-03605 (JSR) (S.D.N.Y. July 1, 2011)); Exh. C (Order Granting Defendant's Motion to Withdraw the Reference at 1, *Picard v. Katz*, No. 11-cv-03605 (JSR) (S.D.N.Y. July 5, 2011)).) For the same reasons, withdrawal of the reference is mandatory in this case.

### C. The Trustee's Claims Will Require Significant Consideration of Whether SIPA Has Extraterritorial Application.

The resolution of the Trustee's claims under Counts Two and Ten seeking the avoidance and recovery of alleged subsequent transfers that Primeo, a Cayman fund, allegedly received by

---

[9] Nor is there any state law duty to discover, or reveal, fraud that is incorporated into SIPA or any other securities statute. *See, e.g.*, *Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 52-53 (2d Cir. 2005) (finding "no affirmative duty under New York Law" to reveal a debtor's fraud to other creditors).

virtue of its investments in two foreign funds, Herald and Alpha Prime, will necessarily require significant interpretation of SIPA and the presumption against extraterritoriality under *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010). Here, whether the presumption against extraterritorial application of U.S. laws bars the Trustee's avoidance claims will be one of the critical issues of federal non-bankruptcy law that a court must resolve and that may dispose of the Trustee's subsequent transfer claims against Primeo in their entirety. Withdrawal is mandatory for this reason alone.

Primeo intends to argue that SIPA does not apply extraterritorially under the U.S. Supreme Court's recent decision in *Morrison*. The Supreme Court made clear that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." 130 S. Ct. at 2878. The Trustee's subsequent transfer claims against Primeo are asserted pursuant to SIPA. But SIPA contains no clear indication of an extraterritorial application—thus it has none. To the extent SIPA incorporates by reference certain avoidance provisions of the Bankruptcy Code, those provisions also contain no clear indication of an extraterritorial application. Indeed, even prior to *Morrison*, various courts, including one in the Second Circuit, held that certain avoidance provisions in the Bankruptcy Code did not apply extraterritorially. *In re Maxwell Communication Corp.*, 186 B.R. 807, 818 (S.D.N.Y. 1995) (pre-*Morrison* decision, holding that presumption against extraterritoriality prevented application of § 547 of the Bankruptcy Code to foreign transfers); *Barclay v. Swiss Fin. Corp. (In re Estate of Midland Euro Exchange Inc.)*, 347 B.R. 708, 720 (Bankr. C.D. Cal. 2006) (pre-*Morrison* decision, holding that presumption against extraterritoriality prevented application of § 548 of the Bankruptcy Code to foreign transfers). Clearly this issue of SIPA and Bankruptcy Code interpretation "requires consideration of both

18

title 11 and other laws of the United States," mandating withdrawal of the reference. 28 U.S.C. § 157(d).

Here, the Trustee alleges that Primeo, a Cayman fund, through its custodian HSSL, a Luxembourg corporation, invested in two foreign funds: Herald, a Cayman fund, and Alpha Prime, a Bermuda fund. (Compl. ¶¶ 101, 232-33.) Herald's custodian was also HSSL, based in Luxembourg, and Alpha Prime's custodian was HITSB and formerly HSBC Bank Bermuda, which are both Bermuda entities. (*Id.* ¶¶ 99-101.) Presumably, the Trustee's allegations are that Primeo received avoidable subsequent transfers via its redemptions from Herald and Alpha Prime.[10] These transfers were clearly extraterritorial.

In order to resolve these claims, a court will need to determine whether SIPA applies extraterritorially in order to reach such extraterritorial transfers. While Primeo strongly disagrees with the view that SIPA applies extraterritorially in light of *Morrison*, this is an issue of first impression that requires significant interpretation of SIPA, and is a task that must be carried out by an Article III court. *Bear, Stearns Sec. Corp. v. Gredd*, No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001) (quoting *Mishkin*, 220 B.R. at 796 ("'[W]here matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.'"). Recently, in a related adversary proceeding, the district court granted defendants' motion to withdraw the reference, holding that determination of whether the Trustee's claims under another non-bankruptcy federal statute were extraterritorial would require significant interpretation of that statute. (*See* DeArcy Decl., Exh. F (Order Granting Defendants'

---

[10] Primeo intends to argue in its motion to dismiss that the Trustee fails to state a claim as to the subsequent transfers because he fails to trace indirect transfers from BLMIS to Primeo. We assume for purposes of this motion that the alleged subsequent transfers are transfers to Primeo resulting from its investment with Herald and Alpha Prime which themselves invested with BLMIS.

Motion to Withdraw the Reference at 5, *Picard v. Kohn*, 11 Civ. 1181 (JSR) (S.D.N.Y. Sept. 6, 2011) (involving RICO claims).)

## CONCLUSION

For the reasons set forth above, Primeo respectfully requests that the Court enter an order withdrawing the reference of this action to the bankruptcy court.

Dated: New York, New York  MORRISON & FOERSTER LLP
   September 19, 2011


By:  /s/ Gary S. Lee        

Gary S. Lee (glee@mofo.com)
Joel C. Haims (jhaims@mofo.com)
LaShann M. DeArcy (ldearcy@mofo.com)
Angela T. Rella (arella@mofo.com)
Michael Gerard (mgerard@mofo.com)

1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: (212) 468-8042
Facsimile: (212) 468-7900


*Attorneys for Defendant Primeo Fund*