UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        *Debtor*. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        *Plaintiff*,<br><br>        *v*.<br><br>HSBC BANK PLC, *et al.*<br><br>        *Defendants*. | Adv. Pro. No. 09-1364 (BRL) |

# MEMORANDUM OF LAW IN SUPPORT OF HERALD FUND SPC'S MOTION TO WITHDRAW THE REFERENCE

Dated: September 19, 2011

Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
David S. Flugman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

*Attorneys for Herald Fund SPC*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 3 |
| ARGUMENT | 4 |
| I. RESOLUTION OF THIS PROCEEDING WILL REQUIRE SIGNIFICANT INTERPRETATION OF WHETHER SECTION 546(e) CONFLICTS WITH SIPA. | 6 |
| II. THE TRUSTEE'S CLAIMS REQUIRE SIGNIFICANT INTERPRETATION OF WHETHER A RETROACTIVE DUE DILIGENCE OBLIGATION CAN BE IMPOSED ON CUSTOMERS UNDER SIPA. | 9 |
| CONCLUSION | 10 |

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*City of N.Y. v. Exxon Corp.*,
  932 F. 2d 1020 (2d Cir. 1991) ................................................................................................ 5

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
  Nos. 09-5122-bk, 09-5142-bk, 2011 WL 2536101 (2d Cir. June 28, 2011) .............................. 8

*In re Dana Corp.*
  379 B.R. 449 (S.D.N.Y. 2007) ................................................................................................ 5

*Picard v. HSBC Bank PLC*,
  450 B.R. 406 (S.D.N.Y. 2011) ............................................................................................ 5, 6

*Picard v. JP Morgan Chase*,
  11 Civ. 0913 (CM), 2011 WL 2119720 (S.D.N.Y. May 23, 2011) ...................................... 5, 6

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
  922 F.2d 984 (2d Cir. 1990) .................................................................................................... 5

## STATUTES

11 U.S.C. § 546(e) ............................................................................................................... 2, 7, 8

11 U.S.C. § 741(7)(A) ................................................................................................................. 7

11 U.S.C. § 741(8) ...................................................................................................................... 8

15 U.S.C. § 78bbb ....................................................................................................................... 6

28 U.S.C. § 1334 ......................................................................................................................... 4

28 U.S.C. § 157(a) ...................................................................................................................... 4

28 U.S.C. § 157(d) ............................................................................................................... passim

Defendant Herald Fund SPC ("Herald Fund") respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 157(d), to withdraw from the Bankruptcy Court the reference of this adversary proceeding brought by Irving H. Picard (the "Trustee"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"). Substantial questions of non-bankruptcy federal law are implicated by the Trustee's adversary proceeding, mandating withdrawal of the reference.

Herald Fund joins in many of the points presented in defendant Primeo Fund's memorandum of law in support of its motion to withdraw the reference (the "Primeo Motion"), which is being filed today. Specifically, Herald Fund joins in Sections II(A) and II(B) of the Primeo Motion and offers this memorandum to explain how those Sections of the Primeo Motion apply equally to Herald Fund.

**PRELIMINARY STATEMENT**

This action is one of many brought by the Trustee to recover vast sums of money from innocent BLMIS investors to which the BLMIS estate has no legal entitlement. In this case, the Trustee has sued Herald Fund—*which maintained, through its Luxembourg-based custodian, an account at BLMIS which suffered a net loss of more than $1.1 billion under any set of calculations*—for more than $578 million, claiming that he can avoid these sums as preferential and fraudulent transfers under the Bankruptcy Code and New York Debtor & Creditor Law (the "Adversary Proceeding"). As illustrated by a prior decision of this Court withdrawing the reference in this same Adversary Proceeding, as well as the decisions in several nearly-identical Madoff-related adversary proceedings, the Trustee's claims against Herald Fund raise substantial questions requiring significant interpretation of the Securities Investor Protection Act ("SIPA")—a non-bankruptcy federal securities statute—and its interaction with the Bankruptcy

Code, as well as other important federal issues. Pursuant to 28 U.S.C. § 157(d), therefore, these issues must be resolved by an Article III court, not a bankruptcy court.

Ultimately, Herald Fund intends to move to dismiss the Adversary Proceeding on a number of grounds. For purposes of this motion, however, withdrawal of the reference at this time is warranted for at least two reasons. *First*, withdrawal of the reference is mandatory because Herald Fund's defense that the safe harbor provision codified at Section 546(e) of the Bankruptcy Code bars the Trustee from pursuing all but his Section 548(a)(1)(A) claim for actual fraudulent transfers will require significant interpretation of SIPA. Herald Fund intends to show that Section 546(e) applies here either because the alleged transfers were made in connection with a "securities contract" or because they constituted "settlement payments." 11 U.S.C. § 546(e). This defense presents a removable issue because there can be little doubt that the Trustee, as he has done when Herald Fund (and others) previously raised this defense in other actions, will challenge the application of Section 546(e) here on grounds that it is contrary to SIPA's text and purposes. (*See* Section I, *infra*; *see also* Primeo Motion at Section II(A).)

*Second*, withdrawal of the reference is mandatory because Herald Fund's defense to the Trustee's attempt to claw back principal, not fictitious profits, will, again, require significant interpretation of SIPA. Indeed, the Trustee has argued before, and surely will argue here, that SIPA somehow imposes a retroactive due diligence duty on all broker-dealer customers and that a breach of this supposed SIPA duty, by a customer who is willfully blind to the fraudulent activities of a broker-dealer, permits the Trustee to avoid even transfers of principal from a broker-dealer to its customer. (*See* Section II, *infra*; *see also* Primeo Motion at Section II(B).)[1]

---

[1] Herald Fund also intends to move to dismiss on additional grounds. The Court should allow Herald Fund to make additional arguments not raised in this memorandum in a single motion to dismiss in order to avoid the need for multiple motions to dismiss in multiple courts.

2

# BACKGROUND

Herald Fund is an exempted segregated portfolio company incorporated in the Cayman Islands. (*See* Declaration of David S. Flugman in Support of Herald Fund SPC's Motion to Withdraw the Reference ("Flugman Decl."), Ex. A (Amended Complaint) at ¶ 58.) Herald Fund became a "client" of Bernard L. Madoff's BLMIS investment advisory business in 2004 and maintained, through its Luxembourg-based custodian, HSBC Securities Services (Luxembourg) ("HSSL"), an account at BLMIS (the "Herald Fund Account"). (*Id.* ¶¶ 101, 233.) During the four and one half years that the Herald Fund Account at BLMIS was open, Herald Fund gave HSSL more than $1.7 billion and HSSL, in turn, invested over $1.7 billion with BLMIS. (*Id.* ¶¶ 33, 96, 233.) During that same period, BLMIS wired $578 million to HSSL "for the benefit of Herald Fund." (*Id.* ¶ 335; *see also* Flugman Decl., Ex. B (Second Amended Complaint) at ¶¶ 33-35.) The Herald Fund Account thus *lost over $1.1 billion with BLMIS in less than five years*.

The Trustee originally sued Herald Fund in a separate adversary proceeding, Adv. Pro. No. 09-1359 (the "Prior Adversary Proceeding"), on July 14, 2009. The Trustee amended his complaint in that action twice, and the parties fully briefed a motion to dismiss brought by Herald Fund on October 26, 2009. That motion raised some of the same points Herald Fund intends to raise in its forthcoming motion to dismiss this Adversary Proceeding.

On December 5, 2010, before oral argument was held on Herald Fund's pending motion to dismiss, the Trustee amended his complaint in this Adversary Proceeding, which the Trustee originally brought against various HSBC defendants and the Alpha Prime Fund (but not Herald Fund). The Amended Complaint added Herald Fund, and a host of other funds, banks, management companies, and individuals, as defendants. On January 24, 2011, without having decided Herald Fund's pending motion, the Bankruptcy Court granted the Trustee's request to

dismiss the Prior Adversary Proceeding against Herald Fund without prejudice so that the Trustee could proceed against Herald Fund in this Adversary Proceeding. (*See* Flugman Decl, Ex. C (Dismissal Order).) By virtue of various stipulations entered into by the parties, Herald Fund has not yet answered, moved, or otherwise responded to the Amended Complaint. Nor has it been required to do so.

Despite the fact that the Herald Fund Account suffered a net loss of more than $1 billion, the Amended Complaint seeks the return of over $578 million from Herald Fund on various theories. Count 1 seeks to avoid $537,487,933 as preferential transfers pursuant to 11 U.S.C. §§ 547(b), 550(a)(1) & 551. Counts 3 and 4 seek to avoid an additional $25,988,893 as actual fraudulent transfers, pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550 & 551, and as constructive fraudulent transfers, pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a) & 551, respectively. Counts 5, 6, 7, 8, and 9 seek to avoid an additional $14,557,021 as actual or constructive transfers pursuant to Sections 273-276, 276-a, 278-279 of the New York Debtor and Creditor Law, Sections 203(g) and 213(8) of the New York Civil Practice Law and Rules, and 11 U.S.C. §§ 544, 550(a) & 551. Finally, Count 11 interposes an objection to Herald Fund's SIPA claim, which exceeds $1.1 billion even on a net-equity basis and even according to the Trustee's calculations, and Count 12 seeks equitable subordination of all or part of Herald Fund's SIPA claim.

**ARGUMENT**

District courts have original jurisdiction over bankruptcy actions as civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), however, a district court is permitted to refer such actions to the bankruptcy court within its district. A standing order of this Court, dated July 10, 1984 (Ward, Acting C.J.) automatically refers title 11 cases and proceedings commenced in this District to the

Bankruptcy Court. But despite this automatic referral, there are two circumstances in which the district court either may or must withdraw the reference to the bankruptcy court:

> The district court *may* withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

Put otherwise, "a litigant may mandate withdrawal of the bankruptcy reference where the movant shows that, absent the withdrawal, the bankruptcy judge would be obliged 'to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'" *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) (Rakoff, J.) (quoting *City of N.Y. v. Exxon Corp.*, 932 F. 2d 1020, 1026 (2d Cir. 1991)); *see also Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (noting that withdrawal of the reference is required where "substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding"); *Picard v. JP Morgan Chase*, 11 Civ. 0913 (CM), 2011 WL 2119720, at *3 (S.D.N.Y. May 23, 2011). Such mandatory withdrawal is applicable where a bankruptcy court will be called upon to "engage itself in the intricacies of non-Bankruptcy law, as opposed to routine application of that law," *see In re Dana Corp.* 379 B.R. 449, 453 (S.D.N.Y. 2007), and applies with full force to cases involving matters within the bankruptcy court's core jurisdiction. *Exxon*, 932 F.2d at 1026.

Withdrawal of the reference under Section 157(d) is mandatory here because certain of Herald Fund's defenses will require significant interpretation of SIPA, which this Court has held to be a non-bankruptcy federal securities statute. *See HSBC*, 450 B.R. at 410 (noting that "SIPA

5

expressly provides that it shall be considered an amendment to, and section of, the Securities Exchange Act of 1934, and for this reason is codified in Title 15 (where securities laws are placed), rather than in Title 11 (where bankruptcy laws are placed)") (citing 15 U.S.C. § 78bbb)). Indeed, because SIPA is a non-bankruptcy federal statute that incorporates title 11 to the extent it is consistent with SIPA, any "substantial issue under SIPA is therefore, almost by definition, an issue the resolution of which requires consideration of both title 11 and other laws of the United States." *HSBC*, 450 B.R. at 410 (quoting 28 U.S.C. § 157(d)); *see also J.P. Morgan Chase*, 2011 WL 2119720, at *6. Accordingly, any "substantial issue under SIPA" requires mandatory withdrawal of the reference. *HSBC*, 450 B.R. at 410.

More specifically, Herald Fund's anticipated defenses, and the Trustee's expected responses, will implicate at least two substantial issues that will require significant interpretation of SIPA. *First*, whether—as the Trustee has argued before and surely will argue again—application of Section 546(e) to these cases undermines and conflicts with the purpose and text of both the Bankruptcy Code and SIPA. (Flugman Decl., Ex. D (Trustee's Opposition to Herald Fund's Motion to Dismiss the Prior Adversary Proceeding) at 14, 16.) *Second*, whether—as the Trustee has argued before and surely will argue again—SIPA imposes a retroactive due diligence requirement on customers of broker-dealers such that the Trustee can pursue avoidance claims, even as to principal, against those customers who breach that supposed SIPA duty. (*See id.*, Ex. E (Trustee's Oppostion to Sterling Defendants' Motion to Dismiss) at 83-89.)

## I. RESOLUTION OF THIS PROCEEDING WILL REQUIRE SIGNIFICANT INTERPRETATION OF WHETHER SECTION 546(e) CONFLICTS WITH SIPA.

Herald Fund intends to show that the "securities contract" and "settlement payment" provisions of Section 546(e) preclude the Trustee from pursuing Counts 1 and 4 through 9 against Herald Fund as a matter of law. By its plain terms, the application of Section 546(e) bars

6

all fraudulent transfer claims except those brought pursuant to the actual fraud provisions of Bankruptcy Code Section 548(a)(1)(A). 11 U.S.C. § 546(e).

The "securities contract" provision of the Section 546(e) safe harbor bars a trustee from recovering transfers made by a stockbroker or financial institution "in connection with a securities contract." 11 U.S.C. § 546(e). Section 741(7) of the Bankruptcy Code, as amended in 2005, defines a "securities contract" as, among other things, "(i) a contract for the purchase, sale, or loan of a security" and "(x) a master agreement that provides for an agreement or transaction referred to in clause (i)…." 11 U.S.C. § 741(7)(A).

Here, the Trading Authorization Limited to Purchases and Sales of Securities and Options (the "Trading Authorization") entered into in connection with the opening of the Herald Fund Account constitutes a securities contract, as that phrase is used in Section 546(e), because it clearly contemplates the purchase and sale of securities by BLMIS. That Trading Authorization authorized BLMIS to "buy, sell and trade in stocks, bonds, options and any other securities," (*see* Flugman Decl, Ex. F (Trading Authorization)), and, thus, it meets the definition of a securities contract under Section 741(7)(A)(i) and, in turn, Section 546(e). Moreover, because the Trading Authorization contemplated multiple securities transactions to be executed by BLMIS, the Trading Authorization also is a "master agreement" under Section 741(7)(A)(x) and, accordingly, constitutes a "securities contract" for purposes of Section 546(e).

The transfers at issue here are also protected by the Section 546(e) safe harbor for the independent reason that they constitute "settlement payments" for purposes of that Section. That provision of Section 546(e) protects any "settlement payment" made by a broker-dealer or other financial institution and, accordingly, applies here. 11 U.S.C. § 546(e). The Bankruptcy Code defines a "settlement payment" broadly as "a preliminary settlement payment, a partial

settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). The Second Circuit has held that the term "settlement payment" is to be interpreted "extremely broad[ly]" and that the Section 546(e) safe harbor protects as a settlement payment any transfer that "complete[s] a transaction in securities." *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, Nos. 09-5122-bk, 09-5142-bk, 2011 WL 2536101, at *5, *7 (2d Cir. June 28, 2011). Notably, the fact that no actual securities were bought or sold is of no moment, as the Second Circuit has rejected "the contention that a securities transaction necessarily involves a purchase or sale." *See id*. at *7 (noting in the context of what constitutes a settlement payment that "[n]othing in the text of § 741(8) or in any other provision of the Bankruptcy Code supports a purchase or sale requirement").

Here, the Trustee has alleged that HSSL, on behalf of Herald Fund, held the Herald Fund Account (Account No. 1FR109) at BLMIS, a broker-dealer; that funds sent to BLMIS for investment were held in a BLMIS account at JPMorgan Chase & Co.—a financial institution as that term is defined in the Bankruptcy Code; that funds were transferred from BLMIS to HSSL, on behalf of Herald Fund, from the BLMIS account at JPMorgan Chase; that BLMIS purported to transfer funds from completed securities transactions entered into by BLMIS using funds attributable to the Herald Fund Account; and that the transfers took place long before BLMIS's bankruptcy filing date or the commencement of this case. (Flugman Decl., Ex. A (Amended Complaint) at ¶¶ 8, 125-26, 233, 324.) In its eventual motion to dismiss, Herald Fund will show that these same facts, taken as true, evidence "settlement payments" protected by the Section 546(e) safe harbor.

In response to these defenses in other cases, the Trustee has argued before—and surely will argue again—that allowing a party, like Herald Fund, to invoke the safe harbor protections of Section 546(e) in these cases would "undermine one of the core foundations of the Bankruptcy Code and SIPA," and ultimately would lead to a construction of Section 546(e) that would lie "in direct conflict with the principles underlying SIPA." (*See* Flugman Decl., Ex. D (Trustee's Opposition to Herald Fund's Motion to Dismiss the Prior Adversary Proceeding) at 14, 16.) In other words, the Trustee's primary rejoinder to this defense turns on the significant interpretation of both the Bankruptcy Code and SIPA. It necessarily follows, therefore, that withdrawal of the reference as to this issue is mandatory because, as conceded by the Trustee himself, its resolution "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."[2] 28 U.S.C. § 157(d).

## II. THE TRUSTEE'S CLAIMS REQUIRE SIGNIFICANT INTERPRETATION OF WHETHER A RETROACTIVE DUE DILIGENCE OBLIGATION CAN BE IMPOSED ON CUSTOMERS UNDER SIPA.

Herald Fund also intends to establish that it was an innocent investor under no duty to investigate the activities of BLMIS, and that the Trustee's attempt to invoke SIPA to avoid transfers of principal to HSSL on behalf of Herald Fund, by arguing that Herald Fund was on inquiry notice of Madoff's fraud, is untenable as a matter of law.

In this lawsuit, all of the transfers the Trustee seeks to avoid consist of returned principal (not profits). Relying on a strained interpretation of SIPA, the Trustee has alleged, in essence, that he is entitled to avoid transfers of principal from BLMIS to HSSL for the benefit of Herald

---

[2] The Trustee can also be expected to argue, as he has in the past, that Section 546(e) does not apply in a SIPA proceeding and "has no application in a Ponzi scheme," that the transfers from BLMIS were not made in connection with a "securities contract," and that applying Section 546(e) to these cases would "lead to an absurd result." (Flugman Decl, Ex. D (Trustee's Opposition to Herald Fund's Motion to Dismiss the Prior Adversary Proceeding) at 3, 12-18; *see also id.*, Ex. E (Trustee's Opposition to Sterling Motion to Dismiss) at 90-91.) These expected arguments also present grounds for withdrawal of the reference.

Fund because Herald Fund was willfully blind to its supposed duty to detect the Ponzi scheme being perpetrated by BLMIS. (*See, e.g.*, Flugman Decl., Ex. A (Amended Complaint) at ¶¶ 144-226.) The Trustee makes these allegations notwithstanding the fact that this supposed retroactive duty is not supported by SIPA or any other federal securities law. (*See* Primeo Motion at Section II(B).) In any event, because it is plain that resolution of these issues will require significant interpretation of SIPA and other federal laws, withdrawal of the reference with respect to these issues is mandatory pursuant to 28 U.S.C. § 157(d).

## CONCLUSION

For all the foregoing reasons, and for those set forth in Sections II(A) and II(B) of the Primeo Motion, Herald Fund SPC respectfully requests that the Court enter an order withdrawing the reference of this action to the Bankruptcy Court and setting a briefing schedule for Herald Fund's forthcoming motion to dismiss.

Dated: September 19, 2011

 */s Joseph Serino, Jr.*
Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
David S. Flugman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Herald Fund SPC*