**Hearing Date: May 29, 2025**
**Opposition Date: April 25, 2025**
**Reply Date: May 20, 2025**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION | Adv. Pro. No. 08-01789 (LGB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 09-01364 (LGB) |
| Plaintiff, | |
| v. | |
| HSBC BANK PLC, HSBC BANK USA, N.A., HSBC USA, INC., HSBC PRIVATE BANK (SUISSE) S.A., and SICO LIMITED, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND .................................................................................... 3

    I.      The Relevant Parties ................................................. 3

    II.     The New Relationship Transfers ............................... 4

    III.    The Trustee's 2011 Avoidance of the Underlying Transfers.................... 4

    IV.   The Fairfield Liquidators' Claims Against HSBC.................... 5

    V.    The Trustee's 2009–2015 Litigation Strategy Against
         HSBC ...................................................................... 6

    VI.   The Trustee's 2015 Proffered Amended Complaint................... 9

    VII.  The Second Circuit's Reversal and Remand ............... 10

    VIII. The Second Amended Complaint ............................. 11

LEGAL STANDARD............................................................................ 12

ARGUMENT........................................................................................ 13

    I.      The Trustee's claims are untimely................................ 14

    II.     The Trustee's claims do not relate back. .................... 15

CONCLUSION.................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*ASARCO LLC v. Goodwin*,
756 F.3d 191 (2d Cir. 2014)...........................................................................    18

*Baker v. New York City*,
934 F. Supp. 533 (E.D.N.Y. 1996) ................................................................    12

*Hartford Fire Ins. Co. v. W. Union Co.*,
630 F. Supp. 3d 431 (S.D.N.Y. 2022)............................................................    12

*In re Ditech Holding Corp.*,
2024 WL 2232439 (Bankr. S.D.N.Y. May 16, 2024)....................................    12

*In re M. Fabrikant & Sons, Inc.*,
480 B.R. 480 (S.D.N.Y. 2012).......................................................................    15-16

*In re Metzeler*,
66 B.R. 977 (Bankr. S.D.N.Y. 1986).............................................................    16

*Krupski v. Costa Crociere S.P.A*,
560 U.S. 538 (2010)........................................................................................    24

*Off. Comm. of Unsecured Creditors v. Pirelli Commc'ns Cables & Sys. USA LLC*,
367 B.R. 428 (Bankr. S.D.N.Y. 2007)...........................................................    16

*Picard v. BNP Paribas S.A. et al.*,
594 B.R. 167 (Bankr. S.D.N.Y. Oct. 3, 2018) (Bernstein, J.)......................    *passim*

*Picard v. BNP Paribas S.A., et al.*,
2024 WL 2839330 (Bankr. S.D.N.Y. June 4, 2024) (Morris, C. J.) .......................    *passim*

*Picard v. Citibank, N.A*,
12 F.4th 171 (2d Cir. 2021) ...........................................................................    10

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
603 B.R. 682 (Bankr. S.D.N.Y. 2019)...........................................................    19

*Slayton v. Am. Express Co.*,
460 F.3d 215 (2d Cir. 2006)...........................................................................    15

**<u>Rules and Statutes</u>**

11 U.S.C. § 550(f)................................................................................................................    1

11 U.S.C. § 5350(f)............................................................................................................    14

Fed. R. Civ. P. 15(c) ..........................................................................................................    15

Defendants HSBC Private Bank (Suisse) S.A. ("PBRS") and HSBC Bank USA, N.A. ("HBUS"), by and through their undersigned counsel, submit this memorandum of law in support of their motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) dismissing certain claims brought against them by Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT[1]

The Bankruptcy Code gives the Trustee one year following the avoidance of a transfer to seek to recover that transfer from a subsequent transferee. *See* 11 U.S.C. § 550(f). This motion concerns three groups of transfers as to which the Trustee's claims were filed *more than a decade late*. The New Relationship Transfers at issue, alleged in the Trustee's Second Amended Complaint filed December 27, 2023, are:

- $283,291,567 allegedly received by PBRS from Fairfield Sentry Ltd. ("Sentry");

- $9,182,501 allegedly received by PBRS from Fairfield Sigma Ltd. ("Sigma" and, together with Sentry, the "Fairfield Funds");

- $31,775,129 allegedly received by HBUS from Sentry.

The Trustee alleges that each of these transfers was, in whole or in part, comprised of money received by the Fairfield Funds from BLMIS. But the Trustee avoided the initial transfers from BLMIS to the Fairfield Funds on July 13, 2011. Thus, the one-year limitations period following avoidance of the underlying initial transfers under Section 550(f) of the Bankruptcy Code expired in 2012.

The Trustee's claims with respect to the New Relationship Transfers are dramatically untimely. The very first operative complaint in which the Trustee sought recovery of *any* transfers

---

[1]    Capitalized terms not otherwise defined in this preliminary statement have the meaning ascribed to them elsewhere in this memorandum of law.

from either of the Fairfield Funds to PBRS or HBUS was the December 27, 2023 Second Amended

Complaint, filed more than a decade past the limitations period.  These claims should therefore be

dismissed.

The fact that the Trustee has only recently asserted these claims is no accident.  It was,

instead, a strategic decision that the Trustee made in pursuing litigation against HSBC in the early

days of the BLMIS liquidation.  On December 5, 2010, the Trustee filed a lawsuit against various

HSBC entities, the crux of which was that those entities allegedly aided and abetted BLMIS's

Ponzi scheme "by encouraging investment into an international network of [BLMIS] feeder funds"

despite having "knowledge of the serious risks of fraud that Madoff posed."[2]  The Trustee's theory

in his case against PBRS and HBUS was not that those entities themselves *received* any money

from BLMIS that they were liable to pay back.  It was instead that those entities aided and abetted

Madoff's solicitation of their *clients'* investments *into* the Ponzi scheme.  The Trustee's 2010

complaint included some claims to recover *fees* allegedly received by certain HSBC entities but

did not assert any claim to generally recover all transfers to HSBC entities or to recover *any*

*transfers* made by the Fairfield Funds to PBRS or HBUS.

The Trustee's aiding and abetting claims were dismissed by the District Court in 2011.[3]

Years later, the Trustee has now tried to pivot to bring claims against PBRS and HBUS that not

only were not timely asserted, but that PBRS and HBUS had no idea would ever be asserted against

them by the Trustee.  The facial untimeliness of the Trustee's claims cannot be disputed.  The

December 2023 Second Amended Complaint was the first time that the Trustee ever asserted these

claims.  And the first time he even suggested that he might seek to do so – a proffered proposed

---

[2]    FAC ¶¶ 1, 12.
[3]    *See* Opinion and Order (July 28, 2011), ECF No. 119 (the "Aiding & Abetting Order"), at 3, 25–26.

2

amended complaint filed on June 26, 2015 that never became operative – was *itself* filed more than three years out of time.

The Trustee cannot credibly argue that the claims relate back to the filing of his complaint in 2010. For one, that complaint mentioned Sentry only once and alleged no transfers from either of the Fairfield Funds to PBRS or HBUS (or *any* HSBC entity). At the same time, the Trustee cannot plead mistake because in settling with Sentry in 2011, he entered into an agreement with the Fairfield Liquidators to divide between them the proceeds of their collection activities, and the Liquidators have been suing PBRS and HBUS in this court openly and notoriously since 2010.

Two recent decisions by two different judges in this SIPA liquidation have held that where the Trustee "ha[s] not previously alleged a transfer between that transferee and relevant fund," subsequent transfer claims in relation to such "New Relationship Transfers" are time-barred if they were not filed within the statute of limitations period.[4] Those decisions are the law of this case, and applying them here leads inexorably to the dismissal of the Trustee's untimely claims.

## BACKGROUND

### I.    The Relevant Parties

This case is one of many in which the Trustee seeks to trace and recover transfers of customer property that BLMIS made to its customers and that the Trustee alleges, in turn, were paid over to subsequent transferees. Here, the BLMIS customer was Sentry, an investment company established in the British Virgin Islands ("BVI"). *See* Am. Compl. (Dec. 27, 2023), ECF No. 745 (the "Second Amended Complaint" or "SAC"), ¶ 351 (alleging that Sentry "received

---

[4]    *Picard v. BNP Paribas S.A. et al.*, Adv. Pro. No. 12-01576 (CGM), 2024 WL 2839330, at *20 (Bankr. S.D.N.Y. June 4, 2024) (Morris, C. J.); *accord Picard v. BNP Paribas S.A. et al.*, 594 B.R. 167, 207–212 (Bankr. S.D.N.Y. Oct. 3, 2018) (Bernstein, J.).

transfers directly from BLMIS").[5]  Sigma, also a BVI investment company, was invested in Sentry.
*See* Am. Compl. (July 20, 2010), Adv. Pro. No. 09-01239, ECF No. 23 (the "Fairfield Complaint"),
¶ 51.[6]  PBRS and HBUS are entities that provide, among other services, private banking services
to primarily foreign clients.  *See* SAC ¶¶ 63–64.  In his Second Amended Complaint, the Trustee
alleges that these entities purchased shares of Sentry (in the case of PBRS and HBUS) or Sigma
(in the case of PBRS) and that certain of the funds transferred by BLMIS to Sentry found their
way into transfers received by PBRS and HBUS.  *See* SAC ¶¶ 73, 360–63.  In fact, as the Trustee
has acknowledged in prior filings, PBRS and HBUS were not themselves investors in the Fairfield
Funds—they were banking entities that made investments of client funds, at their clients' direction,
into investment companies like the Fairfield Funds.  *See* Am. Compl. (Dec. 5, 2010), ECF No. 170
(the "First Amended Complaint" or "FAC"), ¶ 292.[7]

## II.    The New Relationship Transfers

As discussed above, the "New Relationship Transfers" at issue in this motion are alleged
subsequent transfers (1) from Sentry to PBRS of at least $283,291,567, (2) from Sentry to HBUS
of at least $31,775,129, and (3) from Sigma to PBRS of at least $9,182,501.  *See* SAC ¶ 361
(alleging transfers from Sentry); *id.* ¶¶ 364–65 (alleging transfers from Sigma).  These transfers
were in fact ordinary-course payments made when PBRS or HBUS redeemed their clients'
investments in Sentry and Sigma.

## III.    The Trustee's 2011 Avoidance of the Underlying Transfers

In 2009, the Trustee commenced an adversary proceeding against the Fairfield Funds,
seeking to avoid and recover $3.2 billion of allegedly fraudulent initial transfers the Fairfield Funds

---

[5]    A copy of the SAC is attached as Exhibit A to the Declaration of Nowell D. Bamberger in Support of
Defendants' Motion for Judgment on the Pleadings (the "Bamberger Decl.").
[6]    A copy of the Fairfield Complaint is attached as Exhibit C to the Bamberger Decl.
[7]    A copy of the FAC is attached as Exhibit I to the Bamberger Decl.

received from BLMIS.  *See* Compl., Adv. Pro. No. 09-01239, ECF No. 1 (May 18, 2009 complaint against Fairfield Sentry, Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P.);[8] Fairfield Complaint ¶¶ 536, 539.  The Trustee and Sentry entered into a settlement in 2011 that resulted in the avoidance of those transfers, a partial payment by Sentry to the Trustee, and allowance of $230,000,000 of Sentry's customer claim.  *See* Consent Judgment (July 13, 2011), Adv. Pro. No. 09-01239, ECF No. 109 (approving Fairfield settlement);[9] *see also* Settlement Agreement (May 9, 2011), Adv. Pro. No. 09-01239, ECF No. 69-2 (the "Fairfield Settlement"), at 13.[10]  As the Court has previously recognized, the Court's approval of that settlement consummated the avoidance, pursuant to Section 548 of the Bankruptcy Code, of all of BLMIS's initial transfers to Sentry.  *See Picard v. BNP Paribas S.A., et al.*, Adv. Pro. No. 12-01576 (CGM), 2024 WL 2839330, at *18 (Bankr. S.D.N.Y. June 4, 2024) ("This Court approved settlements between the Trustee and the Fairfield and Tremont funds in 2011, under which the initial transfers from BLMIS were avoided.").

### IV.    The Fairfield Liquidators' Claims Against HSBC

In 2009 and 2010, the Liquidators of the Fairfield Funds (the "Fairfield Liquidators"), who are not parties here, commenced actions against PBRS, HBUS, and other HSBC entities, seeking to claw back purportedly overvalued redemption payments the defendants received in exchange for their shares in the Fairfield Funds—or, in other words, many of the very same redemptions the Trustee now seeks to pursue.  *See* Compl., Adv. Pro. No. 10-03633, ECF No. 6 (Fairfield Liquidators' Sep. 21, 2010 amended complaint against PBRS);[11] Compl., Adv. Pro. No. 10-03634, ECF No. 4 (Fairfield Liquidators' Sep. 21, 2010 amended complaint against HBUS, among other

---

[8]     A copy of this complaint is attached as Exhibit B to the Bamberger Decl.
[9]     A copy of this consent judgment is attached as Exhibit E to the Bamberger Decl.
[10]    A copy of the Fairfield Settlement is attached as Exhibit D to the Bamberger Decl.
[11]    A copy of this complaint is attached as Exhibit F to the Bamberger Decl.

defendants).[12]  Those cases have been actively litigated in this Court, the District Court, and the

Second Circuit for the past sixteen years, and they were pending and being actively litigated even

before the Trustee and the Fairfield Liquidators entered into their 2011 settlement.

A term of the settlement between Sentry and the Trustee is that the Trustee and the Fairfield

Liquidators will work together to recover transfers made by Sentry to its redeeming shareholders,

and the proceeds of those redemptions will be divided between the Trustee and the Liquidators.

*See* Fairfield Settlement at 6.  Indeed, the Liquidators have disclosed in filings with the Second

Circuit that they "and the BLMIS Trustee have affirmatively coordinated their efforts with regard

to such defendants, pursuant to the cooperation and information-sharing provisions of the

Settlement Agreement" and that, as of 2018, they and "the BLMIS Trustee have for over six years

engaged in regular, cooperative discussions and coordination to facilitate recoveries against this

broad category of common defendants."  Brief for *Amicus Curiae* Kenneth Krys in Support of

Appellant and Partial Reversal (Sept. 25, 2018), Case No. 17-2992 (2d Cir.), D.I. 1282, at 11.[13]

## V.    The Trustee's 2009–2015 Litigation Strategy Against HSBC

The Trustee filed his initial complaint in this adversary proceeding on July 15, 2009,

naming as defendants HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A. ("HSSL"),

and Alpha Prime Fund Limited ("Alpha Prime").  *See* Compl. (July 15, 2009), ECF No. 1.[14]  The

Trustee's 2009 complaint alleged that, for Alpha Prime's benefit, HSBC Bank plc and HSSL

invested $227,550,000 in BLMIS and received over $85,824,710 in wires from BLMIS.  *See id.*

¶¶ 30–39.  The 2009 complaint did not allege any initial or subsequent transfers of BLMIS

customer property to any HSBC entities other than HSBC Bank plc and HSSL (or even name any

---

[12]     A copy of this complaint is attached as Exhibit G to the Bamberger Decl.
[13]     A copy of the Brief for *Amicus Curiae* Kenneth Krys is attached as Exhibit K to the Bamberger Decl.
[14]     A copy of this complaint is attached as Exhibit H to the Bamberger Decl.

other HSBC entities) and did not allege any transfers to any HSBC entities from the Fairfield Funds.

On December 5, 2010, the Trustee filed the First Amended Complaint against (among other defendants) PBRS and HBUS, the central theory of which was that PBRS, HBUS, and other "HSBC Defendants" had aided and abetted the BLMIS fraud by "encouraging investment into an international network of [BLMIS] feeder funds" – for which "HSBC" had allegedly served as "marketer, custodian, and administrator" – despite having knowledge of numerous "indicia of fraud surrounding BLMIS." FAC ¶¶ 1–23 (summarizing allegations against HSBC defendants). The First Amended Complaint also sought to recover subsequent transfers that the "HSBC Defendants" had purportedly received from BLMIS in the course of facilitating Madoff's fraud. *None* of those transfers were allegedly received from Sentry or Sigma. Rather, the Trustee pointed to the following transfers:

| Alleged Transferor | Alleged Transferee | Amount |
|---|---|---|
| Rye Select Broad Market Fund, L.P. | HBUS | $63,500,000 (¶ 258) |
| Greenwich Sentry, L.P. | HBUS | $13,000,000 (¶ 261) |
| Harley International (Cayman) Limited | HSBC Bank plc | No specific amount pled (¶ 263) |
| Harley International (Cayman) Limited | HBUS | No specific amount pled (¶ 265) |
| Thema International Fund plc | HSBC Bank plc | No specific amount pled (¶ 268) |
| Senator Fund SPC | HSBC Bank plc | No specific amount pled (¶ 268) |
| Rye Select Broad Market XL Portfolio Limited | HSBC Bank plc | $15,900,000 (¶ 271) |
| Senator Fund SPC | HBUS | No specific amount pled (¶ 274) |

The First Amended Complaint also alleged in general terms that the "HSBC Defendants" (defined to include PBRS and HBUS) received as subsequent transfers "portion[s]" of BLMIS's initial transfers to certain "Non-Party Funds," which the First Amended Complaint defined as

Greenwich Sentry, L.P., Rye Select Broad Market Fund, L.P., Rye Select Broad Market Portfolio Limited, Harley International (Cayman) Limited, Kingate Global Fund Ltd., Kingate Euro Fund, Ltd., Landmark, Defender Limited, and Square One Fund Limited. *See* FAC ¶¶ 376-385. Again, none of those funds were Sentry or Sigma.

In addition, the First Amended Complaint alleged that the "HSBC Defendants" (among others) received subsequent transfers (including over $25,000,000 in fees) from certain "Feeder Fund Defendants," defined as Primeo Fund, Herald Fund SPC, Herald (Lux) SICAV, Alpha Prime Fund Limited, Senator Fund SPC, Hermes International Fund Limited, Lagoon Investment Limited, Thema Fund Ltd., Thema Wise Investments Ltd., Thema International Fund plc, Geo Currencies Ltd. S.A., and Lagoon Investment Trust. *Id.* ¶¶ 244, 277, 280, 352. Again, the Trustee did not plead any transfers from Sentry or Sigma.

Indeed, the First Amended Complaint did not identify *any* particular transfers to PBRS at all. Rather, as to PBRS, the First Amended Complaint exclusively made allegations in furtherance of the Trustee's ill-fated theory that PBRS aided and abetted BLMIS's fraud and breached its fiduciary duty to investors—the primary theory of liability on which the First Amended Complaint sought recovery from the "HSBC Defendants."[15] *See* FAC ¶ 551 (alleging PBRS aided and abetted breach of fiduciary duty), ¶ 558 (alleging PBRS aided and abetted fraud), ¶¶ 178, 213–214, 292–295, 300–304 (all alleging "HSBC Private Bank" (a group of entities including PBRS) had access to and was aware of indicia of Madoff's fraud). The First Amended Complaint also included aiding and abetting allegations specific to HBUS. *See id.* ¶ 141.

The existence of Sentry and Sigma was not far from the Trustee's mind when he asserted these claims. The First Amended Complaint specifically incorporated by reference the Trustee's

---

[15]    The District Court dismissed these aiding and abetting claims, along with all of the common law claims in the First Amended Complaint, in 2011. *See* Aiding & Abetting Order at 3, 25–26.

complaint against Sentry and Sigma, in which the Trustee sought to avoid alleged initial transfers from BLMIS to the Fairfield Funds. *See* FAC ¶ 358 (incorporating by reference the allegations in the Trustee's July 20, 2010 Fairfield Complaint). Had the Trustee wished to allege that certain of those funds made their way to PBRS or HBUS, and assuming the facts would support that allegation, he readily could have done so. But he did not.[16]

## VI.    The Trustee's 2015 Proffered Amended Complaint

The earliest the Trustee asserted that either PBRS or HBUS received subsequent transfers from Sentry or Sigma was in 2015 – more than three years after settling his action against the Fairfield Funds – in a proffered (but ultimately not operative) amended complaint. *See* ECF No. 399 (the "2015 Proffered Amended Complaint").[17] The Trustee proffered the 2015 Proffered Amended Complaint in support of his briefing in response to Defendants' motion to dismiss on grounds of extraterritoriality and comity. *See* Mem. Dec. (Dec. 14, 2016), ECF No. 438, at 8. As relevant to this motion, the 2015 Proffered Amended Complaint would have alleged the following subsequent transfers from the Fairfield Funds to PBRS and HBUS:

| Transferor | Transferee | Amount |
|---|---|---|
| Sentry | PBRS | Approximately $363,383,585 (¶ 486) |
| Sigma (from at least $783,320,553 transferred to Fairfield Sigma by Fairfield Sentry (¶ 483)) | PBRS | Approximately $9,195,298 (¶ 485) |
| Sentry | HBUS | Approximately $31,775,129 (¶ 487) |

---

[16]     While the First Amended Complaint alleged subsequent transfers to several HSBC Defendants from "Sentry," *see* FAC ¶ 377, the Trustee made clear that "Sentry" referred to an entirely different fund named Greenwich Sentry, L.P., *see id.* at 7 (defining Greenwich Sentry, L.P. as "Sentry"); *compare id.* ¶ 359 (alleging that "BLMIS made transfers to Sentry (account number 1G0092) of approximately $206 million" and defining such transfers as the "Sentry Initial Transfers") *with* Fairfield Complaint ¶ 40 (explicitly identifying account number 1G0092 as belonging to "GS," or Greenwich Sentry) *and* ¶ 536 (alleging that BLMIS made transfers of "approximately $3.0 billion to Fairfield Sentry . . . [and] $206.0 million to [Greenwich Sentry, L.P] . . . .").

[17]     A copy of the 2015 Proffered Amended Complaint is attached as Exhibit J to the Bamberger Decl.

But the 2015 Proffered Amended Complaint does not change the limitations analysis. Even if the claims in the Trustee's 2015 Proffered Amended Complaint had become operative, they nonetheless would have been filed more than four years after the 2011 avoidance of the initial transfers to the Fairfield Funds, and thus more than three years after expiration of the limitations period. However, after Defendants prevailed on grounds of extraterritoriality and comity in this Court and in the District Court, the Trustee never filed the 2015 Proffered Amended Complaint as an operative amended complaint, and it is therefore a legal nullity. Because the claims the Trustee now seeks to bring were never previously before the Court, and therefore were not part of any appeal, nothing (besides their untimeliness) prevented the Trustee from asserting these claims in the intervening decade.

## VII.    The Second Circuit's Reversal and Remand

In 2021, the Second Circuit decided *Picard v. Citibank, N.A.*, which held that subsequent transferee defendants, not the Trustee, have the burden of pleading facts to show that they received transfers in good faith. *See* 12 F.4th 171, 195–200 (2d Cir. 2021). As a result, the Trustee's claims against PBRS and HBUS that had previously been dismissed were remanded for further proceedings. Following the remand order, HSBC's counsel contacted the Trustee's counsel in September 2021 to inquire as to how the Trustee planned to proceed with his claims against various HSBC entities in light of upcoming conferences before the Court. *See* Decl. ¶ 3. The Trustee waited nearly two more years, all the while pursuing claims against other defendants, to provide HSBC's counsel with a draft of a proposed amended complaint. *Id.* Following discussions with the Trustee's counsel, the parties entered into a stipulation providing for the filing of the amended

complaint, subject to a reservation of all rights and defenses. *See* Stip. (Dec. 26, 2023), ECF No. 744.

## VIII.  The Second Amended Complaint

On December 27, 2023, the Trustee filed his operative Second Amended Complaint against, *inter alia*, PBRS and HBUS pursuant to the parties' negotiated stipulation, which expressly preserved Defendants' statute of limitations defenses. *See* SAC, ECF No. 745; Stip., ECF No. 744, ¶ 6 (reserving Defendants' "right to argue that any and all claims and allegations asserted in the proposed Second Amended Complaint do not relate back to the date of any prior pleading").  In the Second Amended Complaint, the Trustee alleged for the first time in any operative pleading that PBRS and HBUS received subsequent transfers (totaling $324,249,197) from the Fairfield Funds—*i.e.*, the New Relationship Transfers.  Before the Second Amended Complaint, the Trustee had never before pled that *any* HSBC entity received subsequent transfers from either Sentry or Sigma.  The New Relationship Transfers alleged for the first time in the Second Amended Complaint are as follows:

| Alleged Initial Transferee | Date of Initial Transfer Avoidance | Alleged Subsequent Transferee | Alleged Amount | Date Allegation First Proffered[18] | Date Complaint Filed[19] |
|---|---|---|---|---|---|
| Sentry | July 13, 2011 | PBRS | At least $283,291,567 | June 26, 2015 (¶ 486) | December 27, 2023 (¶ 361) |
| Sentry | July 13, 2011 | HBUS | At least $31,775,129 | June 26, 2015 (¶ 487) | December 27, 2023 (¶ 361) |
| Sigma | July 13, 2011 | PBRS | At least $9,182,501 | June 26, 2015 (¶ 485) | December 27, 2023 (¶¶ 364-365) |

---

[18]      The date and citations in this column refer to the 2015 Proffered Amended Complaint.

[19]      The date and citations in this column refer to the SAC.

On July 1, 2024, in light of Judge Morris's decision in *Picard v. BNP Paribas S.A. et al.*, Defendants sent a letter to the Trustee's counsel urging him to voluntarily dismiss his claims to claw back the New Relationship Transfers, given that those claims are plainly time-barred. *See* Bamberger Decl. Ex. L (July 1, 2024 Letter from N. Bamberger to O. Warshavsky, M. Usitalo). After repeated follow-up from counsel for PBRS and HBUS, counsel for the Trustee responded on December 12, 2024 that the Trustee continues to believe that his claims regarding the New Relationship Transfers are not time-barred. *See* Bamberger Decl. Ex. M (December 12, 2024 Email Correspondence from M. Usitalo to N. Bamberger). Counsel for the Trustee claimed (without elaborating) that (1) "[t]he allegations of the original complaint put HSBC on notice that the Trustee would be seeking additional transfers, including those from Fairfield Sentry," and (2) PBRS is "uniquely positioned to know the transfers it received from BLMIS, and knew at the time of the complaint that it received nearly $300 million in transfers from Fairfield Sentry." *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "'a party may move for judgment on the pleadings' anytime '[a]fter the pleadings are closed—but early enough not to delay trial.'" *In re Ditech Holding Corp.*, 2024 WL 2232439, at *6 (Bankr. S.D.N.Y. May 16, 2024) (quoting Fed. R. Civ. P. 12(c)). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Hartford Fire Ins. Co. v. W. Union Co.*, 630 F. Supp. 3d 431, 434 (S.D.N.Y. 2022) (quotations and citation omitted). "The Rule 12(c) motion is appropriate in cases where the statute of limitations provides an effective bar against the plaintiff's claim." *Baker v. New York City*, 934 F. Supp. 533, 534 (E.D.N.Y. 1996).

12

## ARGUMENT

The Trustee's claims to recover the New Relationship Transfers are time-barred on the face of the pleadings and judicially-noticeable facts, and this Court should grant judgment on the pleadings dismissing those claims. The Trustee did not allege the New Relationship Transfers, or bring any claims with respect to such transfers, until more than a decade after the applicable statute of limitations period had expired. Moreover, under a straightforward application of law, including the law of this case, the Trustee's claims do not relate back for purposes of Rule 15 because the Trustee had never before pled *any* transfers between the Fairfield Funds and either PBRS or HBUS. Nor did the Trustee's previous, timely allegations in the 2010 First Amended Complaint give PBRS and HBUS legally adequate notice of potential claims with respect to the New Relationship Transfers (or any transfers from the Fairfield Funds). And neither boilerplate assertions of an intent to claw back additional transfers nor purported reservations of rights (both of which the Trustee included in his First Amended Complaint) are ever sufficient to evade the clear statute of limitations under the circumstances present here.

The Trustee made a strategic decision in 2010 not to pursue the New Relationship Transfers against PBRS and HBUS. At the very same time the Trustee excluded these transfers from the First Amended Complaint, he incorporated by reference his complaint against the Fairfield Funds. The Trustee cannot have been unaware of the alleged transfers from the Fairfield Funds because when the Trustee filed the First Amended Complaint, PBRS and HBUS were already being sued by the Fairfield Liquidators for many of the same New Relationship Transfers at issue here. Additionally, the Trustee had good reason to allow the Fairfield Liquidators to pursue the New Relationship Transfers in their actions against PBRS and HBUS rather than doing so himself: the Trustee's settlement of his own action against the Fairfield Funds in 2011 provided that the Trustee

13

would share information and any recoveries the Fairfield Liquidators obtained with respect to transfers from the Fairfield Funds to PBRS and HBUS (among other defendants), regardless of whether the Trustee brought his own independent claims to recover them.  Because the Trustee's claims to claw back the New Relationship Transfers are untimely and do not relate back, this Court should grant judgment for Defendants on those claims.

I.    **The Trustee's claims are untimely.**

It is blackletter law that, under the applicable statute of limitations in Section 550(f) of the Bankruptcy Code, a claim to recover a subsequent transfer must be commenced no later than one year after the initial transfer is avoided or the date on which the case is closed or dismissed.  *See* 11 U.S.C. § 5350(f).  "A settlement of an avoidance claim represents finality and triggers the one-year period set forth in § 550(f)."  *Picard v. BNP Paribas S.A., et al.*, 594 B.R. 167, 207 (Bankr. S.D.N.Y. 2018).

It is undisputed that the Trustee avoided the initial transfers for each of the New Relationship Transfers through a settlement with the Fairfield Funds in July 2011.  *See* Bamberger Decl., Ex. E (July 13, 2011 Consent Judgment) (approving the Trustee's settlement with the Fairfield Funds); *Picard v. BNP Paribas S.A., et al.*, Adv. Pro. No. 12-01576 (CGM), 2024 WL 2839330, at *18 (Bankr. S.D.N.Y. June 4, 2024) ("This Court approved settlements between the Trustee and the Fairfield and Tremont funds in 2011, under which the initial transfers from BLMIS were avoided.").  As a result, the Trustee was required to seek avoidance of the New Relationship Transfers by July 2012, at the latest.

But the Trustee did not do so—not only by July 2012, but for more than a decade thereafter. The Trustee never even asserted an intention to bring claims against PBRS or HBUS with respect to any of the New Relationship Transfers until 2015 (four years after the court-approved Fairfield

14

settlement), when he proffered a proposed amended complaint that never became operative.  *See*

Bamberger Decl., Ex. J (2015 Proffered Amended Complaint).  As a result, the Trustee's claims

to recover the New Relationship Transfers were filed well outside of the statute of limitations

period.

## II.    The Trustee's claims do not relate back.

Because the statute of limitations period for subsequent transfer claims expired more than

a decade ago, the Trustee can only plead new claims with respect to such transfers if he can

demonstrate that, under Rule 15, they "relate back" to his earlier, timely allegations.  *See* Fed. R.

Civ. P. 15(c).  The Trustee's claims to recover the New Relationship Transfers do not meet this

standard, and, accordingly, this Court should grant judgment on the pleadings dismissing those

claims.

New claims "relate back" for purposes of Rule 15 when "the amendment asserts a claim

. . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—

in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The party asserting the relation back bears

the burden of proving that its new claim(s) arise out of "a common 'core of operative facts' uniting

the original and newly asserted claims."  *BNP Paribas S.A.*, 594 B.R. at 210 (quoting *Mayle v.*

*Felix*, 545 U.S. 644, 659 (2005).

The central issue in the relation back inquiry is "whether adequate notice of the matters

raised in the amended pleading has been given to the opposing party within the statute of

limitations by the general fact situation alleged in the original pleading."  *Slayton v. Am. Express*

*Co.*, 460 F.3d 215, 228 (2d Cir. 2006).  Critically, in avoidance and clawback actions, "each

transfer is treated as a separate transaction for purposes of applying the 'relation back' doctrine."

*In re M. Fabrikant & Sons, Inc.*, 480 B.R. 480, 492 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d

Cir. 2013).  That is because "proof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct."  *Id.*; *see also Off. Comm. of Unsecured Creditors v. Pirelli Commc'ns Cables & Sys. USA LLC (In re 360networks (USA) Inc.)*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007) ("[A] preference action based on one transfer does not put defendant on notice of claims with respect to any other unidentified transfers.").  "[T]he mere allegation that all of the transactions are fraudulent transfers does not make them part of the same conduct." *In re Metzeler*, 66 B.R. 977, 983 (Bankr. S.D.N.Y. 1986).

Applying these well-established rules in the exact context at issue here, two recent decisions by two separate judges in this SIPA liquidation (in the related adversary proceeding *Picard v. BNP Paribas S.A., et al.*, No. 12-01576 (the "BNP Paribas Proceeding")) held that where the Trustee "ha[s] not previously alleged a transfer between that transferee and relevant fund," subsequent transfer claims to recover such transfers do not relate back and are time-barred if they were not filed within the one-year statute of limitations period following avoidance of the underlying initial transfer.  *BNP Paribas S.A.*, 2024 WL 2839330, at *20 (dismissing all "New Relationship Transfers"); *accord BNP Paribas S.A.*, 594 B.R. at 207–212 (dismissing "New Subsequent Transfer Claims").  These decisions are directly on point here and, candidly, should have led the Trustee to voluntarily dismiss his New Relationship Transfer claims (or not file them in the first place) rather than waste party and judicial resources by requiring motion practice.

First, on October 3, 2018, Judge Bernstein dismissed "New Subsequent Transfer Claims" asserted by the Trustee in the BNP Paribas Proceeding on the ground that these claims "arise from different facts and circumstances and depend on different proof" and, as a result, do not relate back to a complaint seeking to avoid or recover different transfers.  *Id.*  Judge Bernstein explained that

16

newly-alleged transfers do not arise from the same "common core of operative facts" as the Trustee's timely allegations where "each subsequent transfer, old or new, arose from either separate and distinct loans, credit facilities or derivative transactions with various counterparties while others appear to relate to either redemptions or equity distributions to the Defendants as direct investors in the . . . funds." *Id.* at 210–11. Judge Bernstein squarely rejected the Trustee's argument that he was entitled to add claims to recover *any* subsequent transfers relating to the BLMIS fraud merely because, according to the Trustee, his "initial pleading (plus years of active litigation in this and related adversary proceedings) provided Defendants with notice that the Trustee intended to recover all fraudulent transfers of BLMIS customer property that Defendants received from BLMIS Feeder Funds." *Id.* at 210 (quoting Trustee's brief (Adv. Pro. No. 12-01576, ECF No. 110, at 39)).

Five years later, the Trustee again argued in the BNP Paribas Proceeding that he could amend his pleadings at any time to allege new transfers "originat[ing] from the same Ponzi scheme identified in the original pleading, because a reasonable defendant would know that the any [sic] receipt of stolen money would be fair game," *BNP Paribas S.A.*, 2024 WL 2839330, at *20 (quoting Trustee's brief, ECF No. 200, at 27); *see also id.* (quoting claim by Trustee's counsel at oral argument that any transfers connected to defendants' "investment into BLMIS through these feeder funds . . . as part of the same fraud . . . ar[ose] under the same course of conduct, which under Rule 15 is sufficient to permit relation back"). On June 4, 2024, Judge Morris again rejected the Trustee's argument, holding that it "proves too much" because it "would effectively allow any transfers connected to the BLMIS Ponzi Scheme to be added to the Complaint" at any time. *Id.* Like Judge Bernstein, Judge Morris determined that the Trustee's newly-added claims did not arise out of the same "course of conduct" as the Trustee's earlier claims because they "relate to

previously unnamed initial transferees and . . . arose out of different loans, facilities, or transactions." *Id.*

Judge Bernstein's and Judge Morris's decisions set out a bright-line rule that newly alleged subsequent transfer claims do not relate back where the Trustee "ha[s] not previously alleged a transfer between that transferee and relevant fund." *Id.* These decisions are also fully consistent with broader principles of relation back, and Defendants are aware of no contrary authority. *See generally ASARCO LLC v. Goodwin*, 756 F.3d 191, 203 (2d Cir. 2014) (holding that even where enterprises were alleged to be "interrelated," notice was inadequate where new claims were "attributable to different entities than the claims set forth" in the original pleading). Indeed, the rule is so clear that the Trustee has himself acknowledged it in filings before this Court – arguing that under Judge Morris's decision, "new transfers alleged in subsequent amended complaints do not relate back where they are alleged to relate to previously unnamed initial transferees," whereas relation back may be appropriate where the newly-alleged transfers "share the same initial transferor" and "rely on the same legal theories as the initial complaint." Tr. Mem. of Law in Opp'n to BBVA's Motion to Dismiss, Adv. Pro. No. 10-5351, ECF No. 160, at 10; *see also* Tr. of Feb. 24, 2025 Hr'g, Adv. Pro. No. 10-5351, at 33:17–21 (Trustee's counsel acknowledging that under Judge Morris's decision, the Trustee cannot "add what [the Court] called new relationship transfers, meaning where the trustee had not previously alleged the transfer between a transferee and the relevant fund"); *id.* at 47:1–8 (Trustee's counsel recognizing that Judge Morris drew a "bright line . . . where she said existing transferee and existing fund or existing defendant" and that Judge Bernstein's and Judge Morris's decisions "have all cabined the trustee's ability to relate back, despite our many attempts over the years").[20] In addition to being correct, because Judge

---

[20]    A copy of the February 24, 2025 Hearing Transcript is attached as Exhibit N to the Bamberger Decl.

Bernstein's and Judge Morris's decisions were issued in a related adversary proceeding within the same SIPA liquidation as this adversary proceeding, they are binding law of the case. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019) (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)).

Under a straightforward application of Judge Morris's and Judge Bernstein's decisions, the Trustee's claims with respect to the New Relationship Transfers do not relate back because they all seek to recover transfers for which the Trustee "ha[s] not previously alleged a transfer between that transferee and relevant fund" – namely, between the Fairfield Funds and either PBRS or HBUS – and thus, as a matter of law, they arise out of a separate course of conduct from the Trustee's prior, timely allegations. *BNP Paribas S.A.*, 2024 WL 2839330, at *20; *accord BNP Paribas S.A.*, 594 B.R. at 207–212.

The New Relationship Transfers asserted against PBRS and HBUS also arise out of different "conduct, transaction[s], or occurrence[s]" from the transfers alleged in the Trustee's First Amended Complaint because they relate to different redemptions from different entities and thus "depend on different proof." *Id.* at 210–211. As Judge Morris explained, the Trustee is not entitled to add new claims with respect to new transfers at any time solely because the alleged transfers that such claims seek to unwind arose from the same Ponzi scheme or similarly related to redemptions from BLMIS. *See BNP Paribas S.A.*, 2024 WL 2839330, at *20 (holding that this argument "proves too much" because it "would effectively allow any transfers connected to the BLMIS Ponzi Scheme to be added to the Complaint" at any time).

Furthermore, neither the specific allegations in the First Amended Complaint nor the Trustee's generic allegations regarding his ongoing investigation and intent to claw back all

BLMIS-related fraudulent transfers provided legally sufficient notice to PBRS and HBUS that they might be sued with respect to the New Relationship Transfers. *See* FAC ¶ 356 ("The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information regarding the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers."). The First Amended Complaint specifically alleged transfers to HBUS from four BLMIS-invested funds (Rye Select Broad Market Fund, L.P., Greenwich Sentry, L.P., Harley International (Cayman) Limited, and Senator Fund SPC), none of which were Sentry or Sigma. *See* FAC ¶¶ 258, 261, 265, 274. And the First Amended Complaint did not allege *any* particular transfers to PBRS. Even the "catchall" allegations in the First Amended Complaint – that "HSBC Defendants" (including PBRS and HBUS) received subsequent transfers from various "Non-Party Funds" and "Feeder Fund Defendants" – are insufficient because neither the "Non-Party Funds" nor the "Feeder Fund Defendants" were defined to include Fairfield Sentry or Fairfield Sigma. *See id.* ¶¶ 376-385 (alleging subsequent transfers from "Non-Party Funds"), ¶¶ 244, 277, 280, 352 (alleging subsequent transfers from "Feeder Fund Defendants"). Thus, the First Amended Complaint did not allege any transferor-transferee relationships between the Fairfield Funds and either PBRS or HBUS. Although the First Amended Complaint contained boilerplate allegations purportedly reserving the Trustee's right to seek "any additional transfers" that might come to light as a result of the Trustee's ongoing investigation, these allegations made no reference to the Fairfield Funds, and Judge Morris's and Judge Bernstein's decisions made clear that such allegations are insufficient to satisfy the notice requirement of Rule 15. *BNP Paribas S.A.*, 2024 WL 2839330, at *20 (explaining that if such allegations were sufficient, there would effectively be no limit to the Trustee's ability to allege "any [new] transfers connected to the BLMIS Ponzi Scheme" at any time).

20

While the First Amended Complaint alleged that PBRS and HBUS aided and abetted BLMIS' fraud, those allegations had nothing to do with potential liability with respect to alleged subsequent transfers from the Fairfield Funds. The allegations underpinning the Trustee's aiding and abetting claims (which were the central focus of the First Amended Complaint, and which were dismissed by the District Court in 2011, *see* Aiding & Abetting Order, at 3, 25–26) relate to fundamentally different transactions than those underpinning the Trustee's current clawback claims regarding the New Relationship Transfers. Although the aiding and abetting allegations focused on PBRS's and HBUS's purported role in defrauding investors by procuring investments *into* BLMIS, the Trustee's claims to claw back the New Relationship Transfers focus on redemption payments *from* BLMIS and seek to recover such redemptions from PBRS and HBUS. As a result, the aiding and abetting claims in the Trustee's First Amended Complaint (which addressed the investment of money *into* BLMIS) do not relate to the same course of conduct as the New Relationship Transfers (which relate to the withdrawal of money *from* BLMIS), and, therefore, the Trustee's claims to recover the New Relationship Transfers do not relate back under Rule 15.

Indeed, far from having adequate notice that the Trustee may eventually – nearly fifteen years after initially bringing suit – plead the New Relationship Transfers, it was apparent to PBRS and HBUS that the Trustee's omission of the New Relationship Transfers from his timely complaints was deliberate and strategic. For one, the theory of liability that the Trustee pleads here (asserting that PBRS and HBUS were in fact "transferees" of the money paid by the Fairfield Funds) is fundamentally at odds with the theory of the case the Trustee was pursuing in 2010. Rather, to assert that PBRS and HBUS had aided and abetted fraud with respect to those investments, it was necessary for the Trustee to take the exact opposite position and acknowledge

that the investments at issue belonged to PBRS's and HBUS's clients, not themselves. *See* Bamberger Decl., Ex. I (FAC) ¶ 292.

At the same time, the Trustee's incorporation by reference of his complaints against the Fairfield Funds in his 2010 First Amended Complaint made crystal clear that the transfers he was seeking to avoid from "Sentry" to the "HSBC Defendants" generically did not include transfers from Sentry or Sigma to PBRS or HBUS. Rather, "Sentry" was defined in the First Amended Complaint as Greenwich Sentry L.P.—and the Trustee included additional specific allegations making clear he was talking about Greenwich Sentry, not the Fairfield Funds at issue here. *See* FAC at 7 (defining Greenwich Sentry, L.P. as "Sentry"); *compare id.* ¶ 359 (alleging that "BLMIS made transfers to Sentry (account number 1G0092) of approximately $206 million" and defining such transfers as the "Sentry Initial Transfers") *with* Fairfield Complaint ¶ 40 (explicitly identifying account number 1G0092 as belonging to "GS," or Greenwich Sentry) *and* ¶ 356 (alleging that BLMIS made transfers of "approximately $3.0 billion to Fairfield Sentry . . . [and] $206.0 million to [Greenwich Sentry, L.P] . . . .").

Furthermore, the Trustee cannot have been unaware of allegations that PBRS and HBUS received subsequent transfers from the Fairfield Funds because at the time the Trustee filed the First Amended Complaint, the Fairfield Liquidators had already brought claims against PBRS and HBUS both in this Court and in the British Virgin Islands, seeking to recover many of the same New Relationship Transfers the Trustee is now pursuing years later. *See* Compl. (Sep. 21, 2010), Adv. Pro. No. 10-03633, ECF No. 6 (Fairfield Liquidators' complaint against PBRS); Compl. (Sep. 21, 2010), Adv. Pro. No. 10-03634, ECF No. 4 (Fairfield Liquidators' complaint against HBUS, among other defendants).

This context makes clear that the Trustee could have, but chose not to, pursue the New Relationship Transfers in 2010 and only pivoted to assert these new subsequent transfer claims years later, after the Court rejected the aiding and abetting theory that had been the focus of his 2010 First Amended Complaint. *See* Opinion and Order (July 28, 2011), ECF No. 119, at 3, 25–26 (dismissing aiding and abetting claims). Such a strategic decision on the part of the Trustee is understandable in light of the Fairfield Liquidators' agreement in their 2011 settlement of the Trustee's action against them to share recoveries with the Trustee, including any recoveries the Fairfield Liquidators might obtain from PBRS and HBUS. The Trustee thus had good reason to decide that instead of amending the First Amended Complaint to add transfers from the Fairfield Funds, it would be more efficient for him to let the Fairfield Liquidators pursue such transfers and to count on sharing the Fairfield Liquidators' recoveries. *See* Bamberger Decl., Ex. D (Fairfield Settlement), ¶¶ 4–12. But even if the Trustee's failure to assert his New Relationship Transfer claims within the statute of limitations period was the result of a mistake, rather than a strategic decision, the Trustee had a year after the avoidance of the initial transfers in 2011 to correct that mistake, but declined to do so for many years. The Trustee cannot now seek to avoid the consequences of his prior actions by bringing new claims that are years untimely.

The Trustee apparently believes that PBRS had adequate notice of claims regarding the New Relationship Transfers because PBRS is "uniquely positioned to know the transfers it received from BLMIS, and knew at the time of the complaint that it received nearly $300 million in transfers from Fairfield Sentry." *See* Bamberger Decl. Ex. M (December 12, 2024 Email Correspondence from M. Usitalo to N. Bamberger). As a factual assertion, that is incorrect: it is easier for the Trustee to know about such transfers, because the Trustee – unlike PBRS – not only has access to relevant court records, but to all of the records of the Fairfield Funds since 2011. But

even if it were true that PBRS was "uniquely positioned" to know about Fairfield transfers, the Trustee plainly misstates the law. The party seeking to add new claims generally bears the burden of providing adequate notice under Rule 15 through its own pleadings. PBRS's purported knowledge would only have been relevant if (1) the Trustee were seeking to do nothing more than "change[] the party or the naming of the party against whom a claim is asserted" and (2) PBRS "should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S.P.A*, 560 U.S. 538, 547 (2010) (quoting Fed. R. Civ. P. 15(c)). Neither is true here: the Trustee is seeking to bring *different* claims against the *same* defendants against whom he has been litigating this case for over a decade. And the Trustee's failure to timely plead the New Relationship Transfers cannot be attributed to a simple "mistake" regarding PBRS's or HBUS's identity because the Trustee never timely alleged *any* transfers to *any* HSBC entity from the Fairfield Funds. In any event, whether or not PBRS or HBUS knew of the New Relationship Transfers is a separate question from whether PBRS had adequate notice that the Trustee might seek to *sue* them on those transfers.

*[Remainder of page intentionally left blank]*

## CONCLUSION

Because the law (including the law of this case) is clear that the Trustee's claims to recover the New Relationship Transfers are untimely and do not relate back, this Court should grant judgment on the pleadings dismissing such claims.

Dated: March 11, 2025
New York, New York

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: _____

Nowell D. Bamberger
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
T: 202-974-1500
F: 202-974-1999
nbamberger@cgsh.com

Jeffrey A. Rosenthal
Joseph M. Kay
Thomas Q. Lynch
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
jrosenthal@cgsh.com
jkay@cgsh.com
tlynch@cgsh.com

*Counsel for HSBC Private Bank (Suisse) S.A.
and HSBC Bank USA, N.A.*