**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                   Plaintiff,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                   Defendant. | No. 08-01789 (LGB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                   Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>                   Plaintiff,<br><br>     v.<br><br> HSBC BANK PLC, et al.,<br><br>                   Defendants. | Adv. Pro. No. 09-01364 (LGB) |

## OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the*
*Substantively Consolidate Chapter 7 Estate*
*of Bernard L. Madoff*

## TABLE OF CONTENTS

**Page(s)**

I.    PRELIMINARY STATEMENT ................................................................1

II.   PROCEDURAL HISTORY AND BACKGROUND.........................................4

    A.    The Trustee Commences the Action and Amends the Complaint...........................4

    B.    Rule 2004 Subpoenas and HSBC's Productions in Response ...............................5

    C.    The Motions to Withdraw the Reference................................................................7

    D.    Extraterritoriality Briefing and the 2015 Proffered Second Amended
       Complaint..............................................................................................................8

    E.    2023 Second Amended Complaint .......................................................................10

III.  ARGUMENT........................................................................................11

    A.    Motion for Judgment on the Pleadings May Only Be Decided as a Matter of
       Law .......................................................................................................................12

    B.    Rule 15 Does Not Set a High Bar for Relation Back of Claims that Share a
       Reasonable Measure of Common Ground with the Allegations in the Original
       Pleading................................................................................................................12

    C.    The FAC Alleges the Course of Conduct Underlying the Private Bank
       Transfers ..............................................................................................................14

          1.    Conduct Pleaded in the First Amended Complaint....................................14

          2.    HSBC Private Bank Understood the Trustee's Allegations and Was
              Undeniably on Notice ...............................................................................17

          3.    The FAC's and SAC's Overlapping Allegations Reinforce the
              Relevant Course of Conduct .....................................................................19

    D.    Relation Back in the Madoff SIPA Liquidation ...................................................24

          1.    The Impact of *BNP I* and *BNP II* ............................................................24

              a.    The FAC and the BNP Original Complaint Are Distinct
                  Pleadings .......................................................................................24

              b.    Judge Bernstein's Decision in *BNP I*............................................26

              c.    Judge Morris' Decision in *BNP II* ................................................28

2.      BBVA and the Pending Motion ................................................................30

E.      The Conduct Pleaded Does Not Limit The Trustee's Claims For Recovery of
        Redemptions ......................................................................................................33

F.      HSBC's Purported Understanding of the Trustee's Litigation Strategy is
        Irrelevant to the Relation Back Analysis ..........................................................34

IV.   CONCLUSION ...............................................................................................................36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 360networks (USA) Inc., et al.*,
   367 B.R. 428 (Bankr. S.D.N.Y 2007).........................................................26, 27, 33

*Adelphia Recovery Trust v. Bank of America, N.A.*,
   624 F. Supp. 2d 292 (S.D.N.Y. 2009).................................................................32

*In re Allbrand Appliance & Television Co., Inc.*,
   875 F.2d 1021 (2d Cir. 1989)...............................................................................19

*Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*,
   No. 15-CV-7505, 2016 WL 6561548 (S.D.N.Y. Nov. 3, 2016)............................19

*Bais Yaakov of Spring Valley v. Alloy, Inc.*,
   936 F. Supp. 2d 272 (S.D.N.Y. 2013)..................................................................12

*BGL BNP Paribas S.A., et al. (In re BLMIS)*,
   Adv. Pro. No. 12-01576 (CGM), 2024 WL 2839330, (Bankr. S.D.N.Y. June 4,
   2024) .............................................................................................................. *passim*

*Buchwald Cap. Advisors v. JPMorgan Chase, N.A. (In re M. Fabrikant & Sons,
   Inc.)*,
   480 B.R. 480 (S.D.N.Y. 2012)..................................................................26, 27, 32

*Cap. Recs., Inc. v. Naxos of Am., Inc.*,
   262 F. Supp. 2d 204 (S.D.N.Y. 2003)..............................................................13, 35

*Carrico v. Duo Wen, Inc.*,
   No. 23-cv-00927, 2024 WL 3965839 (S.D.N.Y. Aug. 27, 2024)..........................12

*Higgins v. NYP Holdings, Inc.*,
   836 F. Supp. 2d 182 (S.D.N.Y. 2011)..............................................................13, 35

*In re Juliet Homes, LP*,
   No. 07-36424, 2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011)...................32

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
   926 F. Supp. 2d 510 (S.D.N.Y. 2013).........................................................3, 14, 19

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011).................................................................................12

*Mayle v. Felix*,
   545 U.S. 644 (2005).............................................................................................19

*In re Metzeler*,
  66 B.R. 977 (Bankr. S.D.N.Y. 1986)...........................................................................26, 27, 29

*Morgan Art Found. Ltd. v. Brannan*,
  No. 18-cv-8231, 2020 WL 469982 (S.D.N.Y. Jan. 28, 2020) .................................................19

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007)......................................................................................................12

*Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*,
  67 B.R. 304 (Bankr. S.D.N.Y. 1986) ........................................................................................27

*Picard v. BNP Paribas S.A., et al.* (*In re BLMIS*),
  594 B.R. 167 (Bankr. S.D.N.Y. 2018)............................................................................ *passim*

*Picard v. Fairfield Inv. Fund* (*In re BLMIS*),
  Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...............13, 33

*Picard v. KBC Inv. Ltd.(In re BLMIS)*,
  2023 WL 3112719 (Bankr. S.D.N.Y. Apr. 26, 2023).................................................13, 24, 31

*Picard v. Madoff* (*In re BLMIS*),
  468 B.R. 620 (Bankr. S.D.N.Y. 2012) ......................................................................................13

*Picard v. Royal Bank of Canada, et al. (In re BLMIS)*,
  650 B.R. 524 (Bankr. S.D.N.Y. 2023) ......................................................................................24

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A., et al.*,
  Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787, (Bankr. S.D.N.Y. Jan. 6, 2023), *leave to appeal denied*, No. 23-CV-992, 2023 WL 5671544 (S.D.N.Y. Sept. 1, 2023) ....................................................................................................17, 23, 24

*Schiavone v. Fortune*,
  477 U.S. 21 (1986).............................................................................................................13, 19

*Slayton v. Am. Exp. Co.*,
  460 F.3d 215 (2d Cir. 2006)...............................................................................................13, 33

*Stern v. Marshall*,
  564 U.S. 462 (2011)....................................................................................................................8

*United States v. Baylor Univ. Med. Ctr.*,
  469 F.3d 263 (2d Cir. 2006)...........................................................................................3, 14, 19

*In re Uplift RX, LLC*,
  625 B.R. 364 (Bankr. S.D. Tex. 2021) .....................................................................................32

*Wireless Ink Corp. v. Facebook, Inc.*,
   787 F. Supp. 2d 298 (S.D.N.Y. 2011) .................................................................................. 12

**Rules**

Fed. R. Bankr. P. 2004 ................................................................................................... 5, 11, 19

Fed. R. Bankr. P. 7015 ............................................................................................................ 12

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 12

Fed. R. Civ. P. 12(c) ............................................................................................................... 35

Fed. R. Civ. P. 15(c) ........................................................................................................ *passim*

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act

("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the substantively consolidated chapter 7 estate of Bernard

L. Madoff, by and through his undersigned counsel, respectfully submits this Opposition to

Defendants HSBC Private Bank (Suisse) S.A.'s ("PBRS") and HSBC Bank USA, N.A.'s

("HBUS", and together with PBRS, "HSBC Private Bank") Motion for Judgment on the

Pleadings.

## I.    PRELIMINARY STATEMENT

HSBC Private Bank's motion seeks to dismiss as untimely the Trustee's claims to

recover subsequent transfers HSBC Private Bank received from Fairfield Sentry Limited and

Fairfield Sigma Limited (collectively, "Private Bank Transfers"). But the challenged claims in

the Trustee's Second Amended Complaint (the "SAC") arise out of the conduct pleaded in the

Amended Complaint (the "FAC") the Trustee filed in 2010 and therefore relate back to that

filing. As they admitted in 2015, HSBC Private Bank was on notice of HSBC Private Bank's

conduct related to the Private Bank Transfers and the Trustee's intentions to recover the Private

Bank Transfers, as of the date of the FAC. HSBC Private Bank's motion thus must be denied.

Rule 15(c)(1)(B) allows a plaintiff to relate back new claims to a timely filed complaint

when the defendant has notice that the claim "arose out of the conduct, transaction, or occurrence

set out—or attempted to be set out—in the original pleading." HSBC Private Bank argues that

the decisions in *Picard v. BNP*, which dismissed certain claims for failing to relate back,

preclude the claims here. But relation back requires a case specific analysis and HSBC Private

Bank's motion ignores the Trustee's particularized allegations and the stark differences between

this proceeding and the *BNP* proceeding.

The FAC was not a notice pleading; rather, it contained 165 pages of allegations detailing HSBC's involvement with BLMIS, including the relationship with Fairfield Sentry and Fairfield Sigma. (Declaration of Michelle Usitalo, dated April 25, 2025 ("Usitalo Decl."), Ex. 1 (Am. Compl. (Dec. 5, 2010), ECF No. 170).) HSBC's activities were so extensive that, as the FAC alleged, "at least 33% of all moneys turned over to Madoff were funneled by and through" HSBC. In the *BNP* proceeding, the Trustee sought to relate back newly pleaded transfers to a subsequent transferee whose relationship with the BLMIS feeder fund was not identified in the original complaint, leading the court to deem them "New Relationship Transfers." By contrast, here, the Trustee seeks to recover transfers from a feeder fund whose relationship with HSBC Private Bank had its own dedicated section in the FAC. (FAC ¶¶ 292–304.) The FAC contained allegations of HSBC Private Bank's particular conduct with respect to its investments with Fairfield Sentry, including due diligence, communications with clients, and internal discussions. The Trustee's claims in the SAC seeking to recover HSBC Private Bank's redemptions of those investments are simply a "natural offshoot" of that conduct and therefore relate back. (Usitalo Decl., Ex. 2 (Am. Compl. (Dec. 27, 2023), ECF No. 745).)

HSBC Private Bank's motion is premised solely on the inartful use of a defined term in the FAC. Fairfield Greenwich Group had two sets of funds, those branded "Fairfield" for offshore investments and those branded "Greenwich" for U.S. investments. Both Fairfield Sentry and Greenwich Sentry invested exclusively with Madoff. PBRS invested with Fairfield Sentry, and did not invest with Greenwich Sentry. Fairfield Sigma invested one hundred percent of its funds with Fairfield Sentry. In the FAC, the Trustee defined "Sentry" as Greenwich Sentry and then used this shorthand in the HSBC Private Bank section. But this "misstep" in pleading did not impact HSBC Private Bank's clear understanding of the allegations surrounding its

2

relationship with Fairfield Sentry. Moreover, the documents relied upon, referred to, and quoted from in the FAC were documents produced by HBUS in 2009 and are titled "Fairfield Sentry." The same documents are relied upon, referred to, and quoted from, in the SAC.

These facts alone satisfy Rule 15(c)(1)(B) by establishing that the SAC's recovery claims are part of the same "common core of facts" pleaded in the FAC. But if the Court needed further assurance, the HSBC Defendants'[1] own statement in a 2015 filing opposing the Trustee's proposed amendment acknowledges the conduct and transfers at issue:

> The [FAC] makes clear that foreign transferee [PBRS] received the payments at issue from foreign transferors Fairfield Sentry and Fairfield Sigma on account of the investments [PBRS] made in those foreign funds at the direction of its clients.

(Usitalo Decl., Ex. 3 (The HSBC Defs.' Separate Mem. of Law Addressing the Claims in the Kingate, Omnibus, Somers, and SICO Actions and in Further Supp. of Transferee Defs.' Mot. to Dismiss Based on Extraterritoriality, (Sept. 30, 2015), ECF No. 413 ("HSBC ET Brief")), at 14–15.) HSBC can hardly feign confusion now.

The purpose of a statute of limitations, and the doctrine of relation back, is to ensure that a defendant has notice, and a "'party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510, 518 (S.D.N.Y. 2013) (quoting *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006)). By its own admission, HSBC Private Bank understood the clear tie between the conduct pleaded in the FAC and the Private Bank Transfers now sought in the SAC. HSBC Private Bank's guesswork about the Trustee's litigation strategy is irrelevant, unsubstantiated, and improperly considered on a

---

[1] The HSBC Defendants refers to HSBC entities named in the FAC and the SAC at the respective time, and includes HSBC Private Bank.

motion for judgment on the pleadings. Accordingly, the Trustee's claims properly relate back and HSBC Private Bank's motion must be denied.

## II.    PROCEDURAL HISTORY AND BACKGROUND

### A.    The Trustee Commences the Action and Amends the Complaint

In mid-2009, the Trustee filed three actions, each seeking to avoid and recover fraudulent transfers from a BLMIS feeder fund and the HSBC entities that acted as their service providers. (Compl. (July 15, 2009 complaint against Alpha Prime Fund), Adv. Pro. No. 09-01364, ECF No. 1.; Compl. (July 14, 2009 complaint against Herald Fund SPC), Adv. Pro. No. 09-01359, ECF No. 1; Compl. (July 15, 2009 complaint against Primeo Fund), Adv. Pro. No. 09-01366, ECF No. 1.) In 2010, the Trustee filed the FAC which sought to comprehensively plead HSBC's overall BLMIS-related activity. The FAC named several additional individual and corporate defendants and asserted avoidance and recovery claims, as well as common law claims. Among the defendants added in the FAC were the two movants here, PBRS (FAC ¶ 104) and HBUS (FAC ¶ 97), which operated within HSBC's Private Bank division, and were defined as such in the FAC. (FAC ¶ 292.)

The FAC particularized HSBC Private Bank's conduct, including its due diligence with respect to BLMIS and BLMIS feeder funds and their marketing of, and investment in, those feeder funds. (FAC ¶¶ 292-304.) The FAC identified HBUS and noted its role in creating structured financial products based on BLMIS investments. (FAC ¶ 97.) It also noted that HBUS "received fees and/or distributions to which it is not entitled and/or which are composed, in part, of *Customer Property*." (*Id.* (emphasis added).) The FAC alleged that PBRS "marketed Madoff Feeder Funds, including the Feeder Fund Defendants to investors" and that "[u]pon information and belief [PBRS] received fees and/or distributions to which it was not entitled and/or which are composed, in part, of *Customer Property*." (FAC ¶ 104 (emphasis added).)

The FAC detailed the HSBC Defendants' extensive relationship with BLMIS, involvement with BLMIS feeder funds, and knowledge of BLMIS's fraud. These allegations were largely categorized by the HSBC Defendants' role in relation to BLMIS—HSBC as administrator (FAC ¶¶ 290-91), HSBC as custodian (FAC ¶ 281-89), HSBC as creator of structured product transactions (FAC ¶¶ 245-74), and investment by HSBC Private Bank under the heading "HSBC Marketed Madoff to its Private Banking Clients." (FAC ¶¶ 292-304.) Specifically, in the latter section, the Trustee alleged HSBC Private Bank's involvement in facilitating its high-net-worth clients' investments into Madoff Feeder Funds. The FAC defines Madoff Feeder Funds as "[i]nvestment funds with the principal or primary purpose of investing funds with BLMIS's IA Business" (FAC p. 5) and did not limit those investment funds to those from which the Trustee sought to recover transfers in the FAC. The FAC alleges that based on their high net-worth clients' relationships of trust and confidence with HSBC Private Bank, HSBC Private Bank's clients invested with BLMIS. (FAC ¶ 293.) The FAC then detailed HSBC Private Bank's due diligence on "Sentry" and HSBC Private Bank's efforts to market Madoff Feeder Funds (which included Fairfield Sentry). (FAC ¶¶ 294-304.)

The FAC also alleged that the HSBC Defendants received subsequent transfers from entities named as defendants in other actions by the Trustee. (FAC ¶ 376.) The FAC expressly noted that the Trustee's investigation continued to illuminate details of transfers subject to avoidance and recovery—transfers to which the Trustee, of course, was not a party—and alerted the HSBC Defendants to the possibility of future transfer claims, as the Trustee's investigation progressed. (FAC ¶ 356.)

### B.    Rule 2004 Subpoenas and HSBC's Productions in Response

In 2009, the Trustee issued pre-suit subpoenas to HBUS pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. In response, HBUS produced documents to the Trustee,

many of which concerned HSBC Private Bank's relationship with a Madoff Feeder Fund, Fairfield Sentry. These documents included various HSBC due diligence memoranda dated between 2001 and 2008 concerning Fairfield Sentry and Fairfield Sentry's investments with BLMIS. The memoranda recorded HSBC employees' visits and discussions with Fairfield Sentry representatives.

In drafting the FAC, the Trustee relied on, explicitly referred to, and directly quoted from, these documents that HBUS produced:

- Paragraph 296 refers to the "2001 Report" on Sentry from August 2001 (the report is entitled "Fairfield Sentry Limited" and Bates stamped HBUS-TRUSTEE005480-93) and makes multiple references to the content of that document (Usitalo Decl., Ex. 4);

- Paragraph 297 refers to an additional due diligence report in January 2003 (referencing the document Bates stamped HBUS-TRUSTEE005586-93, an annual review also titled "Fairfield Sentry, Limited" and listing the "Investment Exposure" to Fairfield Sentry as $96M) (Usitalo Decl., Ex. 5);

- Paragraph 297 refers to January 2003 Research Committee Minutes and quotes David Mullane, an HSBC due diligence team member (referencing the document Bates stamped HBUS-TRUSTEE005731, titled "Research Committee Minutes" and labeled as "Fairfield Sentry Limited") (Usitalo Decl., Ex. 6);

- Paragraph 298 refers to a June 2003 due diligence report for Ascot Fund and the report's discussion of similarities between "Ascot Fund and Sentry" (referencing the document Bates stamped HBUS-TRUSTEE006754-67 containing a

6

"Correlation analysis against Fairfield Sentry") (Usitalo Decl., Ex. 7, analysis at HBUS-TRUSTEE006762); and

- Paragraph 299 refers to, and quotes from, the 2004 report finding Madoff's track record as "[t]oo good to be true" (referencing the document Bates stamped as HBUS-TRUSTEE005623-30 and noted to be an annual review of "Fairfield Sentry Limited") (Usitalo Decl., Ex. 8, quote at HBUS-TRUSTEE005623).

These allegations leave no room for interpretation which is why the HSBC Defendants understood them—as the Trustee intended them—to be about HSBC Private Bank's relationship with Fairfield Sentry.

The Trustee referred to Fairfield Sentry in the private bank section of the FAC as "Sentry." The FAC's Table of Abbreviations defines "Sentry" as "Greenwich Sentry, L.P." (FAC at 7 and ¶ 145.) The Trustee inadvertently used the shorthand term "Sentry" in paragraphs 294 to 304 to refer to Fairfield Sentry. Based on the context, the referenced HSBC documents and quotes, and the factual foundation provided in the FAC—the only reasonable understanding of these allegations is that the use of "Sentry" in these paragraphs was a reference to Fairfield Sentry. As Fairfield Sentry was the only "Sentry" that HSBC's private bank division invested in, and to what all the above documents pertain, HSBC Private Bank knew that this referred to Fairfield Sentry. The reference to "Sentry" therefore reflects inartful language, but the Trustee's overall pleading is clear.

### C.    The Motions to Withdraw the Reference

In February 2011, the HSBC Defendants were among the parties that moved to withdraw the reference as part of a challenge to the Trustee's standing to assert common law claims for damages. The District Court granted that motion. Between April 2011 and June 2014, those

issues were briefed and argued, the common law claims dismissed, and the decision appealed

and affirmed, with the U.S. Supreme Court ultimately denying *certiorari*.

In April 2012, with the appeal on the common law claims pending, HSBC successfully

sought the withdrawal of the reference on several other "threshold legal issues," including the

applicability of sections 546(e) and 546(g) of the Bankruptcy Code, the standard for good faith,

the effect of *Stern v. Marshall*, 564 U.S. 462 (2011), and the extraterritorial application of SIPA

and the Bankruptcy Code ("ET"). (*Picard v. HSBC Bank PLC, et al*., No. 12-cv-02431 (ECF No.

1).) The District Court ruled on those issues of law between June 2012 and July 2014.

### D. Extraterritoriality Briefing and the 2015 Proffered Second Amended Complaint

The District Court's rulings on the above issues established legal standards but directed

the cases to be returned to the Bankruptcy Court for further adjudication of the factual issues. In

the case of the ET issue, the Trustee and defendants across the dozens of adversary proceedings

agreed to address the application of ET with an omnibus brief on the law, supplemented by

factual submissions by the relevant defendants/transferees.

The Trustee opposed the omnibus motion to dismiss and cross-moved to amend the

impacted complaints. In support, the Trustee filed supplemental submissions for each relevant

defendant that expanded on the allegations he believed impacted the ET analysis. The HSBC

proceeding was among a select few where the Trustee also proffered, with agreement from the

defendants, an entire amended complaint. (Proffered Second Am. Compl. (June 26, 2015), ECF

No. 399 (the "Proffered SAC" or "Prof. SAC").) Based on the withdrawal and subsequent

procedural history, this was the first practical opportunity to amend.

The Trustee filed his Proffered SAC as part of the ET opposition briefing in 2015. In the

Proffered SAC, the Trustee alleged that PBRS "was an investor in and redeemed from Fairfield

Sentry and Fairfield Sigma," (Prof. SAC ¶ 126), and that HBUS "invested in and redeemed from

BLMIS feeder fund Fairfield Sentry" (Prof. SAC ¶ 125). Identifying PBRS and HBUS together

as "HSBC Private Bank" (Prof. SAC ¶ 127), the Trustee alleged that:

> Beginning in the late 1990s, HSBC Private Bank solicited its clients to
> invest in BLMIS feeder funds, including, but not limited to, Fairfield
> Sentry, Fairfield Sigma, Kingate Global, Kingate Euro, Primeo, Thema
> International, and Ascot Fund, Ltd. (collectively, the "Madoff Private Bank
> Feeder Funds").

(Prof. SAC ¶ 129.)

The Proffered SAC identified the billions of dollars in redemptions the HSBC Defendants

had received from BLMIS over the course of the six years preceding BLMIS's insolvency.

Fairfield Sentry and Fairfield Sigma were identified as non-defendant transferees. The Proffered

SAC alleged that PBRS received $363,383,585 in redemptions from Fairfield Sentry and

$9,195,298 in redemptions from Fairfield Sigma, (Prof. SAC ¶¶ 126, 485-86), and that HBUS

received $31,775,129 in redemptions from Fairfield Sentry, (Prof. SAC ¶¶ 125, 487), asserting,

*inter alia*, that the Trustee was entitled to recover those transfers under SIPA.

The HSBC Defendants responded with their brief in reply. (Usitalo Decl., Ex. 3 (HSBC

ET Brief).) The HSBC Defendants addressed the claims against them in this proceeding,

referring to this proceeding as the "Omnibus Action." (*Id.* at 1.) The HSBC ET Brief referred to

the FAC as the "Omni. Compl." or the "operative complaint." (*Id.* at 11-15.)[2]

In describing the claims against them, the HSBC Defendants drew a clear distinction

between their understanding of (a) the claims as set forth in the "Omni. Compl." or "operative

complaint" and (b) the new claims to be included in the Proffered SAC, which they referred to as

---

[2] In their brief on the current motion for judgment on the pleadings, Defendants repeatedly refer to the Trustee's "operative" complaints as the "FAC" and the "SAC" and refer to the Proffered SAC as "not operative." HSBC's nomenclature has remained unchanged since the HSBC ET Brief and the meanings are clear.

the "Proposed Omnibus Second Am. Compl. ('Prop. Omni. SAC')." (*Id.* at 11.) The HSBC

Defendants summarized the Trustee's allegations as follows:

> At the direction and on behalf of its Private Bank clients, [PBRS] placed investments abroad in BVI-registered Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma"). Omni. Compl. ¶ 293; Prop. Omni. SAC ¶ 129; Compl., *Picard v. Fairfield Sentry Ltd.*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 20, 2010) (ECF No. 23). The Trustee seeks to recover redemption payments that [PBRS] received with respect to its client-directed investments in the foreign funds, purportedly $9,195,298 from Fairfield Sigma and $363,383,585 from Fairfield Sentry. Prop. Omni. SAC ¶¶ 485-86, 596; and

> The operative complaint [i.e., the FAC] makes clear that foreign transferee [PBRS] received the payments at issue from foreign transferors Fairfield Sentry and Fairfield Sigma on account of the investments [PBRS] made in those foreign funds at the direction of its clients. No allegations are made in the operative complaint that could suggest that the transfers to [PBRS] from foreign feeder funds were anything but foreign transfers.

(*Id.* at 14-15.)

The Bankruptcy Court granted the HSBC Defendants' motion to dismiss the claims to

recover "foreign" transfers (i.e., those made to PBRS) on March 3, 2017. The Second Circuit

overturned the Bankruptcy Court's decision on February 25, 2019. The U.S. Supreme Court

denied *certiorari* on June 1, 2020. Thus, for the period of March 3, 2017 through October 21,

2020, while the appeal was pending, the Trustee's claims against PBRS were dismissed from this

adversary proceeding, and the Trustee was unable to seek leave to amend those claims.

**E.    2023 Second Amended Complaint**

After *certiorari* was denied, the foreign HSBC Defendants and the Trustee's claims

against them were restored to the proceeding. The Trustee sought leave, with the HSBC

Defendants' consent, to file the Second Amended Complaint in December 2023.[3] (Stipulation

(Dec. 26, 2023), ECF No. 744, ¶ 7.) The SAC included claims for the recovery of transfers from

Fairfield Sentry to PBRS for $283,291,567 and to HBUS for $31,775,129 and from Fairfield

Sigma to PBRS for $9,182,501 (the "Private Bank Transfers"). (SAC ¶¶ 361, 365.)

The SAC amplifies the FAC's allegations. The FAC's allegations form the basis for, and

in some instances overlap with, the SAC's allegations. (*See infra* at Part III.C.3.) The facts

presented in the SAC remain consistent in both time and nature with those in the original

pleading. Both the FAC and SAC allegations describe HSBC Private Bank as having performed

due diligence on Madoff Feeder Funds. Specifically, the allegations concerning due diligence on

Fairfield Sentry in the SAC overlap with the FAC's allegations concerning due diligence. This

overlap is a product of the Trustee's reliance on many of the same documents for both the FAC

and SAC allegations, including the due diligence memoranda HBUS produced in response to the

Rule 2004 subpoenas.

Both the FAC and SAC allegations described HSBC Private Bank's marketing of Madoff

Feeder Funds (which HSBC knew to include Fairfield Sentry) to its private bank clients,

investing funds into those Madoff Feeder Funds (which HSBC knew to include Fairfield Sentry),

and receiving subsequent distributions from and transfers out of Madoff Feeder Funds

(including, as HSBC well knew, Fairfield Sentry).

## III.    ARGUMENT

The Court should deny HSBC Private Bank's motion because the Second Amended

Complaint's claims seeking to recover the Private Bank Transfers relate back to the conduct and

---

[3] Because the court had not granted leave to file the Proffered SAC as a result of the ET dismissal, the 2023
Complaint was styled as the Second Amended Complaint.

occurrences alleged in the first Amended Complaint, and thus the first Amended Complaint

timely put HSBC Private Bank on notice that the Trustee could pursue those claims.

### A. Motion for Judgment on the Pleadings May Only Be Decided as a Matter of Law

The movant has the burden of establishing that it is entitled to judgment on the pleadings.

*Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 305 (S.D.N.Y. 2011). It may do so

only by showing that there is no material issue of fact to be resolved. *Id*. Like a motion to

dismiss under Rule 12(b)(6), the Court must draw all reasonable inferences about the allegations

in the non-movant's favor. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir.

2011). In reaching its decision, the court may consider: (i) the pleadings and documents attached

thereto; (ii) documents incorporated by reference in or integral to the pleading; and (iii) matters

of which the court may take judicial notice. *Id*. at 422. Documents integral to the pleading

include the information the plaintiff either possessed or knew about, and upon which they relied

in bringing the lawsuit. *Carrico v. Duo Wen, Inc.*, No. 23-cv-00927, 2024 WL 3965839, at *2-3

(S.D.N.Y. Aug. 27, 2024); *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007); *Bais Yaakov of

Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 277-78 (S.D.N.Y. 2013).

### B. Rule 15 Does Not Set a High Bar for Relation Back of Claims that Share a Reasonable Measure of Common Ground with the Allegations in the Original Pleading

Federal Rule 15(c)(1)(B) permits a plaintiff to amend a complaint to include new claims

against a defendant if those allegations relate back to a timely pleading. Specifically, if "the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out—or attempted to be set out—in the original pleading," it relates back. Fed. R. Civ. P. 15(c).[4]

---

[4] Federal Bankruptcy Rule 7015 provides that Fed. R. Civ. P. 15 is applicable to bankruptcy proceedings.

The test is a disjunctive one, allowing relation back when the original pleading alleges either the conduct, *or* transaction, *or* occurrence that underlies the new claim.

As Judge Morris stated in *Picard v. KBC Inv. Ltd.(In re BLMIS)*, "Rule 15 does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." Adv. Pro. No. 11-02761 (CGM), 2023 WL 3112719, at *7 (Bankr. S.D.N.Y. Apr. 26, 2023) (citations omitted). Judge Morris explained that a liberal construction of Rule 15(c) is necessary because "'[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *Id.* (citing *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021)). The spirit and the inclination of the rule show that a misstep in the pleading should not be decisive. *Schiavone v. Fortune*, 477 U.S. 21, 27 (1986) (referencing Rule 15 prior to the addition of Rule 15(c)(1)(C)).

When determining whether Rule 15(c)(1)(B) is satisfied, the "'principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading.'" *KBC Inv. Ltd.*, 2023 WL 3112719, at *7 (citing *Picard v. Madoff* (*In re BLMIS*), 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012)); *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (notice is the "central inquiry"); *see also* Defs.' Mem. of Law in Supp. of Defs.' Mot for J. on the Pleadings (Mar. 11, 2025), ECF No. 768, ("Defs.' Mot."), at 15. The inquiry asks "whether the facts alleged in the original complaint give sufficient notice of the conduct and transactions underlying the amendment to avoid unfair and prejudicial surprise to the defendant." *Cap. Recs., Inc. v. Naxos of Am., Inc.*, 262 F. Supp. 2d 204, 216 (S.D.N.Y. 2003) (citation omitted); *see also Higgins v.*

13

*NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011). A "'party who has been notified

of litigation concerning a particular occurrence has been given all the notice that statutes of

limitations were intended to provide.'" *U.S. ex rel. Kirk*, 926 F. Supp. 2d at 518 (quoting *Baylor

Univ. Med. Ctr.*, 469 F.3d at 270).

    **C.**    **The FAC Alleges the Course of Conduct Underlying the Private Bank
Transfers**

    *1.*    *Conduct Pleaded in the First Amended Complaint*

The FAC is a 564-paragraph complaint that details the multiple ways in which several

HSBC entities profited through their involvement with BLMIS. It describes the many

relationships formed by the HSBC Defendants to profit from investment with BLMIS, including

through investment with Fairfield Sentry.

Of particular significance are paragraphs 292 through 304, which appear under the

heading "HSBC Marketed Madoff to its Private Banking Clients." Separate from the allegations

concerning HSBC's other functions as custodian, administrator, or creator of structured products,

these paragraphs differentiate HSBC Private Bank's conduct of investing its clients' assets with

BLMIS through feeder funds.

This section is not the first time the FAC identifies PBRS's activities. In paragraph 104,

the FAC identifies PBRS and notes that it "marketed Madoff Feeder Funds, including the Feeder

Fund Defendants to investors." The FAC defines "Madoff Feeder Funds" as "Investment funds

with the principal or primary purpose of investing funds with BLMIS's IA Business." (FAC at

5.) Fairfield Sentry and Fairfield Sigma were such funds.

The FAC did not make conclusory or broad statements about HSBC Private Bank's

activities but provided specific examples of HSBC Private Bank's conduct relating to Fairfield

Sentry. While the defined term "Sentry" is used in the discussion about HSBC Private Bank, the

substance of the allegations, and the HSBC-produced documents upon which the Trustee relied in making the allegations, demonstrate the Trustee's attempt to set forth HSBC Private Bank's conduct with respect to Fairfield Sentry. No more is required under Rule 15. Fed. R. Civ. P. 15(c)(1)(B) ("or attempted to be set out").

In paragraph 294, the FAC alleges that "HSBC Private Bank began marketing Sentry to its high net-worth clients as early as 1999." The Trustee is not aware of PBRS having invested any funds with Greenwich Sentry, and HBUS did not create any structured products with Greenwich Sentry until September 2007. The conduct described in paragraph 294 can only have been HSBC Private Bank's relationship with Fairfield Sentry, and HSBC could only have reasonably recognized and understood the allegation to refer to HSBC Private Bank's relationship with Fairfield Sentry.

The next several paragraphs of the FAC further detail the conduct and relationship. Paragraph 296 refers directly to a "2001 Report" prepared by HBUS. The allegation notes that the 2001 Report is a due diligence report on "Sentry" and details the report's various findings. (FAC ¶ 296.) This allegation is based on a document titled "Fairfield Sentry Limited." (Usitalo Decl., Ex. 4.) The 2001 Report, which is excerpted in paragraph 296, specifically notes HSBC Republic Geneva's (PBRS's predecessor) exposure to Fairfield Sentry. (Usitalo Decl., Ex. 4 at HBUS-TRUSTEE005480.)

Paragraph 297 refers to a January 2003 due diligence report, also titled "Fairfield Sentry, Limited." (Usitalo Decl., Ex. 5.) Fairfield Sentry is identified as the subject of the Annual Review. (*Id.* at HBUS-TRUSTEE005586.) The report confirms HSBC Private Bank's investment exposure to Fairfield Sentry. (*Id.*) The quote from HSBC research committee member David Mullane in paragraph 297 comes from a 2003 Research Committee Minutes report.

(Usitalo Decl., Ex. 6.) The subject of the Minutes is "Fairfield Sentry Limited." (*Id.* at HBUS-TRUSTEE005731.) Paragraph 298 refers to a June 2003 due diligence report for Ascot Fund and the report's discussion of similarities between "Ascot Fund and Sentry." (Usitalo Decl., Ex. 7.) The referenced discussion is titled "Correlation analysis against Fairfield Sentry" and the comparison to Fairfield Sentry is noted throughout the report. (*Id.* at HBUS-TRUSTEE006759.) In paragraph 299, the Trustee quotes from another report prepared by HBUS in 2004 also titled "Fairfield Sentry Limited." (Usitalo Decl., Ex. 8 at HBUS-TRUSTEE005623.) These are all documents produced to the Trustee by HBUS in 2009 and HSBC Private Bank knew that the Trustee's allegations were derived directly from these sources.

There are other allegations in the FAC that rely on these Fairfield Sentry reports. For example, the Trustee's allegations in paragraph 213 refer to reports prepared by HSBC Private Bank between 2001 and 2008. Paragraph 213 also directly quotes a June 2007 Operational Due Diligence Report on Fairfield Sentry Limited: "HSBC Private Bank noted, '[t]he lack of transparency involving fees paid to Madoff was disturbing.'" (Usitalo Decl., Ex. 9 at HBUS-TRUSTEE005594.) The allegations in paragraph 214 contain a direct quote from HSBC's due diligence reports from 2001, 2003, and 2004, which state that "HSBC Private Bank noted, '[t]he 20% performance fee goes to Fairfield Sentry.'" (Usitalo Decl., Ex. 4 at HBUS-TRUSTEE005480-81, Ex. 5 at HBUS-TRUSTEE005587, Ex. 8 at HBUS-TRUSTEE005623.)

In paragraph 300, the Trustee alleged that the "many red flags did not prevent HSBC Private Bank from simultaneously encouraging high-net worth investors to invest in Madoff Feeder Funds [*i.e.* funds with the principal or primary purpose of investing funds with BLMIS's IA Business funds, such as Fairfield Sentry], including the Feeder Fund Defendants." The HSBC Defendants were keenly aware that none of the allegations in paragraphs 292 to 304 could have

16

applied to Greenwich Sentry because those allegations describe direct investment and not swaps, involve PBRS's and HBUS's private bank clients, and refer to events that occurred before 2007.

Paragraph 356 accounts for the Trustee's position as a stranger to the transactions in which HSBC Private Bank was engaged and sets forth a reservation of the Trustee's rights "to (i) supplement the information regarding the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers." This "catchall" provision follows the Trustee's specific allegations about HSBC Private Bank.

The FAC also references the relationship between Fairfield Sentry and Fairfield Sigma as initial transferees, and the HSBC Defendants as recipients of subsequent transfers from Madoff Feeder Funds, which includes Fairfield Sentry and Fairfield Sigma. (*See* FAC ¶ 357-58.) In paragraph 358, the Trustee incorporates by reference the Fairfield Amended Complaint, which is the Trustee's proceeding that sought, *inter alia*, the avoidance and recovery of the initial transfers from BLMIS to Fairfield Sentry and Fairfield Sigma that are the basis for the Private Bank Transfers the Trustee now seeks to recover. These allegations, combined with the HSBC Private Bank allegations of the FAC, support the finding that HSBC Private Bank was on notice that the Trustee could seek to recover transfers based on HSBC Private Bank's relationship with Fairfield Sentry and Fairfield Sigma.[5]

> 2.    *HSBC Private Bank Understood the Trustee's Allegations and Was Undeniably on Notice*

The FAC pleaded the requisite conduct and occurrences by HSBC Private Bank that underlie the SAC's claims to recover subsequent transfers that initially went through Fairfield

---

[5] One hundred percent of Fairfield Sigma's funds were invested with BLMIS through Fairfield Sentry. This Court has already found that when the Trustee's original complaint pleaded "conduct, transaction[s], or occurrences" relating to Fairfield Sentry, transfers to Fairfield Sigma relate back to the original pleading. *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A., et al.*, Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787, at *5-6 (Bankr. S.D.N.Y. Jan. 6, 2023), *leave to appeal denied*, No. 23-CV-992, 2023 WL 5671544 (S.D.N.Y. Sept. 1, 2023).

Sentry and Fairfield Sigma. The primary inquiry then becomes whether the HSBC Defendants

were on notice of the potential claims now asserted in the SAC. This question is easily

answered—the HSBC Defendants admitted notice and therefore there is no doubt.

In the HSBC ET Brief, the HSBC Defendants admitted that the FAC put them on notice

of the Private Bank Transfers:

> The operative complaint [i.e., the FAC] *makes clear* that foreign
> transferee [PBRS] received the payments at issue from foreign
> transferors Fairfield Sentry and Fairfield Sigma on account of the
> investments [PBRS] made in those foreign funds at the direction of
> its clients.

(Usitalo Decl., Ex. 3 at 14-15 (HSBC ET Brief) (emphasis added).) To support its statement that

"[a]t the direction and on behalf of its Private Bank clients, HSBC Suisse placed investments

abroad in [Fairfield Sentry and Fairfield Sigma]," the HSBC Defendants cited to paragraph 293

of the FAC and paragraph 129 of the Proffered SAC. (*Id.* at 14.) This confirms that the HSBC

Defendants understood paragraph 293 of the FAC as meaning that PBRS "placed investments

abroad in [] Fairfield Sentry . . . and Fairfield Sigma . . . ." (*Id.*) At the very least, the HSBC

Defendants understood that the FAC alleged a course of conduct tied to PBRS's investment in,

and receipt of subsequent transfers from, Fairfield Sentry and Fairfield Sigma and gives rise to

the Private Bank Transfers the Trustee now seeks. Thus, "the general fact situation alleged in the

original pleading provides adequate notice to the opposing party of the matters raised in the

amended pleading." *BGL BNP Paribas S.A., et al. (In re BLMIS)*, Adv. Pro. No. 12-01576

(CGM), 2024 WL 2839330, at *18 (Bankr. S.D.N.Y. June 4, 2024) ("*BNP II*") (citation and

internal quotation marks omitted).

The HSBC Defendants' statements in the HSBC ET Brief, which constitute a judicial admission,[6] indisputably reflect that they were on notice that the Trustee could seek to recover the Private Bank Transfers. Notice is the "linchpin" of the relation back doctrine. *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1024 (2d Cir. 1989)*; Schiavone*, 477 U.S. at 31. And here, in light of the HSBC Defendants' statement, it is clear that the HSBC Defendants had "'all the notice that statutes of limitations were intended to provide.'" *U.S. ex rel. Kirk*, 926 F. Supp. 2d at 518 (quoting *Baylor Univ. Med. Ctr.*, 469 F.3d at 270).

        3.    *The FAC's and SAC's Overlapping Allegations Reinforce the Relevant Course of Conduct*

The SAC amplifies the FAC's allegations. The facts alleged in the SAC do not "differ in [either] time [or] type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Indeed, the FAC allegations underlie or in some cases overlap with the SAC allegations. The SAC allegations against HSBC Private Bank rise up from the same "proof" relied upon by the Trustee in the FAC—the due diligence memoranda and communications HBUS produced in response to the Rule 2004 subpoenas—and cover the same substance. For example:

| First Amended Complaint | Second Amended Complaint |
|---|---|
| On at least nine separate occasions between 2001 and 2009, HSBC Bank USA conducted due diligence on Sentry for the purpose of including the fund on its official platform. (¶ 294.) | In the early 2000s, HSBC Private Bank formed a research committee, which included employees of Defendant HSBC Bank USA, that performed multiple due diligence reviews on Fairfield Sentry. (¶ 72.) |
|  | On behalf of HSBC Private Bank, HSBC Bank USA employees also regularly communicated with FGG concerning, among other things, the identity of the counterparties |

---

[6] Parties are bound by positions taken and assertions made on their behalf in briefs submitted to the Court, particularly when the position taken pertains to the party's stance on a matter of fact as opposed to legal argument. *Morgan Art Found. Ltd. v. Brannan*, No. 18-cv-8231, 2020 WL 469982, at *8 (S.D.N.Y. Jan. 28, 2020); *Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, No. 15-CV-7505, 2016 WL 6561548, at *4 (S.D.N.Y. Nov. 3, 2016).

| First Amended Complaint | Second Amended Complaint |
|---|---|
| | to Madoff's purported options trades, Fairfield Sentry's risk reporting, BLMIS's correlation with the S&P 100, and BLMIS acting as custodian to the funds. (¶ 105.)<br><br>With respect to Fairfield Sentry, HSBC Private Bank repeatedly raised concerns between 2001 and 2008 as to the lack of an independent custodian and the inability to verify Fairfield Sentry's trading activity. Yet each time HSBC failed to take steps to verify the existence of the assets purportedly held by BLMIS or to verify the trades reported on the BLMIS customer statements. (¶ 162.)<br><br>HSBC Private Bank's research committee's May 2007 meeting minutes noted that Fairfield Sentry did not "really know how [BLMIS's trading] model work[ed]." (¶ 173.) |
| In July 2001, the HSBC Private Bank due diligence team met with Fairfield Greenwich ("Fairfield") officers. At this meeting, Stephen Kinne, a high-ranking member of HSBC Bank USA's due diligence team, inquired about the many obvious red flags, including Madoff's choice to forego lucrative fees, the identities of the counterparties to Madoff's over-the-counter options transactions, and the percentage of securities that Madoff held at the Depositary Trust Corporation. Upon information and belief, none of the Fairfield representatives provided adequate responses to HSBC Bank USA's questions. (¶ 295.) | As early as 2001, in a report on Fairfield Sentry, HSBC Private Bank recognized that Madoff's forfeiture of the typical management and performance fees was a concern. (¶ 260.) |
| On August 7, 2001, HSBC Bank USA issued a due diligence report on Sentry ("2001 Report"). The 2001 Report stated that the due diligence team had been unable to meet with Madoff and that, therefore, the team formed its "opinions" solely on the basis of meetings with Fairfield representatives and a MAR/Hedge article on Madoff. The 2001 Report noted that, without meeting Madoff, | As early as 2001, HSBC Private Bank suspected that Madoff was using returns from the market making business to subsidize the IA Business. It also suggested that Madoff was making "trades outside the stated universe," and worried that "[a] potentially greater risk could be that BLM[IS] [was] seek[ing] another means of generating returns," echoing Christine Coe's concern that |

| First Amended Complaint | Second Amended Complaint |
|---|---|
| there was no way for HSBC to assess Madoff's trading system, risk controls, or compliance procedures. As a result, HSBC Bank USA stated that it was "very difficult" to understand how Madoff was able to make money in such a consistent fashion. The 2001 Report also noted multiple red flags associated with Madoff, including his taking custody of securities and refusal to accept fees at the fund level. (¶ 296.) | "[Madoff] m[ight] be tempted to use [invested] money to do other things…." (¶ 175.)<br><br>A 2001 diligence report by HSBC Private Bank states:<br><br>Bernie Madoff's 12 year track record trading a split strike conversion strategy on the S&P 100, is quite simply astounding. His annualized return of 15%, (net of a 20% performance fee) at a risk of 3%, yields a sharpe ratio of 3.3. Over this period the fund has endured only 4 down months (the maximum of which was down 0.5%), and has now gone almost 6 years without a drawdown. With this track record, seemingly derived from such a simple investment strategy, certain members of the investment community are baffled, as to how such a return stream has been earned [(emphasis in original)]. (¶ 170.) |
| In January of 2003, HSBC Bank USA issued another due diligence report on Sentry, which noted many of the same concerns addressed in the 2001 Report. According to Research Committee Minutes, David Mullane, a member of the due diligence team, warned, "I would not invest in [Sentry] nor would I want investors to invest." (¶ 297.) | "I would not invest in this fund [Fairfield Sentry], nor would I want investors to invest." So concluded David Mullane, a member of HSBC Private Bank, who reported that, in addition to other concerns, "investors (and the media) have questioned" whether Madoff's investment strategy could yield BLMIS's returns. (¶ 168.)<br><br>In January 2003, HSBC Private Bank found it "unclear how [Madoff's] strategy has generated a track record with almost no down months." (¶ 171.) |
| In 2004, HSBC Bank USA issued yet another report regarding Sentry. In addition to noting the previously mentioned red flags, HSBC Bank USA noted the concern that Madoff's track record was "[t]oo good to be true." (¶ 299.) | In 2004, HSBC Private Bank issued another report warning that Madoff had a "'too good to be true' track record," and concluded that Fairfield Sentry is "a fund we are not completely comfortable with" and "not a fund that we recommend." (¶ 172.) |

| First Amended Complaint | Second Amended Complaint |
|---|---|
| HSBC Private Bank highlighted Madoff's fee structure as a red flag on at least nine occasions in reports issued between 2001 and 2008.  In 2007, for example, HSBC Private Bank noted, "[t]he lack of transparency involving fees paid to Madoff was disturbing."  HSBC Private Bank later reached the same conclusion as other investment professionals, stating, "Things do not add up in terms of Bernie's compensation structure."  (¶ 213.) | In a 2007 report on Fairfield Sentry, HSBC Private Bank noted Madoff's failure to charge management and performance fees and found that "[t]he lack of transparency involving fees paid to Madoff was disturbing." The report also noted that the only fees that BLMIS was supposed to charge—brokerage fees—were "not disclosed anywhere, not even [in] the audited financial statements." (¶ 261.) |

Both the FAC and SAC allegations detail HSBC Private Bank's efforts to market Madoff Feeder Funds, including Fairfield Sentry, to private clients, investing funds into Fairfield Sentry and other Madoff Feeder Funds, and receiving subsequent distributions from, and transfers out of Madoff Feeder Funds (including, as HSBC Private Bank well knew, Fairfield Sentry). For example:

| First Amended Complaint | Second Amended Complaint |
|---|---|
| Upon information and belief, HSBC Private Bank began marketing Sentry to its high net-worth clients as early as 1999. This occurred even though HSBC Private Bank failed to conduct any meaningful due diligence on Sentry, and the fund was not a part of the HSBC Private Bank platform. Upon information and belief, HSBC violated internal policies by marketing and recommending a fund not on its official platform. (¶ 294.) | HSBC Private Bank marketed, recommended, and invested in the BLMIS Feeder Funds, even though funds like Fairfield Sentry Limited ("Fairfield Sentry") were not on HSBC's list of approved funds for investment. It was not on that list because HSBC had identified numerous factors indicating fraud, including its too-good-to-be-true track record, Madoff's failure to charge investment management or performance fees, the lack of an independent custodian, BLMIS's lack of transparency, and the unacceptable counterparty risk, among other indicia of fraud. (¶ 69.) |
| HSBC Private Bank informed another investor in 2004 that HSBC Private Bank did not sell every available fund, but only those that passed HSBC Private Bank's due diligence requirements. At each meeting, the | HSBC Private Bank made written and oral representations that it performed reviews of the funds it recommended. (¶ 71.) |

| First Amended Complaint | Second Amended Complaint |
|---|---|
| HSBC Private Bank adviser confirmed that HSBC performed due diligence on all recommended funds. Upon information and belief, these recommendations led these investors to invest in Kingate Global and Sentry. (¶ 302.) | |

The FAC reflects that the Trustee was a stranger to the transactions and had limited access to documents and information as of 2010. As Judge Morris has noted with respect to the Trustee's perspective on subsequent transfers:

> [T]his Court has been clear that the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected. The Moving Defendants are a group of interrelated individuals and entities . . . . Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Picard v. Standard Chartered*, 2023 WL 118787, at *6 (citation omitted). HSBC Private Bank, of course, was not an outsider to the transaction. Even the inartful use of the term "Sentry" in the pertinent paragraphs did not impact HSBC Private Bank's understanding of the substance of the Trustee's allegations. The lack of specificity in the FAC as to the transfers HSBC Private Bank received is a consequence of the Trustee's status as an outsider. The SAC shows an increased understanding of HSBC's inner workings and its many connections to BLMIS investments and seeks to amplify the FAC's allegations. Comparing the allegations in the FAC and the SAC, "[t]he principal inquiry . . . [of] whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading" is satisfied. *BNP II*, 2024 WL 2839330, at *18 (cleaned up).

**D.**    **Relation Back in the Madoff SIPA Liquidation**

HSBC Private Bank correctly points out that a relation-back analysis has been performed in several adversary proceedings within this SIPA Liquidation. In some instances, relation back has been found, *KBC Inv. Ltd.*, 2023 WL 3112719, at *7; *Standard Chartered*, 2023 WL 118787, at *6; *Picard v. Royal Bank of Canada, et al. (In re BLMIS)*, 650 B.R. 524, 546 (Bankr. S.D.N.Y. 2023), and in other instances, it has not, *see Picard v. BNP Paribas S.A., et al. (In re BLMIS)*, 594 B.R. 167, 210-12 (Bankr. S.D.N.Y. 2018) ("*BNP I*"); *BNP II*, 2024 WL 2839330, at *20. The relation-back test is a case-specific inquiry. It is not a one-size-fits-all analysis, particularly given that in each case brought by the Trustee in which relation back has been tested, there may be unique circumstances, particularly with regard to the original complaint, the procedural history, and the amended complaint. Here, the detail provided by the Trustee in the FAC, and HSBC Private Bank's understanding of that conduct, distinguishes the relation back analysis for the HSBC Private Bank recovery claims from others previously before this Court.

**1.**    *The Impact of BNP I and BNP II*

HSBC Private Bank's motion rests entirely on its claim that the findings in *BNP I* and *BNP II* relating to "New Relationship Transfers" are applicable here. But HSBC Private Bank fails to recognize that the difference in procedural history and substance of the pleadings between the cases require the Court to perform a different analysis of "conduct, occurrences, or transactions" here, one that does not involve "New Relationship Transfers."

**a.**    The FAC and the BNP Original Complaint Are Distinct Pleadings

The outcomes in *BNP I* and *BNP II* rest wholly on the initial complaint filed in *Picard v. BNP Paribas S.A.*, et al., Adv. Pro. No. 12-01576 (the "*BNP* Proceeding"). (Usitalo Decl., Ex. 10 (Compl. (May 4, 2012), *BNP* Proceeding, ECF No. 1 (the "BNP Original Complaint")).) The

BNP Original Complaint was a notice pleading, which the Trustee understood to satisfy the

pleading burden at that time. The BNP Original Complaint set out the following sections:

    I.    Nature of the Action (the Trustee is seeking BLMIS Customer Property);
    II.   Jurisdiction and Venue;
    III.  Background (SIPA Liquidation);
    IV.  Trustee's Powers and Standing;
    V.   The Defendants (identifying BNP entities);
    VI.  The Ponzi Scheme; and
    VII.  The Transfers (from Fairfield Sentry, Kingate Global, Kingate Euro, Broad Market Fund, and the Portfolio Limited Fund).

(*Id.*) There were no allegations in the BNP Original Complaint that pertained to BNP's

knowledge, due diligence, marketing, or the investment in, relationship with, or any interactions

between the relevant BNP entity and the relevant feeder fund.

    This is markedly different from the FAC which devoted an entire section to HSBC

Private Bank's relationship with Fairfield Sentry, quoted from HSBC's own documents, and

detailed the course of conduct that HSBC Private Bank undertook internally and with respect to

its clients in relation to investments with Fairfield Sentry. By contrast to the BNP Original

Complaint, the FAC contained a five page "Table of Contents" that identified a 25-page section

devoted to "The Defendants' Relationship with Madoff." (FAC at ii.) Within that 25-page

section, there are subsections titled "HSBC Helped Funnel Foreign Investors into the Feeder

Fund Defendants," and "The HSBC Swaps" followed by sections identifying and detailing nine

different swap transactions. (*Id.*) That section also includes subsections titled "The Defendants

Enabled Madoff to Act as His Own Custodian," "HSBC As Administrator of the Feeder Fund

Defendants," "HSBC Marketed Madoff to its Private Banking Clients," and "HSBC Bank

Engages KPMG to Assess Fraud and Operational Risk at BLMIS and then Ignores its Findings."

(FAC p. ii-iii.)

b.    Judge Bernstein's Decision in *BNP I*

In *BNP I*, the Trustee sought to relate back to the BNP Original Complaint new transfer

claims based on a broad application of Rule 15. The Trustee's proposed amended complaint

clarified that the transfers originally alleged were based on underlying swaps and redemptions

between certain BLMIS feeder funds and the BNP defendants, but that detail was not actually

pleaded in the BNP Original Complaint. The Trustee argued that the BNP Original Complaint

with its limited allegations provided notice to Defendants that "the Trustee intended to recover

all fraudulent transfers of BLMIS customer property that Defendants received from BLMIS

Feeder Funds." *BNP I*, 594 B.R. at 210.

Judge Bernstein disagreed. He found the Trustee could not rely solely on transfer

allegations for the new claims because each transaction and the facts and circumstances

surrounding those transactions will differ (i.e. a leverage transaction vs. a redemption).

Therefore, he found the new claims "depend on different proof" and the Trustee could not show

a "common core of operative facts." *Id.* at 210-11. In reaching his conclusion, Judge Bernstein

primarily relied on three cases, *In re Metzeler*, 66 B.R. 977 (Bankr. S.D.N.Y. 1986) ("*Metzeler*"),

*In re 360networks (USA) Inc., et al.*, 367 B.R. 428 (Bankr. S.D.N.Y 2007) ("*360networks*"), and

*Buchwald Cap. Advisors v. JPMorgan Chase, N.A.* (*In re M. Fabrikant & Sons, Inc.*), 480 B.R.

480 (S.D.N.Y. 2012) ("*Fabrikant*"), all of which are similar to *BNP I* and *BNP II*.

In *Metzeler*, the plaintiff's original complaint sought the avoidance and recovery of

transfers that he alleged were not made in the ordinary course of business. *In re Metzeler*, 66

B.R. at 983. The amended complaint sought additional preference transfers that were

characterized as payments on invoices. *Id.* at 979. The court found that the conduct pleaded to

originally support the transfers made outside the ordinary course of business did not support

seeking transfers that were payments on invoices. *Id.* at 984. The *Metzeler* court relied on

*Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp*.), 67 B.R. 304
(Bankr. S.D.N.Y. 1986), noting that transactions cannot relate back if "the transaction is different
in kind from that originally alleged *and* if the original pleading did not put into issue conduct to
which the additional transactions relate." *Id.* at 983. (emphasis added).

In *360networks*, the plaintiff sought to add additional preference transfers based on its
previous assertion of the original preference transfers. 367 B.R. at 430-31. There too, the court
found that the original complaint had not alleged the nature of the relationship between the
debtor and the defendant or the nature of the transfers between the debtor and the transferee
during the relevant period, and so the new preference transfers did not relate back. *Id.* at 434.
The *360networks* court did clarify, however, that the "test does not require that the prior
complaint put the defendants on notice of new or additional legal theories that the plaintiffs seek
to assert against the defendants, but it must inform the defendants of the facts that support those
new claims." *Id.* (quotation omitted).

Finally, in *Fabrikant*, the plaintiff originally sought to avoid and recover fraudulent
transfers to the defendants. 480 B.R. at 483-84. In the amended complaint, plaintiff sought
additional preference transfers. *Fabrikant*, 480 B.R. at 491. The *Fabrikant* court found that the
original complaint made a broad allegation about the defendants receiving liens and security
interests from Fabrikant but did not reference any other transfers that could encompass the new
preference claims. *Id.* at 493. In finding that the new claims did not relate back, the court found
that "[o]verly general original pleadings do not provide defendants with adequate notice as to
what facts they are to defend against . . . ." *Id.*

While the similarities to *BNP I* may have required Judge Bernstein to follow *Metzeler,
360Networks,* and *Fabrikant,* this case is not like *BNP I*. In all those cases, the plaintiffs argued

that by virtue of having pleaded the avoidance and recovery of other transfers and a general fraudulent scheme, they should be permitted to add new transactions. But here, the Trustee is alleging new transfers, not on the basis of earlier allegations of other transfers, but based on specific and previously detailed allegations concerning HSBC Private Bank's conduct: its relationship with Fairfield Sentry, the investments HSBC Private Bank made into Madoff Feeder Funds, including Fairfield Sentry (FAC ¶¶ 292-304), and the fact that HSBC Private Bank received distributions which are customer property (FAC ¶¶ 97, 104).

Unlike in *BNP I*, the Trustee is not contending that the SAC's recovery claims for the Private Bank Transfers relate back to the FAC's "Transfer" section that seeks the recovery of subsequent transfers originating from other feeder funds or made to other HSBC Defendants. Nor does the Trustee claim here that the FAC's general allegations about BLMIS's Ponzi scheme are what gives rise to the claims. Here, the Trustee asserts that HSBC Private Bank's conduct pleaded in the FAC gives rise to the Private Bank Transfers in the SAC.

### c. Judge Morris' Decision in *BNP II*

In *BNP II*, the Trustee argued that the new subsequent transfer claims arose out of his original subsequent transfer claims because they were part of the same transaction, i.e. fraudulent transfers originating from BLMIS, and that the BNP Original Complaint alleged the requisite conduct that gave rise to the new claims through allegations concerning Madoff's Ponzi scheme and BNP's general investments through feeder funds. *BNP II*, 2024 WL 2839330, at *20.

Judge Morris parsed the newly pleaded transfers and found some of them to be disassociated from the conduct, transactions, or occurrences pleaded in the BNP Original Complaint and deemed these "New Relationship Transfers." *Id.* Limited to the BNP Original Complaint, Judge Morris focused on the absence of an identifiable relationship that could have put the defendants on notice of a possible claim to recover transfers between certain BNP entities

and Fairfield Sentry/Sigma. *Id.* Considering whether the new claims were part of the same transaction, Judge Morris concluded that the "mere allegation" that the previously identified transfers and the newly added transfers are "'all . . . fraudulent transfers does not make them part of the same conduct.'" *Id.* at *18 (quoting *Metzeler*, 66 B.R. at 983). Because the original allegations against BNP were sparse, Judge Morris was looking only at whether the new transfer claims related to the originally pleaded transfer claims, despite the difference in subsequent transferee. Allowing relation back based on the original transfer claims, Judge Morris held, "proves too much," finding that it would "allow any transfers connected to the BLMIS Ponzi Scheme to be amended to the Complaint." *Id.* at *20.

This case is also distinguishable from *BNP II*. The Trustee is not arguing that he can bring new claims against HSBC Private Bank because the FAC sought to avoid and recover transfers to other HSBC Defendants from feeder funds connected to the BLMIS Ponzi scheme. Nor is he arguing that the recovery claims arise out of the same *transactions* alleged in the FAC's transfer section. Rather, the Trustee pleaded, in detail, HSBC Private Bank's conduct and the occurrences—its marketing, its due diligence of Fairfield Sentry, its communications about Fairfield Sentry and its investments in it—that give rise to a claim to recover the Private Bank Transfers.

Judge Morris found that, where the relationship between the transferor and the transferee could be found among the original allegations, the Trustee has met his burden under Rule 15. *Id.* at 20. That same analysis applies here. The new claims arise out of and are rooted in the same conduct alleged in the FAC—namely, HSBC Private Bank's marketing of Fairfield Sentry to its high-net-worth clients, the successful solicitation of investments into those funds, and the resulting distributions or redemptions that HSBC Private Bank received as a consequence.

29

Although the Trustee was not able to provide the level of detail in 2010 that he could in 2015 or 2023 because he is a stranger to the transactions, the FAC's allegations were enough to bring to HSBC Private Bank's attention the possibility that the Trustee could pursue a claim based on that relationship and the transfers were known to HSBC Private Bank. The HSBC Defendants' statements in the HSBC ET Brief demonstrate that the Trustee did so sufficiently.

It should also be noted that Judge Morris' analysis in *BNP II* was cabined by Judge Bernstein's findings in *BNP I*. *BNP II* specifically states that "[t]he Court has already found in this case that new transfers alleged in subsequent amended complaints do not relate back . . . ." *BNP II*, 2024 WL 2839330, at *20. The Court here is not constrained by precedent or procedure, because the timeliness of the Trustee's claims against HSBC Private Bank has never been challenged or ruled upon.

### 2.    *BBVA and the Pending Motion*

A relation back analysis was recently argued before this Court in the *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.* (*In re BLMIS*), Adv. Pro. No. 10-05351 (the "*BBVA* Proceeding"). The *BBVA* Proceeding is distinguishable from *BNP I and II* and from the facts here.

The original complaint in the *BBVA* Proceeding provided detailed allegations concerning BBVA's swap transactions with Fairfield Sentry, (Usitalo Decl., Ex. 11, Compl. (Dec. 8, 2010), Adv. Pro. No. 10-05351, ECF No. 1), and the amended complaint included new claims to recover transfers resulting from BBVA private bank investments with Fairfield Sentry. (Am. Compl. (July 31, 2004), Adv. Pro. No. 10-05351, ECF No. 151.) All parties conceded that BBVA private bank's conduct was not alleged in the original complaint. The original complaint did include a paragraph nearly identical to FAC paragraph 356, reserving the Trustee's rights to bring claims on newly discovered transfers. (Usitalo Decl., Ex. 11 at ¶ 149.) In *BBVA*, the Court

must determine whether the conduct alleged between BBVA and Fairfield Sentry with respect to the swap transactions combined with the "catchall" provision sufficiently put the Defendant[7] on notice of the BBVA private bank transactions in satisfaction of Rule 15. (Bamberger Decl., Ex. N (Tr. of Feb. 24, 2025 Hr'g, Adv. Pro. No. 10-05351, at 43:14-16 ("The Court: Paragraph 149. So [what] I have to decide is paragraph 149 by itself sufficient to put them on notice that there would be these other claims.").)

The Court need not perform that analysis here. The FAC did plead HSBC Private Bank's conduct separately (FAC ¶¶ 292-304) from the allegations concerning the HSBC Defendants' other conduct as a service provider (FAC ¶¶ 281-91) and their conduct in structured product transactions (FAC ¶¶ 245-74). The Trustee put HSBC Private Bank on notice that HSBC Private Bank's conduct involving its private bank clients and investments into Madoff Feeder Funds, including Fairfield Sentry, were at issue in the adversary proceeding. Paragraph 356—noting the Trustee's right to seek additional transfers—can be tied to that conduct.

HSBC Private Bank ignores that relation back is intended to be applied broadly and with reasonableness and seeks an extremely narrow application instead. *KBC Inv. Ltd.*, 2023 WL 3112719, at *7 ("Rule 15 'does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading.'") (citations and quotations omitted). The Trustee's statements in the *BBVA* briefing and at the hearing concerning the concept of a "new relationship transfer" developed in the *BNP* Proceeding are not implicated here. This "bright line" rule was made in the context of the proposed relation back of new transfers solely on allegations concerning the receipt of other subsequent transfers, without the establishment of conduct

---

[7] This assumes the issues on separate entity is resolved.

between the relevant parties giving rise to those transfers. HSBC Private Bank's characterization

of the Trustee's statements misses the point. (Defs.' Mot. at 18.) Here, where the original

complaint so clearly sets forth the conduct and relationship that gives rise to the newly alleged

transfers, a "bright line rule" is not needed. This understanding was made clear in *In re Uplift*

*RX, LLC*. Recognizing *BNP I* and the cases it relied upon discussed above, the court explained:

> New avoidance claims are generally treated as separate, distinct
> transactions that do not relate back under Rule 15(c). *See
> Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
> 594 B.R. 167, 210 (Bankr. S.D.N.Y. 2018) (quoting *In re M.
> Fabrikant & Sons, Inc.*, 480 B.R. 480, 492 (S.D.N.Y. 2012), *aff'd*,
> 541 Fed. Appx. 55 (2d Cir. 2013)). However, just as claims arising
> from the same "basic scheme" relate back, so too do newly pleaded
> avoidance claims that arise from the same "course of conduct"
> pleaded in the original complaint. *In re Juliet Homes, LP*, 07-
> 36424, 2011 WL 6817928, at *6 (Bankr. S.D. Tex. Dec. 28, 2011)
> (quoting *Adelphia Recovery Trust v. Bank of America, N.A.,* 624 F.
> Supp. 2d 292, 334 (S.D.N.Y. 2009)). Consequently, the Additional
> Transfer claims will relate back if: (1) the Amended Complaint
> alleges that the Additional Transfers were part of a course of
> conduct alleged in the Original Complaint; and (2) the Original
> Complaint notified the parties, against whom the Additional
> Transfer claims are asserted, that the Trustee could pursue
> avoidance of the Additional Transfers associated with the course of
> conduct alleged in the Original Complaint. *Id.* at *7 (citing
> *Adelphia*, 624 F. Supp. 2d at 334).

*In re Uplift RX, LLC*, 625 B.R. 364, 376 (Bankr. S.D. Tex. 2021). This reasoning aligns with the

holdings and varied circumstances of *BNP I*, *BNP II*, and the *BBVA* Proceeding. A plaintiff

cannot add a new transfer and rely only on the original transfers pleaded to prove relation back

when the transfers are distinct. The new transfers must be supported by factual allegations made

(or attempted to be made) in the original complaint—a course of conduct that aligns with the

transfers being sought in the amendment. *Id.* The Private Bank Transfers do not require the

application of the tests articulated in *BNP I* and *BNP II*. Here, relation back may be decided on

the plain application of the rule.

E.   **The Conduct Pleaded Does Not Limit The Trustee's Claims For Recovery of Redemptions**

HSBC Private Bank contends that the Trustee's theory of relief in the FAC was focused solely on HSBC Private Bank soliciting investors into BLMIS, "not that those entities themselves *received* any money from BLMIS that they were liable to pay back." (Defs.' Mot. at 2.) In other words, HSBC Private Bank acknowledges the FAC's particularized allegations but contends that they were only meant to support the Trustee's common law claims. This narrow and immaterial interpretation of the Trustee's allegations seeks to promote the very "technicalities" over the merits that Judge Morris and other courts cautioned against. *Picard v. Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *12. The relation back "test does not require that the prior complaint put the defendants on notice of *new or additional legal theories* . . . but it must inform the defendants of the facts that support those new claims." *BNP I*, 594 B.R. at 210 (citing *360networks*, 367 B.R. at 434) (emphasis added). Moreover, an amended complaint will relate back when the new claims are a "natural offshoot" of the conduct alleged. *Slayton*, 460 F.3d at 228. The allegations in the FAC supported the legal theories and claims of the FAC, as well as the new legal theories and claims of the SAC. The significant overlap in allegations in the FAC and the SAC concerning HSBC Private Bank support this, even though the dismissed common law claims are absent from the SAC. (*See supra* Part III.C.3.)

HSBC Private Bank's account also ignores the Trustee's explicit allegations regarding HSBC Private Bank: "Upon information and belief, [they] received fees *and/or distributions* to which [they were] not entitled and/or *which are composed*, in part, *of Customer Property*."  (*See* FAC, ¶¶ 97, 104 (emphasis added).) HSBC Private Bank only highlights the "fees" aspect of the Trustee's claim for return of "Customer Property" but the Trustee's allegations were also

directed to "distributions"[8] (as distinct from fees) that HSBC Private Bank received from

BLMIS-related investments.[9]

The FAC also specifically advised HSBC Private Bank that the Trustee might bring

additional claims related to the allegations. Paragraph 357 of the FAC alleged that the "HSBC

Defendants received subsequent transfers from Madoff Feeder Funds that are not named as

defendant herein, *including* . . . the 'Non-Party Funds' . . . ." (FAC ¶ 357 (emphasis added).) By

his use of "including," the Trustee purposely did not limit the subsequent transfers to "Non-Party

Defendants" but rather the broader group of "Madoff Feeder Funds." Additionally, Paragraph

358 incorporated into the FAC the Trustee's concurrent lawsuit against Fairfield Sentry and

Fairfield Sigma, thereby putting the HSBC Defendants on notice of the Fairfield Sentry and

Fairfield Sigma initial transfers he was seeking to avoid and recover. HSBC Private Bank knew,

based on its own conduct, that it received the Private Bank Transfers as subsequent transfers

from those initial transfers. The Private Bank Transfers are not new relationship transfers as

Defendants argue but are transfers HSBC Private Bank knew the Trustee could seek to avoid and

recover.

### F.      HSBC's Purported Understanding of the Trustee's Litigation Strategy is Irrelevant to the Relation Back Analysis

HSBC Private Bank suggests that because of its purported understanding of the Trustee's

litigation strategy following his settlement with Fairfield Sentry, the Trustee's recovery claims

cannot relate back. (Defs.' Mot. at 6-9, 23.) This strains credulity. First, HSBC Private Bank's

---

[8] A distribution refers to a situation in which a fund (or company) distributes capital gains, dividends, or interest income to its owners. James Chen, *Distribution: Definition in Finance, Types, and Examples*, INVESTOPEDIA (Mar. 24, 2023), https://www.investopedia.com/terms/d/distribution-channel.asp.

[9] Defendants attempt to masquerade as vendors being paid on invoices in the ordinary course. Their admission, however, that the distributions they took from Fairfield Sentry and Fairfield Sigma constituted redemptions negates any such comparison.

understanding is unsubstantiated, purely hypothetical, and contradicted by the record. Second, HSBC Private Bank's perception of the Trustee's intent or plan based on the agreements the Trustee reached with a third party is wholly irrelevant.

Moreover, a Rule 12(c) motion cannot be granted when it requires resolving a question of fact. While the Trustee agrees that this Court can take judicial notice of filings in other proceedings, the HSBC Defendants' subjective belief about the Trustee's litigation strategy is a question of fact well outside the realm of proper judicial notice.

Notably, HSBC Private Bank makes no reference to any prejudice it may suffer because of relation back.[10] On the contrary, its brief makes note of the parallel proceeding by the Fairfield Joint Liquidators asserting claims concerning these same transfers. Through this, and by their own admission in the HSBC ET Brief, the HSBC Defendants have been preparing to defend these claims since 2010.

The notion that the Trustee would have amended the complaint to add the recovery claims by 2012 if he intended to do so is also flawed. By April 2011, Judge Rakoff had withdrawn the reference to address threshold issues of law on a motion to dismiss. Briefing and decisions on the withdrawn issues occurred over the next several years, and the proceeding was not returned to the Bankruptcy Court until July 2014. The Trustee, the HSBC Defendants, and other defendants then agreed to address ET on an omnibus basis. It was not until then, in 2015, that the Trustee had a procedurally proper opportunity to seek to amend his complaint.

---

[10] *Cap. Recs., Inc.* 262 F. Supp. 2d at 216; *Higgins*, 836 F.Supp.2d at 192.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Trustee respectfully requests that HSBC Private Bank's

Motion for Judgment on the Pleading be denied in its entirety.


Dated: New York, New York
       April 25, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    <u>*s/Oren J. Warshavsky*</u>
       David J. Sheehan
       dsheehan@bakerlaw.com
       Oren J. Warshavsky
       owarshavsky@bakerlaw.com
       Michelle R. Usitalo
       musitalo@bakerlaw.com
       45 Rockefeller Plaza, 14th Floor
       New York, NY  10111
       Telephone:  212.589.4200
       Facsimile:  212.589.4201

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*