**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (LGB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK PLC, HSBC BANK USA, N.A., HSBC USA, INC., HSBC PRIVATE BANK (SUISSE) S.A., and SICO LIMITED,<br><br>Defendants. | Adv. Pro. No. 09-01364 (LGB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| LEGAL STANDARD | | 3 |
| ARGUMENT | | 5 |
| I. | The Trustee Did Not Allege Any Of The Transfers At Issue Prior To 2015 | 5 |
| II. | The Trustee's Untimely Claims Do Not Arise Out Of The Conduct Or Transactions Alleged In The FAC | 7 |
| | i. The Trustee Did Not Simply Misdefine "Sentry" | 7 |
| | ii. The Trustee's "Sentry" Allegations In Sixteen Paragraphs Of The FAC Related Solely To Diligence And Marketing To Other People | 8 |
| | iii. The FAC's Passing References To "Distributions" Are Insufficient | 10 |
| | iv. The SAC Does Not Merely Amplify Or Add A New Legal Theory To The FAC | 13 |
| | v. Defendants Did Not Concede Notice of the Untimely Clawback Claims | 14 |
| CONCLUSION | | 16 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ASARCO LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014) .................................................................................. 10

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016) .................................................................................. 8

*Harte v. Ocwen Financial Corp.*,
  2018 WL 1559766 (E.D.N.Y. 2018) ............................................................. 2, 4, 13–14

*Hirsch v. Suffolk Cnty.*,
  2015 WL 1275461 (E.D.N.Y. Mar. 18, 2015) ......................................................... 4, 10

*In re 360networks*,
  367 B.R. 428 (Bankr. S.D.N.Y. 2007) .................................................................. 4, 13–14

*In re Fairfield Sentry Ltd.*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................. 10

*In re M. Fabrikant & Sons, Inc.*,
  447 B.R. 170 (Bankr. S.D.N.Y. 2011) .................................................................. *passim*

*In re M. Fabrikant & Sons, Inc.*,
  480 B.R. 480 (S.D.N.Y. 2012) ............................................................................. *passim*

*In re M. Fabrikant & Sons, Inc.*,
  541 F. App'x 55 (2d Cir. 2013) ............................................................................ *passim*

*In re Metzeler*,
  66 B.R. 977 (Bankr. S.D.N.Y. 1986) ................................................................... 14

*In re Motors Liquidation Co.*,
  957 F.3d 357 (2d Cir. 2020) ................................................................................ 15

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
  559 B.R. 563 (Bankr. S.D.N.Y. 2016) .................................................................. 10

*JP Morgan Chase Bank v. Winnick*,
  406 F.Supp.2d 247 (S.D.N.Y. 2005) .................................................................... 10

*Liverpool v. Davis*,
    442 F.Supp.3d 714 (S.D.N.Y. 2020)........................................................................... 3

*Picard v. BNP Paribas S.A. et al.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)....................................................................... *passim*

*Picard v. BNP Paribas S.A. et al.*,
    2024 WL 2839330, (Bankr. S.D.N.Y. June 4, 2024)................................................ *passim*

*Slayton v. American Exp. Co.*,
    460 F.3d 215 (2d Cir. 2006)...................................................................................... 14

*White v. White Rose Food, a Div. of DiGiorgio Corp.*,
    128 F.3d 110 (2d Cir. 1997)...................................................................................... 4, 13

**Rules and Statutes**

11 U.S.C. § 550(a).................................................................................................................. 9

Fed. R. Civ. P. 15(c)(1)(B)..................................................................................................... 3–4

# PRELIMINARY STATEMENT

The Trustee does not dispute his failure to timely allege fraudulent transfer claims related to the Fairfield Funds against PBRS and HBUS, and his arguments for relation back fail. Indeed, the Trustee does not dispute that the FAC (the pleading to which any such claim would have to relate back) did not allege or seek to recover *any* transfer from the Fairfield Funds to PBRS or HBUS. Nor does he dispute that the earliest he even arguably sought to bring claims to recover such transfers was 2015—*years* after limitations ran. Instead, the Trustee primarily contends that his stale claims to recover over $320 million in alleged transfers from the Fairfield Funds relate back because sixteen paragraphs of the FAC alleged that Defendants had *marketed* "Sentry" to other people and conducted related due diligence. But the Trustee is flat wrong for multiple reasons.

Although the Trustee now claims that the use of "Sentry" in those paragraphs was an unmistakable reference to Fairfield Sentry, "Sentry" was defined throughout the FAC as a different fund, Greenwich Sentry. The Trustee was the master of his own pleading, and he *did* pursue (and *is pursuing*) a claim against HBUS related to Greenwich Sentry. But even setting aside what the Trustee dismisses as mere "inartful" shorthand, the Trustee's argument for relation back fails the basic test of Rule 15—whether untimely claims arise out of the same "conduct, transaction, or occurrence" pled in the original complaint. These "Sentry" allegations related solely to Defendants' alleged solicitation of other people's investments *into* BLMIS, but the Trustee's untimely subsequent transfer claims are predicated upon Defendants' alleged receipt of BLMIS customer property *from* the Fairfield Funds— fundamentally different conduct and transactions as a matter of law, even if "Sentry" did refer to Fairfield Sentry. *See In re M. Fabrikant & Sons, Inc.*, 541 F. App'x 55, 58 (2d Cir. 2013) ("<u>Fabrikant III</u>") ("[P]referential payments allegedly *received* by [defendants] do not relate back to the fraudulent transfers allegedly *made* by [defendants]."). Indeed, the FAC's "Sentry" allegations were pled to support the distinct theory that Defendants aided and abetted Madoff's fraud by pumping money *into*

1

the Ponzi scheme—the FAC's primary theory of liability against HBUS and only theory against PBRS.

Straining to obscure the fundamental difference between the conduct and transactions that gave rise to his original and late-added claims, the Trustee also argues that the SAC's subsequent transfer claims relate back because they merely (1) "amplify" the FAC's due diligence and marketing-related "Sentry" allegations and (2) tack on a new legal theory. But, as courts in the Second Circuit have made crystal clear, an untimely claim does neither where it is based on transactions or key factual ingredients that were absent from the original pleading. *See In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 182 (Bankr. S.D.N.Y. 2011) ("*Fabrikant I*"); *Harte v. Ocwen Financial Corp.*, 2018 WL 1559766, at *15 (E.D.N.Y. 2018). Here, there is no question that *the* essential factual ingredient for the Trustee's untimely clawback claims is missing from the FAC. In fact, the Trustee effectively concedes that *the FAC does not allege* that Defendants received subsequent transfers of BLMIS customer property through redemptions from the Fairfield Funds. And because each alleged redemption from an initial transferor fund is a separate and distinct transaction for purposes of Rule 15, the SAC's untimely clawback claims plainly relate to transactions not pled in the FAC.

Further grasping at straws, the Trustee points to two stray references in the FAC—nearly 200 paragraphs away from the "Sentry" marketing and diligence allegations—to Defendants' alleged receipt of unspecified "fees and/or distributions . . . composed, in part, of Customer Property." *See* Opp'n at 33–34 (quoting FAC ¶¶ 97, 104). Yet courts, including the Second Circuit, have all held that such "passing references" to preferential or fraudulent transfers (assuming these references even were that) are wholly insufficient to provide notice under Rule 15 of untimely preferential or fraudulent transfer claims—even where they appear alongside more detailed allegations of a relationship or course of conduct between the defendant and the alleged transferor. *See Fabrikant I*, 447 B.R. at 182, *aff'd, In re M. Fabrikant & Sons, Inc.*, 480 B.R. 480, 492 (S.D.N.Y. 2012) (Sullivan,

2

J.) ("*Fabrikant II*"), aff'd, *Fabrikant III*, 541 F. App'x at 58. And in any event, nobody would have construed the FAC's cryptic references to "fees and/or distributions" as seeking to recover Fairfield subsequent transfers. All of the specific subsequent transfers the FAC alleged went to HSBC entities related to *wholly distinct transactions—i.e.*, fees or redemptions of the HSBC entities' own money in connection with swaps or call options.

Unable to find a clean allegation in the FAC, the Trustee looks outside of it for extrinsic evidence that PBRS and HBUS somehow knew what he now claims he meant to allege. That effort falls utterly flat. The Trustee cites an excerpt from a 2015 brief on extraterritoriality, suggesting that Defendants conceded that the FAC put them on notice of Fairfield subsequent transfer claims. But he completely misreads the document. Defendants filed it months *after* the Trustee had already included claims to recover alleged subsequent transfers from the Fairfield Funds in his 2015 proffered amended complaint. And Defendants cited the FAC to point out that these late-alleged transfers were *foreign* transfers on behalf of Defendants' *foreign clients* (key details for the extraterritoriality analysis, the issue in dispute at that time). Not only did Defendants cite *only* the 2015 proffered complaint—and *not* the FAC—when referencing the Trustee's untimely claims to recover Fairfield transfers, but as part of the very same briefing cycle, Defendants listed all of the funds alleged in the FAC to have made transfers to HSBC entities (including PBRS and HBUS) *in the FAC*, and *none* were Fairfield Sentry or Fairfield Sigma. See Defs.' Consol. Br. (Jan. 2, 2015), ECF No. 355, at 19.

Because the Trustee cannot show that the FAC put Defendants on notice of his untimely claims, and because these claims arise out of conduct and transactions separate from those pled in the FAC, his untimely claims do not relate back and judgment on the pleadings should be granted.

### LEGAL STANDARD

The party asserting relation back bears the burden of proof. *Liverpool v. Davis*, 442 F.Supp.3d 714, 724 (S.D.N.Y. 2020). An untimely claim only relates back if it "ar[ises] out of the conduct,

3

transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This cannot be satisfied where the untimely claim "is based on new facts and different transactions." *Fabrikant I*, 447 B.R. at 182. Nor can it be satisfied where the untimely claim "arise[s] from conduct that is separate from yet related to the conduct alleged in the earlier pleading." *Hirsch v. Suffolk Cnty.*, 2015 WL 1275461, at *8 (E.D.N.Y. Mar. 18, 2015).

Moreover, relation back only occurs where the original pleading gave "the defendant fair notice of what the plaintiff's [untimely] claim is and the grounds upon which it rests." *Fabrikant II*, 480 B.R. at 492. Although an amended complaint may set out "new or additional legal theories," the original complaint must have adequately "inform[ed] the defendants of the facts that support those new [theories]." *In re 360networks*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007). Thus, to relate back, untimely claims asserting new legal theories must be "based on the same series of transactions or occurrences" as the claims in the original pleading. *White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir. 1997). But where the original complaint "contains no hint of a key factual ingredient at the heart of [the] new theory, the Court cannot conclude that [d]efendants were on notice." *Harte*, 2018 WL 1559766, at *15. An amendment also does not relate back where, rather than "provid[ing] more specificity to cure a defective allegation . . . [,] it alleges a new cause of action and reaches for a general hook [in the original complaint] to hang it on." *Fabrikant II*, 480 B.R. at 493.

For avoidance and clawback actions, "the law is clear that each . . . transaction is treated separately and distinctly." *Id.* at 492 (citing *In re 360networks*, 367 B.R. at 429). That is because "[p]roof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct." *Fabrikant II*, 480 B.R. at 492; *accord Picard v. BNP Paribas S.A. et al.*, 594 B.R. 167, 210 (Bankr. S.D.N.Y. Oct. 3, 2018) ("BNPP I"); *Picard v. BNP Paribas S.A. et al.*, Adv. Pro. No. 12-01576 (CGM), 2024 WL 2839330, at *18 (Bankr. S.D.N.Y. June 4, 2024) ("BNPP II"). While an

4

amendment may relate back if it simply "amplif[ies] the facts alleged in the original pleading or set[s] forth those facts with greater specificity," neither occurs where the amendment introduces previously unpled preferential or fraudulent transfers. *Fabrikant I*, 447 B.R. at 181–82. Accordingly, in the context of this liquidation, where the Trustee "ha[s] not previously alleged a transfer between that transferee and relevant fund," subsequent transfer claims to recover such transfers do not relate back. *BNPP II*, 2024 WL 2839330, at *20; *accord BNPP I*, 594 B.R. at 207–12.

## ARGUMENT

### I. The Trustee Did Not Allege Any Of The Transfers At Issue Prior To 2015

The Trustee does not dispute that to be timely he must root his claims in the 2010 FAC. Nor does he dispute that the FAC did not plead claims to recover alleged subsequent transfers of BLMIS customer property from the Fairfield Funds to any HSBC entity. That is because the FAC only brought claims to recover subsequent transfers purportedly received by the "HSBC Defendants" (including PBRS and HBUS) from "Feeder Fund Defendants" and "Non-Party Funds," neither of which included the Fairfield Funds.[1] Indeed, the Trustee does not dispute that the FAC *never referenced any* specific transfer from the Fairfield Funds to any HSBC entity—even in the section that the Trustee now argues was meant to "detail[] the course of conduct that [PBRS and HBUS] undertook internally and with respect to its clients in relation to investments with Fairfield Sentry." Opp'n at 25 (referencing FAC ¶¶ 292–304). That should end the inquiry.

The FAC's lack of any claim to recover (or any allegation of) a transfer of BLMIS customer property from the Fairfield Funds to Defendants cannot plausibly be attributed to a naming mistake. Although the "Non-Party Funds" referenced in Counts Thirteen to Nineteen included "Sentry," there

---

[1] Count Two sought recovery of transfers from the "Feeder Fund Defendants," defined as Primeo, Herald, Herald (Lux), Alpha Prime, Senator, Hermes, Lagoon, Thema Fund, Thema Wise, Thema International, Geo Currencies, and Lagoon Trust. FAC at 3, ¶¶ 343, 400–04. Count Ten sought recovery of "Subsequent Transfers," defined as transfers from the same funds. *Id.* ¶¶ 322–52, 450–56. Counts Thirteen through Nineteen sought recovery of transfers from the "Non-Party Funds," defined as [Greenwich] Sentry, Broad Market, Broad Market Portfolio, Harley, Kingate Global, Kingate Euro, Landmark, Defender, and Square One. *Id.* ¶¶ 357, 466–536.

5

can be no doubt that the Trustee meant "Sentry" to refer to Greenwich Sentry. He did not just use the defined term; he also specifically alleged that $206 million in "Sentry Six Year Initial Transfers" (allegedly subsequently transferred in part to the HSBC Defendants) were transferred to account number 1G0092, which indisputably belongs *only* to Greenwich Sentry. *See* FAC ¶ 359, Exs. D, E1.[2]

Nor can the absence of any Fairfield subsequent transfer claim or allegation credibly be ascribed to the Trustee's incomplete investigation or the fact that he was "a stranger to the transactions and had limited access to documents and information as of 2010." *See, e.g.*, Opp'n at 23. Elsewhere, the Trustee claims that the FAC's "entire ['Sentry'] section" was based on documents produced by HBUS in 2009 that purportedly made clear that Defendants had received redemptions from the Fairfield Funds. Opp'n at 18, 25. Moreover, the Trustee does not dispute that, within the limitations period, he was aware that the Fairfield Liquidators had sued Defendants for some of the very same transfers the Trustee now seeks to recover through his late-asserted claims.[3] Even if the Trustee did not have details of alleged subsequent transfers from the Fairfield Funds to Defendants in 2010, *nothing* prevented him from adding "Fairfield Sigma" or "Fairfield Sentry" to the FAC's list of transferor "Non-Party Funds." *See* FAC ¶ 357.[4]

Under Judge Bernstein's and Judge Morris's *BNP Paribas* decisions in this liquidation, the Trustee's failure to plead any transfer of BLMIS customer property from the Fairfield Funds to Defendants until 2015 (at the earliest) is fatal to his untimely clawback claims. *See BNPP I*, 594 B.R.

---

[2]    In contrast, the Trustee's contemporaneously filed complaints against other banks defined "Sentry" as "Fairfield Sentry" and alleged specific subsequent transfers from Fairfield Sentry. *See, e.g.*, Compl. ¶¶ 17, 191–93, *Picard v. Citibank, N.A., et al.*, Adv. Pro. 10-05345 (Bankr. S.D.N.Y. Dec. 8 2010), ECF No. 1; Compl. ¶¶ 17, 137–39, *Picard v. Merrill Lynch Int'l & Co. C.V.*, Adv. Pro. No. 10-05346 (Bankr. S.D.N.Y. Dec. 8 2010), ECF No. 1.
[3]    *See* Am. Compl., *Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) SA et al.*, Adv. Pro. No. 10-03633 (Bankr. S.D.N.Y. Sept. 21, 2010), ECF No. 6; Am. Compl., *Fairfield Sentry Ltd. v. Zurich Capital Markets et al.*, Adv. Pro. No. 10-03634 (Bankr. S.D.N.Y. Sept. 21, 2010), ECF No. 4; Settlement Agreement at 6, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 (providing for shared recoveries between the Trustee and the Fairfield Liquidators).
[4]    The Trustee also brought a number of subsequent transfer claims against HBUS and HSBC Bank plc in the FAC (for alleged transfers from Harley International (Cayman) Limited, Thema International Fund plc, and Senator Fund SPC) without providing specific transfer amounts. *See id.* ¶¶ 263, 265, 268, 274.

at 207–12; *BNPP II*, 2024 WL 2839330, at *20. The Trustee does not dispute that these decisions are binding law of the case, and nothing in them suggests (contrary to the Trustee's unfounded insistence otherwise) that their bright-line rule requiring the Trustee to have previously alleged "a transfer between that transferee and relevant fund" is restricted to cases involving "notice pleadings" that list alleged transfers without detailing conduct or a relationship between a fund and a defendant. *See BNPP II*, 2024 WL 2839330, at *20; *see also* Opp'n at 24–30. Rather, the *BNP Paribas* decisions hold that the relevant conduct that must be alleged in the original complaint in order for late-added claims to relate back is the alleged transfer of BLMIS customer property from a specific fund to a specific defendant. *See BNPP I*, 594 B.R. at 210; *accord BNPP II*, 2024 WL 2839330, at *20 ("[N]ew transfers alleged in subsequent amended complaints do not relate back where they are alleged to relate to previously unnamed initial transferees . . . ."). Because the FAC did not allege (let alone seek to recover) any such transfer from the Fairfield Funds, Defendants lacked notice of the Trustee's late-added claims, and a straightforward application of the *BNP Paribas* decisions requires their dismissal.

## II. The Trustee's Untimely Claims Do Not Arise Out Of The Conduct Or Transactions Alleged In The FAC

Despite the FAC's failure to allege a single specific transfer of BLMIS customer property from the Fairfield Funds to Defendants, the Trustee argues for relation back based on (1) his purported misdefinition of "Sentry," (2) sixteen paragraphs (out of 564) that supposedly set out a "course of conduct" sufficient to provide notice of the Trustee's years-untimely claims, (3) stray references to "distributions," and (4) a purported concession made by Defendants in a 2015 brief. These arguments all fail. Thus, the Trustee's untimely clawback claims do not relate back.

### i. The Trustee Did Not Simply Misdefine "Sentry"

The FAC's "Sentry" allegations did not notify Defendants of potential clawback claims related to the Fairfield Funds because they referred to Greenwich Sentry, not Fairfield Sentry. The Trustee mischaracterizes his use of the term "Sentry" in certain paragraphs as "inartful language" but

7

elides the fact that the FAC *explicitly* defined "Sentry" as Greenwich Sentry, and included additional details making clear that it was referring to that entity. *Compare* Opp'n at 7 (claiming use of "Sentry" reflects "inartful language") *with* FAC at 7 (defining "Sentry" as "Greenwich Sentry L.P.") *and* FAC ¶ 359 (alleging "BLMIS made transfers to Sentry (account number 1G0092) of approximately $206 million").[5] Indeed, the only Sentry Initial Transfers that are alleged—this $206 million total to Greenwich Sentry—are *less* than the $320 million that the Trustee now alleges was *subsequently* transferred to PBRS and HBUS. It would have been nonsensical to read the Trustee's complaint to allege subsequent transfers just to HSBC affiliates to exceed the total of *all* alleged initial transfers.[6]

In addition, the Trustee cannot allege that reading "Sentry" to refer to Greenwich Sentry should have been obviously recognized by PBRS or HBUS as a mistake. The Trustee *was* alleging and trying to recover a single $13 million transfer from Greenwich Sentry to HBUS. *See* FAC ¶¶ 261, 377. He made that clear by including elsewhere allegations regarding a "2001 [diligence] report regarding Greenwich Sentry, L.P." (*id.* ¶ 145) and listing "Greenwich Sentry" in several instances (but *not* the Fairfield Funds) as one of the "Madoff Feeder Funds" (*id.* at 7, ¶ 255)—a category of funds that the Trustee now claims PBRS and HBUS should have known included Fairfield Sentry (*see* Opp'n at 11). PBRS and HBUS are not required to anticipate that the Trustee might later want to expand the scope of his claims. They are entitled to rely on what the Trustee actually alleged in what by any measure was a painstakingly drafted complaint.

    ii.    <u>The Trustee's "Sentry" Allegations In Sixteen Paragraphs Of The FAC Related Solely To Diligence And Marketing To Other People</u>

---

[5]     *See also* Am. Compl. ¶ 40, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23 (explicitly identifying account number 1G0092 as belonging to "GS," or Greenwich Sentry).

[6]     The Trustee claims that his supposed error should have been easily recognizable based on documents the FAC quotes (but did not cite or attach), but offers no support for the propositions that (i) Defendants were obligated to search for all documents the FAC possibly referenced, or (ii) the Court should consider the documents at all. *Compare* Opp'n at 12, 14–17 (arguing Fairfield diligence reports are "integral to the pleading") *with Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (holding that "[m]erely mentioning a document" or "offering limited quotations" does not make the document "integral" such that it can be considered on a Rule 12 motion (cleaned up)).

8

The Trustee's argument that PBRS and HBUS should have understood certain factual allegations about "Sentry" to refer to Fairfield Sentry also does not help him because those factual allegations did not relate to redemptions. *See* Opp'n at 14–16 (citing FAC ¶¶ 213–14, 292–304); *Fabrikant I*, 447 B.R. at 181–82.

As the SAC makes clear, the conduct and transactions underlying the Trustee's untimely claims are Defendants' receipt of BLMIS customer property through redemptions from the Fairfield Funds. *See* 11 U.S.C. § 550(a); SAC ¶¶ 351–66, 406. By contrast, the "Sentry" allegations that the Trustee points to in the FAC do not once assert that Defendants received redemptions from any "Sentry." *See* FAC ¶¶ 213–14, 292–304. Instead, they solely allege that Defendants performed due diligence on "Sentry," marketed "Sentry" and "Madoff Feeder Funds" to their clients, and that Defendants' clients' invested in "Sentry." *Id.* Paragraphs 104 and 300 of the FAC similarly refer only to Defendants' marketing of BLMIS-related funds to other people, and do not mention the Fairfield Funds. Opp'n at 14, 16 (citing FAC ¶¶ 104, 300).[7] Neither the incorporation by reference of the Fairfield Amended Complaint (the "Fairfield AC") in paragraph 358 nor the boilerplate language in paragraph 356 of the FAC alter the analysis. The Fairfield AC does not allege a single transfer involving Defendants. *See generally* Fairfield AC.[8] And the Court has squarely rejected the Trustee's prior attempts to rely on boilerplate "ongoing investigation" allegations for purposes of relation back in this liquidation. *See BNPP II*, 2024 WL 2839330, at *20.

Put simply, the Trustee's untimely clawback claims arise out of a distinct course of conduct based on transactions that are "different in kind from those alleged [in the FAC]"—Defendants' alleged *receipt* of BLMIS customer property, as opposed to Defendants' solicitation of client

---

[7] Although the FAC defined "Madoff Feeder Funds" extraordinarily broadly, as "[i]nvestment funds with the principal or primary purpose of investing funds with BLMIS's IA Business," paragraphs 104 and 300 refer specifically to the "Feeder Fund Defendants," which unquestionably did not include the Fairfield Funds. FAC at 3, 5, ¶¶ 104, 300.

[8] Moreover, the reference to the Fairfield AC is immediately followed by a paragraph explicitly associating "Sentry" initial transfers with a Greenwich Sentry account number, implying that the only initial transfers in the Fairfield AC the Trustee was concerned with were those made to Greenwich Sentry. *See* FAC ¶ 359, Exs. D, E1.

9

investments *into* BLMIS.[9] *See Fabrikant II*, 480 B.R. at 492; *Fabrikant III*, 541 F. App'x. at 58 ("[P]referential payments allegedly *received* by [defendants] do not relate back to the fraudulent transfers allegedly *made* by [defendants]."); *see generally Hirsch*, 2015 WL 1275461, at *8 (untimely claims do not relate back where they arise from "separate . . . yet related" conduct).[10] Defendants previously observed (and the Trustee does not dispute) that the FAC's diligence and marketing related allegations supported the Trustee's then-primary legal theory against HBUS and sole legal theory against PBRS—aiding and abetting Madoff's fraud by soliciting client investments into BLMIS—which is legally distinct and turns on different proof from the subsequent transfer claims the Trustee now seeks to pursue. *See* Defs.' Mot. at 7–8, 21.[11]

iii. The FAC's Passing References To "Distributions" Are Insufficient

The Trustee argued that his untimely clawback claims relate back because the FAC generically alleged that PBRS and HBUS received "fees and/or distributions . . . composed, in part, of Customer Property." *See* Opp'n at 33–34 (citing FAC ¶¶ 97, 104).[12] But these isolated allegations fall short of providing notice for relation back because they "fail to identify any particular objectionable transactions." *Fabrikant II*, 480 B.R. at 493; *see also Fabrikant I*, 447 B.R. at 182 ("passing reference[s]" to receipt of "proceeds" insufficient for relation back); *BNPP I*, 594 B.R. at

---

[9] Further, several of the FAC's allegations that the Trustee relies on refer not to a specific HSBC entity, but to "HSBC Private Bank," a term defined to include HSBC Private Banking Holdings (Suisse), PBRS, HBUS, "and their related affiliates." The allegations thus do not set out identifiable conduct or transactions specifically tethered to the relevant fund and defendant. *See generally In re Stillwater Asset Backed Offshore Fund Ltd.*, 559 B.R. 563, 579 (Bankr. S.D.N.Y. 2016) ("Fraudulent transfer claims require careful identification of the parties to the transfers . . . ."); *ASARCO LLC v. Goodwin*, 756 F.3d 191, 203 (2d Cir. 2014) (even where enterprises were alleged to be "interrelated," notice was inadequate where new claims were "attributable to different entities than the claims [originally pled]").

[10] *See also In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) (holding that subscription (*i.e.*, investment) related activity was "irrelevant to [plaintiffs'] clawback claims").

[11] *See, e.g., BNPP I*, 594 B.R. at 195 (Section 550 claims require proof "that the initial transfer is avoidable and the defendant is a subsequent transferee of that initial transfer…"); *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005) (New York law aiding and abetting fraud claims require proof of (1) the existence of a fraud, (2) defendant's knowledge of the fraud; and (3) that defendant provided substantial assistance to advance the fraud's commission.).

[12] It is not at all clear that these generic allegations regarding "distributions" were intended to refer to receipt of BLMIS customer property. The only other reference to "distributions" in the FAC (other than where the Trustee was identifying parties) refers to "distribution and performance fees," indicating that these allegations likely referred to fees received in connection with distributions to others. *See* FAC ¶ 539.

10

210 (subsequent transfers "arise from different facts and circumstances and depend on different proof" where they "arose from [] separate and distinct . . ." types of transactions).[13]

The Trustee suggests that Defendants could have connected the dots between vague references to "distributions" and the FAC's diligence and marketing related "Sentry" allegations to divine that the Trustee would pursue Fairfield subsequent transfers, but the references to "distributions" were almost 200 paragraphs away from the "Sentry" allegations and contained no details regarding any individual initial transferees from which the "distributions" were purportedly received. *Compare* Opp'n at 4, 11, 28 *with* FAC ¶¶ 97, 104. To the extent the FAC *did* provide details regarding "distributions," it did so with respect to HBUS's "creat[ion] of structured financial products and ent[ry] into transactions involving those structured products" (FAC ¶ 97)—*i.e.*, redemptions purportedly received by HBUS related to swaps or call options (*id.* ¶¶ 256–74). The only subsequent transfers specifically alleged to either PBRS or HBUS in the FAC related to swaps or call options—transactions that are fundamentally different in kind from the alleged redemptions from the Fairfield Funds at issue here. *See id.* ¶¶ 256–74; *see also Fabrikant II*, 480 B.R. at 492 ("[I]f the transaction is different in kind from those originally alleged . . . the new allegation does not relate back.").

In *In re M. Fabrikant & Sons, Inc.*, the Bankruptcy Court, District Court, and Second Circuit held that such "passing references" to transfers do not provide adequate notice for purposes of Rule 15—even where the original complaint alleged an investment-related relationship between the defendant and relevant transferor. *Fabrikant I*, 447 B.R. at 182, *aff'd*, *Fabrikant II*, 480 B.R. at 483, *aff'd*, *Fabrikant III*, 541 F. App'x at 58. In *Fabrikant*, the plaintiff originally brought claims against several banks for allegedly participating in a scheme to provide secured loans to the debtors knowing that the debtors would fraudulently transfer the loan proceeds to a group of jewelry companies.

---

[13] The Trustee used the exact same formulation ("fees and/or distributions . . . composed, in part, of Customer Property") in his definitions of 48 individuals and entities in the FAC. *See, e.g.*, FAC ¶ 117.

11

*Fabrikant I*, 447 B.R. at 177–78. The original complaint included a reference to the banks' receipt of "proceeds" of those loans, and the plaintiff later sought to amend to add preference claims to avoid and recover those "proceeds." *See id.* at 182.[14] Beyond the reference to "proceeds," the original complaint also contained a section on the banks' "Knowledge and Lack of Good Faith," and a paragraph stating generally that the plaintiff "seeks to recover the value of the claims and transfers received by defendants." *See* Compl., No. 06 Civ. 12737 (Bankr. S.D.N.Y. Oct. 1, 2007) ("*Fabrikant* Compl."), ¶¶ 42–51. Nonetheless, despite these allegations, the Bankruptcy Court, District Court and Second Circuit all concluded that the plaintiff's new preference claims did not relate back. The Bankruptcy Court reasoned:

> With only one exception, the original Complaint . . . neither identified nor discussed any *specific* payment by either of the debtors to any of the defendants. The Scheme Claims turned on the transfers by Lending Banks to the debtors, and the debtors' reconveyance of the loan proceeds to the [jewelry companies]. The Subsequent Transfer Claims sought to recover funds paid by the debtors . . . that were subsequently transferred *by [the jewelry companies]* to specific Lending Banks.

*Fabrikant I*, 447 B.R. at 182. The Bankruptcy Court held that the original complaint's reference to the banks' receipt of the "proceeds" of the loans was a "general," "passing reference [that] appears only once and is insufficient to place the Lending Banks on notice." *Id.* And "[a]s each transfer is deemed a separate transaction," the Court further held that "the preference claims do not amplify any of the transactions alleged in the original Complaint." *Id.*

The District Court affirmed, holding that neither the reference to the banks' receipt of "proceeds" nor the nonspecific allegation that transfers in a certain time period were fraudulent were sufficient for relation back because "such general allegations cannot be hooks on which to hang later amended pleadings." *Fabrikant II*, 480 B.R. at 493. The Second Circuit also affirmed, emphasizing that "preferential payments allegedly *received* by [defendants] do not relate back to the fraudulent

---

[14] The Trustee references *Fabrikant*, but elides that the original complaint included allegations about investment *into* the debtors (via secured loans) and a reference to receipt of "proceeds" of those loans. Opp'n at 27–28.

12

transfers allegedly *made* by [defendants]." *Fabrikant III*, 541 F. App'x at 58.

The Trustee's arguments for relation back fail for the same reasons. Just as the *Fabrikant* plaintiff sought to add preference claims based on generic references to "proceeds" and fraudulent "transfers," the Trustee seeks to add subsequent transfer claims based on stray references to Defendants' receipt of "distributions." *Compare Fabrikant I*, 447 B.R. at 182 *with* Opp'n at 33–34. And just as the late-added preference claims in *Fabrikant* arose out of separate conduct and transactions from the original allegations of money flowing to the debtors and of bad faith by the defendant banks, the Trustee's late-added subsequent transfer claims here arise out of separate conduct and transactions from the FAC's allegations of diligence and marketing by Defendants concerning "Sentry." *Compare Fabrikant* Compl. ¶¶ 42–51 *with* FAC ¶¶ 213–14, 292–304. The Trustee's attempt to rely on passing references to "distributions" as a basis for relation back thus fails.

    iv.    <u>The SAC Does Not Merely Amplify Or Add A New Legal Theory To The FAC</u>

The Trustee also argues that his untimely claims simply tack a "new or additional legal theor[y]" onto the FAC's allegations. Opp'n at 27, 33 (citing *In re 360networks*, 367 B.R. at 434). But *In re 360networks* made clear that claims based on new legal theories do not relate back if the original complaint did not "inform the defendants of the facts that support those new claims." *In re 360networks*, 367 B.R. at 434 (no relation back where "the [original] Complaint identifies specific transfers . . . [but] does not provide any information from which the Defendant can glean that the Debtor intended to challenge additional transfers"); *see also White*, 128 F.3d at 116 (late-added legal theories only relate back where they are "based on the same series of transactions and occurrences alleged in the original pleading"). The Trustee's new clawback claims do not relate back as a "new theory" because the FAC did not once even reference the central "fact[] that support[s] [the Trustee's] new claims," *In re 360networks*, 367 B.R. at 434, or the "key factual ingredient at the heart of [the] new theory," *Harte*, 2018 WL 1559766, at *15—namely, that PBRS or HBUS received subsequent

13

transfers from the Fairfield Funds.

Further, the Trustee's assertion that his untimely claims simply "amplif[y] the FAC's allegations" is similarly baseless. Opp'n at 11, 19. An amendment neither "amplif[ies] the facts alleged in the original pleading [n]or set[s] forth those facts with greater specificity" where the amendment adds previously unpled transfers, each of which is treated as a separate transaction under Rule 15. *Fabrikant I*, 447 B.R. at 181–82. Tellingly, the Trustee describes the FAC's allegations only as "form[ing] the basis for, and in some instances overlap[ping] with, the SAC's allegations"— citing only the FAC's "due diligence" and "marketing" allegations. Opp'n at 11. As the Trustee appears to recognize, the allegations underpinning his untimely clawback claims do more than just add "greater specificity" to the FAC's allegations—they allege new transactions that are "different in kind . . . from that originally alleged" and relate to conduct (Defendants' purported receipt of redemptions from the Fairfield Funds) that "the original pleading did not put into issue." *In re Metzeler*, 66 B.R. 977, 983 (Bankr. S.D.N.Y. 1986).

    v.    <u>Defendants Did Not Concede Notice of the Untimely Clawback Claims</u>

The Trustee also looks outside of the FAC, relying on an excerpt from an extraterritoriality-related brief that Defendants filed in 2015 (the "<u>ET Brief</u>"), to argue that Defendants conceded they were on notice as of 2010 of claims to recover alleged transfers from the Fairfield Funds. Opp'n at 8–10. But this brief was filed months *after* the Trustee had added claims to recover such alleged transfers in his 2015 proffered amended complaint, and the subject of the relevant paragraph was Defendants' understanding of the allegations in the 2015 proffered amended complaint. The excerpt cited by the Trustee thus says nothing about Defendants' notice at the time the FAC was filed or within the limitations period—the only relevant time period under Rule 15. *See Slayton v. American Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (notice must be given "within the statute of limitations").

Further, the Trustee misreads the excerpt, which actually confirms Defendants' argument.

14

Context makes clear that Defendants did not concede that the FAC gave notice of claims to recover alleged transfers from the Fairfield Funds. Rather, Defendants cited the FAC in support of the argument that alleged redemptions from the Fairfield Funds (referenced for the first time in the 2015 proffered complaint) were *foreign* transfers on behalf of Defendants' *foreign clients*—facts relevant to the extraterritoriality analysis from the FAC that did not appear in the 2015 proffered amended complaint.[15] Indeed, Defendants *exclusively* cited the 2015 proffered complaint when referencing the Trustee's claims to recover alleged transfers from the Fairfield Funds, and *as part of the same briefing cycle*, Defendants filed a consolidated brief that listed all of the funds the FAC alleged had made transfers to HSBC entities (including PBRS and HBUS); *none* of those funds were Fairfield Sentry or Fairfield Sigma. *See* Defs.' Consol. Br. at 19. At most, this brief reflected Defendants' understanding that the FAC alleged that PBRS made investments in the Fairfield Funds "at the direction of its clients." ET Br. at 15. But again, such investments are separate transactions and conduct from the alleged redemptions that form the basis of the Trustee's untimely clawback claims.

In any case, given the deficiency of the FAC's allegations under Rule 15, the extraterritoriality brief cannot be the sole ground on which the Court finds notice. *Compare* Opp'n at 19 (asserting that Defendants' statements in the ET Brief constitute a "judicial admission") *with In re Motors Liquidation Co.*, 957 F.3d 357, 361 (2d Cir. 2020) (holding that a judicial admission must be "*intentional, clear, and unambiguous*" and that a court cannot act upon facts conceded by counsel "where a doubt exists as to the statement of counsel" (cleaned up; emphasis added)).

---

[15] *See* ET Br. at 14–15 ("The [FAC] makes clear that foreign transferee [PBRS] received the payments at issue [in the 2015 proffered complaint] from foreign transferors . . . on account of the investments [PBRS] made in those foreign funds at the direction of its clients. No allegations are made in the [FAC] that could suggest the transfers to [PBRS] from foreign feeder funds were anything but foreign transfers."). The only paragraph of the FAC Defendants cited in the ET Brief excerpt was paragraph 293, which alleged simply that "HSBC Private Bank" clients "had relationships of trust and confidence with HSBC Private Bank" and relied on HSBC Private Bank when making investment decisions. This allegation contains no mention of "Sentry"; it refers instead to the "Feeder Fund Defendants," a category in the FAC that unquestionably *excluded* Fairfield Sentry. FAC at 3.

15

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant judgment on the pleadings dismissing the Trustee's untimely clawback claims.

| | |
|---|---|
| Dated: May 20, 2025<br>New York, New York | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>By: /s/ Nowell D. Bamberger<br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>Thomas Q. Lynch<br>One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>tlynch@cgsh.com<br><br>*Counsel for HSBC Private Bank (Suisse) S.A. and HSBC Bank USA, N.A.* |